**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GERALD MORGAN,** | : | |
| | : | **Case No. 2:19-cv-2982** |
| **Plaintiff,** | : | |
| | : | **Judge Sargus** |
| **v.** | : | |
| | : | **Magistrate Judge Vascura** |
| **HITACHI VANTARA CORPORATION et al.,** | : | |
| | : | |
| **Defendants.** | : | |

---

**PLAINTIFF GERALD MORGAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Now comes Plaintiff Gerald Morgan ("Morgan"), by and through counsel, and respectfully moves this Court for judgment as a matter of law as to Plaintiff's First Claim for Relief made against Defendants Hitachi Vantara Corporation ("Hitachi"), Hitachi Data Systems' Health and Welfare Benefits Plan (the "Plan") (Hitachi and the Plan are hereinafter collectively referred to as the "Hitachi Defendants") and Liberty Life Assurance Company of Boston n/k/a Lincoln Life Assurance Company of Boston ("Liberty") pursuant to Fed. R. Civ. P. 56. There are no material issues of fact in dispute regarding Plaintiff's First Claim for Relief made in the Complaint pursuant to 29 U.S.C. § 1132(a)(1)(b), and Morgan is entitled to judgment as a matter of law as to his claim against the Defendants. An accompanying Memorandum supports this Motion.

Respectfully submitted,

/s/ Kristin Seifert Watson
Kristin Seifert Watson (0078032)
Cloppert, Latanick, Sauter & Washburn
225 East Broad Street, 4th Floor
Columbus, Ohio 43215-3709
Telephone: (614) 461-4455
Facsimile: (614) 621-6293
E-mail kwatson@cloppertlaw.com

*Trial Attorney for Plaintiff*

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION.

This case consists of two claims made by Morgan against one or more Defendants regarding his long-term disability income benefit from the ERISA welfare benefit plan sponsored and administered by his former employer Defendant Hitachi Data Systems Corporation n/k/a Hitachi Vantara Corporation ("Hitachi"). At all times relevant, Morgan has been receiving the wrong amount of monthly long-term disability income benefits, which have not been based on his pre-disability earnings. The First Claim for Relief, which is the subject of this Motion, is to enforce his rights to recover increased benefits under the terms of the Plan. The Second Claim for Relief is for promissory estoppel against Hitachi on the basis of what Hitachi promised Morgan he would receive in the amount of long-term disability income benefits at the time he enrolled for the benefits for the Plan Year in question. Because there are material issues of disputed fact with regard to the Second Claim for Relief, Morgan has not included that cause of action in this Motion.[1]

### II. STATEMENT OF THE FACTS.

Morgan began his employment with Hitachi as a Specialist Sales Account Representative on or about October 12, 2010. (Liberty Administrative Record ("Admin. Record"), DKT # 28-3, Page ID # 940). At the time of his hiring, Morgan informed Hitachi that he would not take the position for less than a $200,000.00 per year annual salary. (*Id.* at Page ID # 941). Morgan's Sales Commission Plan effective April 1, 2015, which was in effect on his date of disability, set his base pay and short-term incentive target for the year at $230,000.00. (Admin. Record, DKT # 28-3,

---

[1] The Hitachi Defendants and Liberty each asserted Counterclaims against Morgan for overpayments caused by his belated receipt of disability benefits from the United States Social Security Administration. (DKT ## 5 and 25). The parties resolved each of the two Counterclaims, and they have both been dismissed with prejudice. (DKT ## 36 and 44).

Page ID ## 941, 943). The $230,000.00 figure is before accelerators or bonuses and provides a fair representation of Morgan's pre-disability earnings at Hitachi. Morgan's average actual income exceeded the amount set forth in the Sales Commission Plan due to accelerators, commissions beyond his short-term incentive target, and bonuses. (Admin. Record, DKT # 28-3, Page ID # 942).

At all times relevant, Hitachi sponsored and administered an employee welfare benefit plan that included a long-term disability income benefit. While employed at Hitachi, Morgan did not have access to the Plan Document or the Summary Plan Description. (Admin. Record, DKT # 28-3, Page ID # 941). When he enrolled for the long-term disability income benefits each year, Morgan relied on the information provided by Hitachi in annual Open Enrollment Benefits Guides. (*Id.* at Page ID # 942). For Plan Year 2015, the Open Enrollment Benefits Guide informed Morgan that his long-term disability income benefit would be based on his pre-disability monthly income. (Admin. Record, DKT # 28-3, Page ID # 974).

The 2015 Open Enrollment Benefits Guide states, "[w]hen illness or injury makes it impossible for you to work for an extended period of time, the Long-Term Disability coverage will replace sixty percent of your pre-disability monthly income as defined in the Summary Plan Description to a maximum benefit of $15,000.00 per month." (Admin. Record, DKT # 28-3, Page ID # 974).

The Hitachi Data Systems' Health and Welfare Benefits Adoption Agreement, Plan and Summary Plan Description states that "the Hitachi Data Systems' Health and Welfare Plan document, Appendices 1, 2 and 3 to the Hitachi Data Systems' Health and Welfare Plan document, this Adoption Agreement to the Hitachi Data Systems' Health and Welfare Plan document, along with the Evidences of Coverage or Benefit Booklets that apply to the Coverage(s) in which a

Participant is enrolled, and any summaries of material modifications ("SMMs"), constitute a Participant's summary plan description (as that term is defined by ERISA) for the Plan." (DKT # 1-1, Page ID # 18). The Summary Plan Description, via the Group Disability Income Policy, sets forth the long-term disability income benefit at sixty percent (60%) of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $15,000.00. (DKT # 28-1, Page ID # 353). A monthly benefit based on sixty percent (60%) of Morgan's Basic Monthly Earnings—set at the $230,000.00 annual amount—would be $11,500.00, well below the $15,000.00 Maximum Monthly Benefit.

The Summary Plan Description, via the Group Disability Income Policy, defines "Basic Monthly Earnings" as:

> [T]he Covered Person's monthly rate of earnings from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins. Earnings will be defined as **either**, base pay and the short-term incentive (STI) target at 100%, **or** as a benefit target compensation amount. Earnings type to be defined by the Sponsor. Such earnings will not include other forms of compensation.

(DKT # 28-1, Page ID # 355) (Emphasis added).[2] "Benefit target compensation amount" is not defined in the Group Disability Income Policy, the Certificate of Coverage or elsewhere in the Plan Document or Summary Plan Description. The Summary Plan Description contains no other information describing the pre-disability income applicable to the long-term disability income benefit.

While working at Hitachi, Morgan was never informed by any person or entity that Hitachi had selected a benefit target compensation amount to apply to him or what such an amount would be. (Admin. Record, DKT # 28-3, Page ID # 940-942). There is no information in the

[2] The Certificate of Coverage, which Liberty designated as the Summary Plan Description, lacks the information required by ERISA to be included in summary plan descriptions. 29 U.S.C. § 1022. Nevertheless, it contains virtually identical definitions to the Group Disability Income Policy. (DKT # 28, 28-2, Page ID # 392).

Administrative Record indicating otherwise. Morgan was never provided any information, nor was any information made available to him, indicating that his disability income would be based on a figure less than his Basic Monthly Earnings forth in his Sales Commission Plan and/or his actual income.

Morgan's last date of active employment was in June 2015. Morgan suffers from hydrocephalus, subdural hematoma, and other related serious medical conditions. (Admin. Record, DKT # 28-3, Page ID # 940). Morgan applied for and received short-term disability income benefits pursuant to a plan maintained by Hitachi. Morgan applied for and received long-term disability income benefits pursuant to the Plan beginning June 9, 2016. (Admin. Record, DKT # 28-5, Page ID # 2123-2125). Liberty's initial award letter stated that the policy provides "60% of his pre-disability earnings." (*Id.* at 2124). $11,500.00 would be the monthly benefit based on Morgan's pre-disability earnings (Basic Monthly Earnings), as evidenced by his Sales Commission Plan in effect at the time of his disability. (Admin. Record, DKT # 28-3, Page ID ## 941, 943). Instead of $11,500.00 per month, Liberty has been paying Morgan a monthly benefit of approximately $8,750.00.[3]

Morgan realized that the amount of benefits he was receiving was too low, and contacted Liberty and Hitachi. Via letter dated December 15, 2017, Morgan, through counsel, requested information from the Defendants, including: [a]ll correspondence sent to Mr. Morgan from 2010 to present regarding the definitions applicable to the long term disability income benefit, including a description of how the information would have allegedly been transmitted to Mr. Morgan and

---

[3] Morgan's monthly benefit of $8,750.00 is now being reduced by the amount of monthly benefits he receives from the United States Social Security Administration.

any evidence of receipt."[4] (Admin. Record, DKT # 28-5, Page ID # 1690). In response, Hitachi, through a letter from counsel dated March 15, 2018 ("Wrangham Letter"), informed Morgan's counsel that "Hitachi does not have records of correspondence with Mr. Morgan regarding his LTD income benefit." (Admin. Record, DKT # 28-3, Page ID # 938).

Pursuant to the Adoption Agreement that is part of the Plan Document, Hitachi, as Plan Administrator, delegated discretionary authority to determine claims to the insurance carriers. (DKT #1-1, Page ID # 19). Additionally, the Certificate of Coverage issued under the long-term disability policy states that Liberty possesses the authority to determine benefit eligibility and construction of terms. (DKT # 28-2, Page ID # 419). Accordingly, Liberty holds discretionary authority for long-term disability income claims under the Plan.

On or about April 17, 2018, Plaintiff, through counsel, filed a claim for the correctly calculated benefit amount utilizing the $230,000.00 Basic Monthly Earnings amount. (Admin. Record, DKT # 28-4, Page ID ## 1026-1037). In an email dated June 26, 2018, Hitachi's counsel contacted Liberty about "coordinating" the response to the claim. (Admin. Record, DKT # 28-4, Page ID # 1038). In correspondence dated June 21 and 22, 2018, Liberty completely disregarded the fact that Morgan filed a claim and indicated that Hitachi said that $175,000.00 was the correct pre-disability income figure. (Admin. Record, DKT # 28-4, Page ID ## 1009-1016). After further correspondence, Liberty denied the claim via letter dated July 12, 2018. (Admin. Record, DKT # 28-4, Page ID ## 1017-1020). The denial letter contained zero analysis of Morgan's claim—Liberty just parroted Hitachi's assertion that $175,000.00 was the proper figure upon which to base his benefit, and in fact misidentified the pertinent definitions from the Plan language.

[4] Liberty initially refused to provide information to Morgan's counsel regarding his claim. (Admin. Record, DKT # 28-5, Page ID # 1708).

On or about September 7, 2018, Plaintiff, through counsel, requested a review of the July 12, 2018, decision pursuant to the terms of the Plan. (Admin. Record, DKT # 28-3, Page ID ## 934-995). Liberty denied Plaintiff's request for review via correspondence dated October 17, 2018, in which it acknowledged that Plaintiff exhausted his administrative rights to review the claim. (Admin. Record, DKT # 28-3, Page ID ## 861-864). Liberty never investigated or considered the arguments raised by Morgan in his appeal materials. Instead, Liberty stated only that Hitachi "validated" that $175,000.00 was the applicable benefit target compensation amount for Mr. Morgan. (*Id*. at Page ID ## 862-863).

Morgan commenced this Action on July 10, 2019, raising two claims. (DKT # 1). Morgan's First Claim for Relief is a claim to enforce his rights under the Plan to recover the correct amount of benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff's Second Claim for Relief, which is not the subject of this Motion, is for promissory estoppel against Hitachi under 29 U.S.C. § 1132(a)(3)(B). Because Liberty's denial of Morgan's claim for increased benefits lacked consideration or analysis, it was arbitrary and capricious as a matter of law and Morgan is entitled to summary judgment as to his claim for benefits under 29 U.S.C. § 1132(a)(1)(b).

## III. ARGUMENT

### A. Summary Judgment Standard.

Fed. R. Civ. P. 56(a) states, in relevant part: "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

There are no facts in dispute regarding Morgan's First Claim for Relief under 29 U.S.C. § 1132(a)(1)(B). The Administrative Record clearly demonstrates that Liberty failed to conduct any

investigation into or consider the evidence presented by Morgan in his appeal. Such failure resulted in an arbitrary and capricious decision to deny Morgan's claim for increased benefits under the Plan. Morgan is entitled to judgment as a matter of law for his First Claim for Relief.

### B. <u>Liberty's Denial of Morgan's Claim for Increased Benefits Was Arbitrary and Capricious.</u>

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "If a plan affords such discretion to an administrator or fiduciary, [the court] review[s] the denial of benefits only to determine if it was 'arbitrary and capricious.'" *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (Internal citations omitted). Hitachi, as Plan Administrator, delegated discretionary authority to interpret the terms of the Plan applicable to the long-term disability benefit to Liberty. Thus, Morgan's claim under 29 U.S.C. § 1132(a)(1)(B) is properly analyzed under the arbitrary and capricious standard.

"When reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made." *McClain*, 740 F.3d at 1064 (Internal citations omitted). "A decision reviewed according to the arbitrary and capricious standard must be upheld if it results from 'a deliberate principled reasoning process' and is supported by 'substantial evidence.'" *Schwalm v. Guardian Life Ins. Co. of America*, 626 F.3d 299, 308 (6th Cir. 2010) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). Liberty's decisions to deny Morgan's claim and request for review did not result from a deliberate principled reasoning process and were not supported by

substantial evidence. Accordingly, Liberty's denial of Morgan's claim was arbitrary and capricious and Morgan is entitled to summary judgment.

Liberty reached its decision concerning Morgan's claim through an inadequate process that was not deliberate or principled. Liberty's investigation of the claim comprised solely of asking Hitachi to verify its position regarding Morgan's Basic Monthly Earnings for the long-term disability income benefit, and then directly relaying that information to Morgan.[5] Liberty did not query Hitachi regarding whether it actually selected a benefit target compensation amount to apply to Morgan or whether it had informed Morgan that a benefit target compensation amount applied to him or what that amount was. Morgan presented Liberty with evidence that Hitachi did not provide him with notice, and Liberty ignored the evidence. There is zero evidence in the Administrative Record that refutes the evidence presented by Morgan. By failing to investigate or consider the arguments raised by Morgan, and instead "coordinating" with Hitachi, Liberty acted in an arbitrary and capricious manner in denying Morgan's claim for increased benefits. (Admin. Record, DKT # 28-4, Page ID # 1038).

An example of Liberty's abject failure to investigate the matter is evident in its letter denying Morgan's request for review. (Admin. Record, DKT # 28-3, Page ID ## 861-864). Liberty stated:

> For further clarification of the materials made available to him when he enrolled for LTD coverage, Mr. Morgan should contact his employer. However, we do note that the cover page of the Hitachi Data Systems' Health and Welfare Benefits Adoption Agreement, Plan and Summary Plan Description that you provided indicates that documents provided by the insurance carriers were available on HR Gateway.

---

[5] The fact raised by Liberty, if true, that Hitachi paid premiums on a $175,000.00 income figure for Morgan is not the pertinent question. (Admin. Record, DKT # 28-4, Page ID # 1009). If Hitachi erroneously paid premiums that were too low, that does not reduce Morgan's rights under the Plan.

(*Id*. at 863). Liberty did not bother to investigate whether any documents were actually available to Morgan. However, Liberty did have evidence—the Wrangham Letter, a sworn affidavit, the Sales Commission Plan and the 2015 Open Enrollment Benefits Guide—that Morgan did not have access to information informing him that Hitachi had selected a benefit target compensation amount of $175,000.00 to apply to his long-term disability income benefit. (Admin. Record, DKT # 28-3, Page ID ## 938-995). Rather than meaningfully consider the only evidence before it on the relevant subject, Liberty chose to ignore it. Completely unmoored from the evidence, the process by which Liberty reached its decision can only be characterized as arbitrary and capricious and must therefore be overturned.

While Liberty was correct that the Group Disability Income Policy permits the Sponsor—Hitachi—to define the type of earnings to be utilized to calculate Basic Monthly Earnings, it is axiomatic that the Sponsor has a duty to inform the participants what type of earnings would actually be used. The Plan language presented an either/or option, so Hitachi had a duty to inform Morgan of what option it selected prior to Morgan's enrollment for the benefit year. (DKT # 28-1, Page ID # 355).

Morgan, as a Participant, had a right to know what his amount of benefits would be under the long-term disability income policy. Federal regulations require such information be furnished through documents such as summary plan descriptions, or summaries of material modification when necessary. *See* 29 C.F.R. § 2520.102-3; 29 C.F.R. § 2520.104b-3. Summary plan descriptions "[f]or employee welfare benefit plans" must include "a description or summary of the benefits." 29 C.F.R. § 2520.102-3(j)(2). The summary plan descriptions, and updated versions of the summary plan descriptions must be furnished to participants in accordance with the time

requirements identified in 29 U.S.C. § 1024. These regulations help to ensure that participants are promptly notified as to what their expected benefits will be.

As the United States Supreme Court has acknowledged, "Congress' purpose in enacting the ERISA disclosure provisions . . . [was to] ensur[e] 'that the individual participant knows **exactly where he/[she] stands with respect to the plan**.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (Emphasis added). Yet, Hitachi failed to notify Morgan exactly where he stood with respect to the Plan. It is undisputed in the Administrative Record that Morgan was not informed that a benefit target compensation amount lower than his pre-disability earnings would be utilized to calculate his long-term disability income benefit. Morgan stated in his affidavit that he did not receive such notice. (Admin. Record, DKT # 28-3, Page ID ## 941-942). Hitachi's counsel admitted that no such communication existed in the Wrangham Letter. (Admin. Record, DKT # 28-3, Page ID # 938). There is no information in the Administrative Record indicating otherwise.

Hitachi's failure to notify Morgan is critical, as "employees rely on summary plan descriptions in making decisions about their future benefit needs." *Lipker v. AK Steel Corp.*, 698 F.3d 923, 931 (6th Cir. 2012). In fact, Morgan relied on the information available to him via the 2015 Open Enrollment Benefits Guide when he decided not to purchase supplemental coverage for the 2015 Plan Year. (Admin. Record, DKT # 28-3, Page ID # 942). By ignoring Morgan's argument and refusing to increase his benefit to the amount based on his actual Basic Monthly Earnings, Liberty acted in an arbitrary and capricious manner in denying Morgan's claim.

Liberty's denial of Morgan's claim for increased benefits is not based on substantial evidence and is thus arbitrary and capricious. *Schwalm*, 626 F.3d at 308. The only "evidence" upon which Liberty relied was Hitachi's representation that Morgan's benefit should be based on a

$175,000.00 annual salary figure, which included screenshots from Hitachi's current and former payroll systems (Admin. Record, DKT # 28-4, Page ID ## 1040, 1044). However, that information did not constitute evidence. It constituted Hitachi's self-serving conclusions. Even the screenshots are only evidence that $175,000.00 was populated into a payroll system. There is zero evidence in the Administrative Record establishing that Morgan was actually subject to a benefit target compensation amount of $175,000.00. There is zero evidence in the Administrative Record establishing that Hitachi ever informed Morgan that it applied a benefit target compensation amount of $175,000.00 to him for the 2015 Plan Year.

In contrast, Morgan presented evidence in the form of a signed affidavit stating that his base pay with short term incentive (Basic Monthly Earnings) equaled $230,000.00. (Admin. Record, DKT # 28-3, Page ID ## 941, 943). Morgan also informed Hitachi that he would not accept the position with Hitachi for an annual salary of less than $200,000.00. (*Id.*). The affidavit submitted by Morgan also shows that he made more than $230,000.00 annually during his time at Hitachi. (*Id.* at Page ID # 942). But Liberty simply shrugged off all this evidence in reaching its determination to deny Morgan's claim and request for review when it relied on Hitachi's conclusory statements. Liberty's decision cannot be deemed as based on substantial evidence when it disregards a signed affidavit indicating that Morgan's actual income was notably different from the number provided by Hitachi. Moreover, the affidavit attests to the fact that Morgan never received notice that his long-term disability income benefit would be based on any number other than his Basic Monthly Earnings figure contained in his Sales Commission Plan. Because Liberty disregarded all of the actual evidence presented on the issue in favor of self-serving conclusory and non-evidentiary statements from Hitachi, its decision to deny Morgan's claim for increased benefits was arbitrary and capricious and should be set aside.

## IV. CONCLUSION.

Liberty's decision to deny Morgan the proper amount of long-term disability income benefits pursuant to the terms of the Plan and the information actually provided to him was not the result of a deliberate principled reasoning process or supported by substantial evidence. Instead, Liberty totally ignored Morgan's position and evidence. Liberty conducted no investigation into the arguments raised by Morgan and instead relied solely on Hitachi's self-serving statements and payroll screenshots that were not evidence related to the question at issue.

For these reasons and all of the reasons set forth herein, Liberty's decision to deny Morgan's claim was arbitrary and capricious. Plaintiff Gerald Morgan respectfully requests the Court to grant his Motion for Partial Summary Judgment, to declare the Defendants obligated under the terms of the Plan to provide the long-term disability income benefit amount to Morgan based on the $230,000.00 Basic Monthly Earnings figure effective June 9, 2016, to order Liberty to process Morgan's claim and to pay the disability income benefit amount based on the $230,000.00 Basic Monthly Earnings figure effective June 9, 2016, to order Defendants to pay Morgan all attorney fees and costs incurred in the investigation, initiation, and prosecution of the claims of this action, to award Morgan prejudgment and post-judgment interest, and to grant any and all other relief this Court deems appropriate.

Respectfully submitted,

/s/ Kristin Seifert Watson

Kristin Seifert Watson (0078032)
Cloppert, Latanick, Sauter & Washburn
226 East Broad Street, 4th Floor
Columbus, Ohio 43215-3709
Telephone: (614) 461-4455
Facsimile: (614) 621-6293
E-mail kwatson@cloppertlaw.com

*Trial Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing though the Court's system.

/s/ Kristin Seifert Watson
Kristin Seifert Watson (0078032)