IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GERALD MORGAN, | § | |
| | § | |
| Plaintiff, | § | Case No. 2:19cv02982-EAS-CMV |
| | § | |
| v. | § | |
| | § | Chief District Judge Edmund A. Sargus, Jr. |
| HITACHI VANTARA CORPORATION, LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, AND HITACHI DATA SYSTEMS' HEALTH AND WELFARE BENEFITS PLAN, | § | |
| | § | |
| | § | Magistrate Judge Chelsey M. Vascura |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

**DECLARATION OF KARILANN SNEIRSON**

Before the undersigned, an officer duly authorized by law to administer oaths, personally appeared Karilann Sneirson, who, on oath, deposes and states as follows:

1. I, Karilann Sneirson, serve as Manager of the Appeal Review Unit for Lincoln Life Assurance Company of Boston f/k/a Liberty Life Assurance Company of Boston ("Lincoln/Liberty"). I maintain my office in Dover, New Hampshire. I am more than 21 years of age and am competent to testify to the matters contained herein. My personal knowledge, as well as the files and records maintained by Lincoln/Liberty in the ordinary course of business, form the basis of this affidavit.

2. As part of my responsibilities for Lincoln/Liberty, I am familiar with Lincoln/Liberty's procedures for processing and administering claims for disability benefits under group disability plans, including the claim at issue herein that was submitted by Gerald Morgan ("Morgan"). I am also personally familiar with the manner in which Lincoln/Liberty maintains files and records, including those that relate to Morgan's claim for long term disability

EXHIBIT

A

benefits under the employee Hitachi Data Systems' Health and Welfare Benefits Plan (the "Plan") sponsored and maintained by Hitachi Data Systems Corporation (now known as Hitachi Vantara Corporation) ("Hitachi"). I am familiar with and work daily with the construction and interpretation of the various disability plans and policies for which Lincoln/Liberty administers claims, including the one relevant to the claims of Morgan in the above-styled litigation.

3. I serve as a custodian of records pertaining to Lincoln/Liberty disability claims. The documents referenced in this Affidavit are documents kept by Lincoln/Liberty in the regular course of business. The documents were transmitted to me in the regular course of business by an employee or representative of Lincoln/Liberty who had personal knowledge of the information, and it is the regular practice of Lincoln/Liberty to make and/or retain such records. These documents are true and correct duplicates of the originals.

4. I have reviewed the documents attached as Exhibits to Defendant Liberty Life Assurance Company of Boston's Submission of Administrative Record Under Seal (Document 28) that was filed on May 1, 2020. Exhibit 1 is the Group Disability Income Policy, which insures certain benefits from the Plan payable to certain participants, including Morgan, and is the Policy relevant to the above-styled action. Exhibit 2 is the Certificate of Coverage pertaining to the Policy. Exhibit 3 is the "Administrative Record" and includes all of the documents in Lincoln/Liberty's possession that pertain to Morgan's claim, including all documents that Lincoln/Liberty reviewed in considering Morgan's claim for additional disability benefits from the Plan.

5. Lincoln/Liberty issued Group Disability Income Policy No. GF-060-066533-01 (the "Policy") to Hitachi as policyholder. The Policy insured certain long-term disability benefits to eligible participants in the Plan. As an eligible employee of Hitachi, Morgan was a

participant in the Plan, was covered under the Policy, and submitted a claim for benefits from the Plan.

6. In evaluating claims for benefits under employee benefit plans under policies insured by Lincoln/Liberty, it is Lincoln/Liberty's practice and intention to review such claims fairly, without regard to the manner in which the plan is funded, and to pay claims consistently and in accordance with the applicable benefit provisions, so that those claims that are payable under the Policy are paid and those which are not payable are not paid.

7. The employees who make claims decisions on behalf of Lincoln/Liberty are not evaluated or compensated on the basis of the amount or number of claims paid or denied. Lincoln/Liberty in no way discourages its employees from paying claims that are covered and payable under the terms of its policies.

8. The decision regarding the gross amount of Morgan's long-term disability benefits was not motivated by self-interest on the part of Lincoln/Liberty or by a desire to avoid paying the benefits claimed by Morgan. Rather, the decision was based entirely on the relevant provisions of the Policy and the information contained in the administrative record.

9. Lincoln/Liberty has taken a number of steps to separate the claim determination functions from the underwriting/premium functions. These steps were all in place during the period relevant to Morgan's claim, which is 2015 through the present, and are still in effect today. First, there is a geographical separation. Disability case managers are physically located in different offices and are in different cities and states than those employees who make underwriting and premium decisions. Second, there is a department and managerial separation. Disability case managers belong to the Group Disability Claims Department and ultimately report to a Senior Vice President, Chief Claims Officer. Underwriters belong to the

Underwriting Department and ultimately report to a Senior Vice President, Chief Underwriting Officer. And third, underwriting/premium functions are typically performed prior to the time the insurance contract takes effect, taking into account the size and make-up of the risk to set appropriate rates for the policyholder. Conversely, the functions performed by disability case managers for a particular policyholder generally occur months and years after the insurance contract takes effect. Upon renewal, underwriters make rate determinations for a policyholder independently and without direct input from the disability case managers for that risk.

10. Lincoln/Liberty has implemented management checks to identify inaccurate decision-making irrespective of whom the inaccuracy benefits. For example, the administrative record reflects that before the Disability Case Manager assigned to Morgan's claim could approve the claim, she first sought the approval of her managers. (See, Liberty/Morgan 96, Claim Notes 32 and 33 dated June 6, 2016). It was only after her manager reviewed and approved such an action that the Disability Case Manager sent out her letter of June 7, 2016, informing Morgan's counsel that his claim for benefits had been approved (See, Liberty/Morgan 95, Claim Note 36) and began paying benefits to Morgan based on a percentage of the Basic Monthly Earnings ("BME"), which was the $175,000 basic target income as reported by Hitachi to Lincoln Liberty. Second, after Lincoln/Liberty received a notification from Morgan that he was disputing the BME used in calculating his benefit amount, a payment specialist contacted Hitachi to confirm the BME used in Lincoln/Liberty's calculation and sent out a letter of July 12, 2018, informing Morgan that, the $175,000.00 pre-disability income used to calculate Morgan's LTD benefits was based on the Policy definition of BME that the disability benefit will be based on the target benefit compensation amount, which is to be determined by Hitachi. (See, Liberty/Morgan 668-669). And after receiving notification from Morgan appealing the decision

to deny the recalculation of benefits based on Morgan's assertion that Lincoln/Liberty used the incorrect pre-disability income to calculate his benefits, Lincoln/Liberty directed the file to an independent appeal review unit. (See, Liberty/Morgan 84-85, Claim Notes 122-125 dated September 13, 2018; Liberty Morgan 582-584). As a result, the Disability Case Manager sent Morgan's appeal to Lincoln/Liberty's independent Appeal Review Unit, where it was reviewed by an appeal review consultant. Therefore, a separate and independent unit reviewed Morgan's appeal. After further review, the appeal review consultant made the determination to uphold the original decision regarding Morgan's pre-disability earnings with respect to the calculation of Morgan's LTD benefits. These processes demonstrate that Lincoln/Liberty implemented management checks and took affirmative steps to promote accuracy.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed this 3rd day of December, 2020.

Karilann Sneirson