**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **GERALD MORGAN,** | : | |
| Plaintiff, | : | Case No. 2:19-cv-02982-EAS-CMV |
| v. | : | Chief Judge Edmund A. Sargus |
| **HITACHI VANTARA CORPORATION, *et al.*,** | : | Magistrate Judge Chelsey M. Vascura |
| Defendants. | : | |

**DEFENDANTS HITACHI VANTARA LLC AND HITACHI DATA SYSTEMS' HEALTH AND WELFARE BENEFITS PLAN'S MOTION FOR SUMMARY JUDGMENT**

Danielle K. Herring
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 652-4735
Facsimile: (713) 951-9212
Email: dherring@littler.com
*Trial attorney, admitted pro hac vice*

Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: (303) 629-6200
Facsimile: (303) 629-0200
Email: tcarroll@littler.com
*Admitted pro hac vice*

Angelique Paul Newcomb
LITTLER MENDELSON, P.C.
21 East State Street, 16th Floor
Columbus, OH 43215
Telephone: (614) 463-4246
Facsimile: (614) 559-6673
Email: anewcomb@littler.com

*Attorneys for Defendants Hitachi Vantara LLC[1] and the Hitachi Data Systems' Health and Welfare Benefits Plan*

---

[1] Hitachi Vantara Corporation converted to a limited liability company and is now Hitachi Vantara LLC.

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION........................................................................................ 1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................... 2

A. The Plan ........................................................................................ 3

B. Long-Term Disability Benefits Are Based On An Unambiguous Definition Of "Basic Monthly Earnings" ........................................................ 4

C. Hitachi Elected The Definition Of Basic Monthly Earnings Based On Benefit Target Compensation For Morgan ...................................... 4

D. Morgan Applies For And Received Long-Term Disability Benefits .................. 5

E. Morgan Seeks Greater Long-Term Disability Benefits Based On An Alternative Definition Of Basic Monthly Earnings ........................................ 6

III. ARGUMENT........................................................................................ 8

A. Legal Standards ........................................................................................ 8

1. Summary judgment........................................................................ 8

2. Abuse-of-discretion standard of review............................................... 8

B. Morgan's Denial of Benefits Claim Fails Because The Decision To Pay Morgan's Benefits Based On BTC Was Reasonable And Correct .....................10

C. Morgan's Promissory Estoppel Claim Is Merely A Repackaged Claim For Benefits That Is Barred Under ERISA By Supreme Court And Sixth Circuit Precedent ..........................................................................11

D. Morgan Has No Evidence Of Ambiguity In The Plan Language And The Extraordinary Circumstances Required To Establish Promissory Estoppel........13

IV. CONCLUSION........................................................................................16

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bass v. TRW Emp. Welfare Benefits Trust*,
86 F. App'x 848 (6th Cir. 2004) ....................3

*Black v. Pension Benefit Guar. Corp.*,
973 F.3d 576 (6th Cir. 2020) ....................8

*Donati v. Ford Motor Co., Gen. Ret. Plan, Ret. Comm.*,
821 F.3d 667 (6th Cir. 2016) ....................13, 14, 15

*Dow Emps.' Pension Plan*, 703 F. App'x 397, 401 (6th Cir. 2017) ....................9

*Farhner v. United Transp. Union Discipline Income Prot. Program*,
645 F.3d 338 (6th Cir. 2011) ....................2, 10

*Haviland v. Metro. Life Ins. Co.*,
730 F.3d 563 (6th Cir. 2013) ....................14, 15, 16

*Lipker v. AK Steel Corp.*,
698 F.3d 923 (6th Cir. 2012) ....................10

*Marks v. Newcourt Credit Grp., Inc.*,
342 F.3d 444 (6th Cir. 2003) ....................12

*Morgan v. SKF USA, Inc.*,
385 F.3d 989 (6th Cir. 2004) ....................10

*Morrison v. Marsh & McLennan Cos.*,
439 F.3d 295 (6th Cir. 2006) ....................8

*Moss v. Unum Life Ins. Co.*,
495 F. App'x 583 (6th Cir. 2012) ....................12

*Perez v. Aetna Life Ins. Co.*,
150 F.3d 550 (6th Cir. 1998) ....................8, 9, 10

*Rochow v. Life Ins. Co. of N. Am.*,
780 F.3d 364 (6th Cir. 2015) (en banc) ....................12

*Tackett v. M & G Polymers, USA, LLC*,
561 F.3d 478 (6th Cir. 2009) ....................13

*Varity Corp. v. Howe*,
516 U.S. 489 (1996)....................12

**Statutes**

Employee Retirement Income Security Act (“ERISA”)....................*passim*

ERISA § 502(a)(1)(B), 29 U.S.C § 1132(a)(1)(B)....................*passim*

ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3)....................*passim*

ERISA § 502(g), 29 U.S.C. § 1132(g)....................16

**Other Authorities**

Federal Rule of Civil Procedure 54....................16

Federal Rule of Civil Procedure 56....................8, 16

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **GERALD MORGAN,** | : | Case No. 2:19-cv-02982-EAS-CMV |
| | : | |
| **Plaintiff,** | : | Chief Judge Edmund A. Sargus |
| | : | |
| **v.** | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| **HITACHI VANTARA CORPORATION, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANTS HITACHI VANTARA LLC AND HITACHI DATA SYSTEMS' HEALTH AND WELFARE BENEFITS PLAN'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendants Hitachi Vantara LLC and the Hitachi Data Systems' Health and Welfare Benefits Plan (together, the "Hitachi Defendants") move for summary judgment. For the reasons stated in the attached memorandum of law, no genuine issues of material fact exist and the Hitachi Defendants respectfully request that the Court grant this motion, enter judgment in the Hitachi Defendants' favor and against Plaintiff Gerald Morgan, and award the Hitachi Defendants their attorneys' fees, costs and such other relief as the Court deems just and proper.

Respectfully submitted this 7th day of December, 2020.

*s/ Danielle K. Herring*
Danielle K. Herring
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 652-4735
Facsimile: (713) 951-9212
Email: dherring@littler.com
*Trial attorney, admitted pro hac vice*

Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: (303) 629-6200
Facsimile: (303) 629-0200
Email: tcarroll@littler.com
*Admitted pro hac vice*

Angelique Paul Newcomb
LITTLER MENDELSON, P.C.
21 East State Street, 16th Floor
Columbus, OH 43215
Telephone: (614) 463-4246
Facsimile: (614) 559-6673
Email: anewcomb@littler.com

*Attorneys for Defendants Hitachi Vantara LLC and the Hitachi Data Systems' Health and Welfare Benefits Plan*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GERALD MORGAN,**<br><br>Plaintiff,<br><br>v.<br><br>**HITACHI VANTARA CORPORATION, *et al.*,**<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 2:19-cv-02982-EAS-CMV<br><br>Chief Judge Edmund A. Sargus<br><br>Magistrate Judge Chelsey M. Vascura |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS HITACHI VANTARA LLC AND HITACHI DATA SYSTEMS' HEALTH AND WELFARE BENEFITS PLAN'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Gerald Morgan applied for and received long-term disability benefits under the Hitachi Data Systems' Health and Welfare Benefits Plan ("Plan"), a plan governed by the Employee Retirement Income Security Act ("ERISA"). Defendant Hitachi Vantara LLC ("Hitachi" and with the Plan, the "Hitachi Defendants") is the Plan Sponsor and Defendant Liberty Life Assurance Company of Boston ("Liberty") is the claims administer of the Plan. Having received all long-term disability benefits that he is entitled to under the terms of the Plan and accompanying insurance documents, including the applicable definition of "Basic Monthly Earnings," Morgan now claims he should receive greater benefits based on his own, mistaken understanding of earnings, which is a position contrary to the express policy language.

This case is not about whether Morgan should receive disability benefits under ERISA in the first instance, and he does not challenge Liberty's mathematical calculations of his benefits. Instead, this case is about whether Hitachi, as Plan Sponsor, properly exercised its discretion to

choose one of two possible forms of Basic Monthly Earnings and whether Liberty, as claims administrator, properly applied that definition. Substantial evidence in the record exists supporting affirmative answers to both questions, which entitles the Hitachi Defendants to judgment as a matter of law.

Morgan's ERISA claims fail because the Plan unambiguously allowed Hitachi to define earnings, Hitachi elected to apply a $175,000 benefit target compensation amount to Morgan and other sales employees, and—even though this is not necessary to defeat Morgan's claims—Hitachi informed Morgan that his benefits would be calculated based on benefit target compensation. There is no genuine dispute that Morgan received precisely what he is entitled to under the Plan, and summary judgment in favor of the Hitachi Defendants is therefore appropriate.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

This ERISA case raises both a claim for review by the Court pursuant to the administrative record, as well as a second, non-administrative claim for relief. As to Morgan's First Claim for Relief under ERISA § 502(a)(b)(B), 29 U.S.C. §1132(a)(1)(B), which is based on the alleged wrongful denial of additional long-term disability benefits under the Plan, the Court is to consider and limit review to the Administrative Record.[2] *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011). When deciding the Hitachi Defendants' motion as to Morgan's Second Claim for Relief under ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3), which asks for the same relief based on alleged misrepresentations, the Court may also consider undisputed facts outside the Administrative Record.

---

[2] The Administrative Record is filed at [Dkt. 28] and Bates labeled Liberty/Morgan 001-2007. This memorandum cites the Administrative Records as "AR __" (where the page number corresponds to the Bates label).

### A. The Plan.

The Plan provides various welfare benefits to qualified Hitachi employees, including long-term disability benefits. Compl. Ex. 1 [Dkt. 1-1] at 4 of 49.[3] Hitachi is the named Plan Sponsor and Plan Administrator. *E.g.*, *id.* at 4 & 7 of 49; AR 1, 6, 10, 37. The Plan designated and named Liberty as the claims administrator for long-term disability benefits under a group insurance policy. *See* AR 1-75. The Plan and group insurance policy are governed by ERISA. *E.g.*, Compl. Ex. 1 [Dkt. 1-1] at 26 of 49; AR 1. The Hitachi Data Systems' Health and Welfare Benefits Adoption Agreement, Plan and Summary Plan Description, together with documents from insurance carriers were available to Hitachi employees on the HR Gateway. Compl. Ex. 1 at 1 of 49.

Under the Plan, Hitachi has full discretionary authority to interpret and administer the Plan and, with respect to benefits provided by an insurance policy—like the long-term disability benefits—Hitachi delegated the full discretionary authority to determine applicable claims for benefits and appeals to the applicable insurance carrier. Compl. Ex. 1 at 7 & 13 of 49. Such insurance carriers, including Liberty in this case, have the discretionary authority under the Plan to interpret the applicable policy and Plan terms. *Id.* As to the long-term disability benefits at issue, Liberty possesses the authority, in its sole discretion, to construe the terms of the group insurance policy and to determine benefit eligibility, and Liberty's decisions regarding

[3] Exhibit 1 to the Complaint is the Hitachi Data Systems' Health and Welfare Benefits Adoption Agreement, Plan and Summary Plan Description. Exhibit 1 is not in the Administrative Record that Liberty filed, but there is no dispute that it is authentic and governs Morgan's claim for benefits along with the Group Disability Income Policy and Certificate of Coverage Liberty filed with the Administrative Record. *See* Compl. ¶ 8 & Ex. 1; [Dkt. 5] ¶ 8 (Liberty's answer); [Dkt. 25] ¶ 8 (Hitachi Defendants' amended answer); AR 1-75. It is appropriate for the Court to consider the Plan itself. *Bass v. TRW Emp. Welfare Benefits Trust*, 86 F. App'x 848, 851 (6th Cir. 2004) (stating that the rule limiting review to the administrative record does not cover the benefits plan itself).

construction of the terms of this policy and benefit eligibility are conclusive and binding. AR 29, 70. Liberty calculates benefits amounts based on Basic Monthly Earning information received from Hitachi. *E.g.*, AR 680.

### B. Long-Term Disability Benefits Are Based On An Unambiguous Definition Of "Basic Monthly Earnings"

The Liberty Group Disability Income Policy and corresponding Certificate of Coverage unambiguously describe the amount of long-term disability benefits under the Plan. *See generally* AR 1-75. Specifically, eligible employees receive 60% of Basic Monthly Earnings, not to exceed to Maximum Monthly Benefit of $15,000. AR 4, 40. The definition of Basic Monthly Earnings is unambiguous:

> **"Basic Monthly Earnings"** or **"Pre-Disability Earnings"** means the Covered Person's monthly rate of earnings from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins. ***Earnings will be defined as either, base pay and the short term incentive (STI) target at 100%, or as a benefit target compensation amount. Earnings type to be defined by the Sponsor. Such earnings will not include other forms of compensation.***

AR 6 (emphasis added); *see also* AR 43. As indicated, earnings are either base pay and STI ***or*** a benefit target compensation ("BTC") amount, with the type of earnings defined by Hitachi as the Sponsor. *Id*. Earnings do not include other forms of compensation. *Id.*

### C. Hitachi Elected The Definition Of Basic Monthly Earnings Based On Benefit Target Compensation For Morgan.

Consistent with the Plan's two alternative options of Basic Monthly Earnings, Hitachi (as Sponsor) elected to apply BTC to Sales employees. AR 660. The BTC code was assigned to Morgan when he started employment based on his employee code as a salesman. *Id.* As of October 12, 2012, the BTC applicable to sales representatives like Morgan was $130,000. Ex. A – Decl. of Thomas W. Carroll ("Carroll Decl.") ¶ 1 & Ex. 1. The $130,000 BTC amount was reflected on Morgan's 2013 benefits-enrollment confirmation. *Id.* at ¶ 2 & Ex. 2. Specifically,

the enrollment confirmation showed "Basic Life and AD&D" benefits were twice his annual base salary or BTC ($260,000) and "Business Travel Accident" benefits were three times his annual base salary or BTC ($390,000)—reflecting that one year of BTC was $130,000. The confirmation also identified that long-term disability benefits were 60% of target compensation or BTC. *Id.*

In 2012, Hitachi undertook a review process regarding BTC for U.S. Sales employees. Ex. B – Decl. of Gilbert Villegas ¶ 2. On December 4, 2012, Hitachi announced that the BTC for Sales employees known as Individual Contributors would increase to $175,000, effective January 1, 2013. Carroll Decl. ¶¶ 5-7, Ex. 3, Ex. 4, Ex. 5 ("Villegas Dep.") 23:19-25, 36:3-37:12, 48:11-20.[4] Hitachi's announcement twice affirmed that it used BTC for Sales employees as a basis for determining long-term disability benefits (in addition to other benefits). Carroll Decl. Exs. 3, 4.

Hitachi sent the December 4, 2012 email about the $175,000 BTC amount to Morgan and it applied to him. Villegas Decl. ¶ 8; Carroll Decl. Ex. 4.[5]

### D. Morgan Applies For And Received Long-Term Disability Benefits.

Morgan began working as a sales representative for Hitachi on October 11, 2010. AR 76, 573. His last day of active employment was June 9, 2015, and he is not currently working due to various serious medical conditions. *Id.* Morgan initially received short-term disability benefits from June 10, 2015 to June 9, 2016. AR 1818. The short-term disability benefits Morgan

---

[4] Two versions of the December 4, 2012 email to Morgan are in the record; one from Hitachi's files (deposition exhibit 7) and a second produced by former employee Gilbert Villegas (deposition exhibit 9). The two versions are the same except that the later includes the bcc recipients. *Id.*

[5] Hitachi also used BTC for Sales Managers and a separate December 4, 2012 email announced that amount was changing to $250,000 effective January 1, 2013. Villegas Decl. ¶ 9; Carroll Decl. ¶ 8 & Ex. 6.

received were calculated and paid based on his $175,000 BTC. AR 551, 2001.[6] After a year, Morgan applied for long-term disability benefits and Liberty approved the claim. AR 1774-76. As to the long-term disability benefits at issue here, Morgan's date of disability is June 10, 2015, and his long-term disability benefits began on June 9, 2016. *E.g.*, AR 76, 1775. (There is a one-day overlap between short-term and long-term disability benefits. AR 1338.)

As a Sales Commission employee, and like short-term disability benefits, Morgan's long-term disability benefits and Basic Monthly Earnings are based on a BTC of $175,000. *E.g.*, AR 1339, 1746; *accord* Carroll Decl. Exs. 3, 4. The Administrative Record reflects that Hitachi validated on multiple occasions that Morgan's earnings would be based on BTC and that $175,000 was the correct BTC amount. *E.g.*, AR 83 (10/17/2018 note showing that Hitachi validated $175,000 BTC on multiple occasions), AR 94 (7/28/2018 reflecting that $175,000 BTC is correct), AR 695 (email confirming $175,000 BTC), AR 1746 (same).

### E. Morgan Seeks Greater Long-Term Disability Benefits Based On An Alternative Definition Of Basic Monthly Earnings.

Morgan began challenging the amount of his long-term disability benefits almost immediately and his arguments always return to a single request: he asks to be paid benefits based on $230,000 in monthly earnings, not based on the $175,000 BTC that Hitachi elected for Sales employees like him pursuant to the Plan. Morgan's attorney wrote Liberty on July 26, 2016, and asked why Morgan's benefits were based on earnings of $175,000. *See* AR 1749-53. Liberty "confirmed that as Mr. Morgan is a Sales Commission employee, his benefits are based on the Benefit Target Comp and according to HDS [Hitachi], his is $175,000." AR 1749. Hitachi confirmed the BTC amount again, this time through counsel, in emails dated August 2, 2016 and

[6] Short-term disability benefits are paid at 80% of weekly base salary or—as in Morgan's case—BTC. AR 551. Morgan received $2,692.31 per week, which is 80% of his $175,000 BTC, divided by 52 weeks. AR 2001.

September 19, 2016. Carroll Decl. ¶ 9 & Ex. 7. Liberty further confirmed the $175,000 BTC and explained its calculations in a November 28, 2017 letter to Morgan's attorney. AR 1338.

Not satisfied, Morgan submitted a formal claim for benefits on April 17, 2018. AR 677-88. Like his claims in this case, Morgan did not challenge the mathematical calculations of his long-term disability benefits, but rather the underlying discretionary election that his benefits are based on BTC instead of his own target-compensation calculation. AR 677. Despite quoting the definition of Basic Monthly Earnings—including Hitachi's option as Sponsor to apply BTC—Morgan's administrative claim argued that the $175,000 BTC is without support in the Plan and he should be paid based on $230,000, which is his own determination of the allegedly correct number. *Id.*

Liberty responded to Morgan's claim on June 8, 2018, and explained its calculations under the Plan. AR 1156. After another letter from Morgan's attorney, AR 692-93, Liberty re-confirmed the benefit amount with Hitachi and once again confirmed with Morgan's counsel that the correct amount to be used in Morgan's benefit calculation is the $175,000 BTC amount. AR 660-67. Morgan's attorney repeated substantially the same arguments in a July 9, 2018 letter, alleging that the Plan does not allow Hitachi to use a "completely random" number for benefits calculations. AR 654-59, Liberty responded on July 12, 2018, and reiterated that the BTC amount is not "completely random," but rather based on the Plan definition that benefits may be based on BTC, which is to be determined by the employer. AR 668-69.

Morgan appealed the denial of additional benefits on September 7, 2018. AR 577-80. The appeal continued to apply Morgan's own definition of "pre-disability earnings" instead of the Plan's definition, and claimed he should be paid higher benefits because he did not know about the $175,000 amount. *Id.* On October 17, 2018, Liberty denied Morgan's appeal based on its

determination that the benefit amount was correct based on the policy terms and provisions. AR 512-15. The decision reflects that Liberty reviewed all documentation that Morgan submitted, in addition to the language of the applicable policy. *Id.*

## III. ARGUMENT

### A. Legal Standards.

#### 1. Summary judgment.

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Black v. Pension Benefit Guar. Corp.*, 973 F.3d 576, 581 (6th Cir. 2020) (citation omitted); Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law." *Id.* (citation omitted). Where the parties file cross-motions for summary judgment, the Court evaluates each motion on its own merits, drawing all reasonable inferences against the party or parties whose motion is under consideration. *Id.*

#### 2. Abuse-of-discretion standard of review.

Courts in the Sixth Circuit review a plan administrator's denial of benefits de novo, "unless the benefit plan specifically gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 301 (6th Cir. 2006) (citing *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996)). "Where an ERISA plan gives the plan administrator such discretionary authority," courts review benefits denials "under an 'arbitrary and capricious' standard." *Id.* (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). While no "magic words" are necessary "to vest discretion in the plan administrator and trigger the arbitrary and capricious standard," *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998)

(quoting *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1995)), provisions containing a clear grant of "authority to determine eligibility for benefits or to construe" their terms are sufficient. *Id.* (quoting *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1453 (D.C. Cir. 1992)).

"Review under the arbitrary and capricious standard is the least demanding form of judicial review." *Id.* The Court's review under the standard "must actually honor an extreme level of deference to the administrative decision." *Johnston v. Dow Emps.' Pension Plan*, 703 F. App'x 397, 401 (6th Cir. 2017) (quoting *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014)). Satisfaction of the standard "requires only an explanation based on substantial evidence that results from a deliberate and principled reasoning process." *Perez*, 150 F.3d at 555. Thus, under the arbitrary-and-capricious standard, a plan administrator's interpretation must be upheld so long as it is "reasonable." *Id.* (citing *Firestone*, 489 U.S. at 111; *Baker v. MWA Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

Here, the Plan expressly states that Hitachi has full discretionary authority to interpret and administer the Plan and, with respect to long-term disability benefits at issue here, Hitachi delegated the full discretionary authority to determine applicable claims for benefits and appeals to Liberty.[7] Liberty has the discretionary authority under the Plan to interpret the applicable

---

[7] Compl. Ex. 1 at 13 of 49 ("The Plan Administrator has the sole discretionary authority and responsibility to administer and control the Plan in accordance with its terms, and has, without limitation, the discretionary authority to interpret the Plan or its terms except when such authority has been retained by an insurance carrier or other entity under the terms of an insurance policy or other contract. The Plan Administrator's powers include making and enforcing rules it deems necessary or proper for the efficient administration of the Plan, allocating its responsibilities under the Plan to other persons, and deciding all questions concerning the Plan, including determining eligibility for benefits under the Plan. The Plan Administrator may delegate all or a portion of its responsibilities to one or more agents or to a committee. Such delegation includes discretionary authority unless that authority is specifically limited in the delegation. With respect to benefits that are provided pursuant to an insurance policy, the Plan

policy and Plan terms, Liberty possesses the authority, in its sole discretion, to construe the terms of group insurance policy and to determine benefit eligibility, and Liberty's decisions regarding construction of the terms of this policy and benefit eligibility are conclusive and binding. AR 29, 70. Accordingly, this Court must review Liberty's decision under the arbitrary-and-capricious standard of review, based on the Administrative Record, and uphold the decision so long as it is "reasonable." *Farhner*, 645 F.3d at 343; *Perez*, 150 F.3d at 555.

### B. Morgan's Denial of Benefits Claim Fails Because The Decision To Pay Morgan's Benefits Based On BTC Was Reasonable And Correct.

Summary judgment is appropriate on Morgan's denial of benefits claim under ERISA because he is seeking benefits to which he is not entitled under the plain language of the governing Group Disability Income Policy and Certificate of Coverage. Again, Morgan's claim is not about his underlying or continuing eligibility for long-term disability benefits or how those benefits were calculated; he only asks that the Court grant him additional benefits based on his own, different definition of "Basic Monthly Earnings."

"When interpreting ERISA plan provisions, general principles of contract law apply; unambiguous terms are given their 'plain meaning in an ordinary and popular sense.'" *Lipker v. AK Steel Corp.*, 698 F.3d 923, 928 (6th Cir. 2012) (quoting *Farhner*, 645 F.3d at 343). "In interpreting a plan, the administrator must adhere to the plain meaning of its language as it would be construed by an ordinary person." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).

---

Administrator has delegated the full discretionary authority to determine applicable claims for benefits and appeals of denied claims to the applicable insurance carrier. Such carriers shall have the discretionary authority to interpret the applicable policy and Plan terms and the applicability of relevant laws and regulations, for the purpose of determining and paying claims for benefits."); *see also id.* at 7 of 49.

Morgan's claim fails because the definition of Basic Monthly Earnings explicitly allows Hitachi, as Sponsor, to choose between either (a) base pay and the short term incentive (STI) target at 100%, or (b) a BTC amount. AR 6, 43. Regardless of whether Morgan knew about Hitachi's election (which is further discussed below), there is no dispute that Hitachi exercised its discretion and elected that Morgan's long-term disability benefits would be calculated based on BTC. There also is no dispute that Hitachi applied a $175,000 BTC to Morgan and other employees like him as of January 1, 2013. In turn, Liberty reasonably and properly applied Hitachi's BTC election to Morgan's benefits, accurately calculated and paid him benefits under the terms of the Plan and insurance policy, and properly denied his claim for additional benefits.

Quite simply, Morgan has no basis under the Plan or the applicable insurance policy to recover additional benefits. Morgan has received everything he is entitled to under the Plan, Hitachi's election of BTC and Liberty's determination were rational and appropriate—and well within their discretion—and the First Claim for Relief fails as a matter of law.

### C. Morgan's Promissory Estoppel Claim Is Merely A Repackaged Claim For Benefits That Is Barred Under ERISA By Supreme Court And Sixth Circuit Precedent.

Hitachi is entitled to summary judgment for two reasons on Morgan's Second Claim for Relief, promissory estoppel under ERISA § 502(a)(3).[8] The first reason is that the promissory-estoppel claim is an impermissible repackaged version of his claim for benefits under ERISA § 502(a)(1)(B) and therefore does not constitute "appropriate" equitable relief under § 502(a)(3) and Supreme Court and Sixth Circuit precedent interpreting it.

ERISA § 502(a)(3) provides ***potential*** equitable relief to plaintiffs who cannot otherwise recover under the terms of a plan. Although § 502(a)(3) is the correct part of ERISA's civil-

[8] The Second Claim for Relief is only against Hitachi. Compl. ¶ 76; Preliminary Pretrial Order [Dkt. 18] 2 (". . . and for equitable relief against Employer on the basis of promissory estoppel").

enforcement provisions under which a promissory-estoppel claim might proceed, Morgan's claim is barred because it is entirely duplicative of his claim for benefits. In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court interpreted the meaning of "appropriate" equitable relief under ERISA § 502(a)(3). The Court explained:

> [T]he statute [29 U.S.C. § 1132(a)(3)] authorizes "*appropriate*" equitable relief. We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others." Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

*Id*. at 515 (internal citations omitted; emphasis in original).

Following *Howe*, the Sixth Circuit has refused to allow duplicative claims for relief under ERISA. For example, it rejected a claimant's attempt to recover equitable relief through a § 502(a)(3) claim where the claimant already had an adequate remedy available with his claim for payment of benefits under § 502(a)(1)(B). *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 370-76 (6th Cir. 2015) (en banc); *see also Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 454 (6th Cir. 2003) ("[A] participant cannot seek equitable relief . . . under the catchall provision of § 502(a)(3) if the alleged violations are adequately remedied under other provisions of § 502."), *superseded on other grounds by regulation*, *as recognized in Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 889 (6th Cir. 2020). The question is not whether Morgan has recovered additional benefits under § 502(a)(1)(B), but rather whether he ***may*** recover. *Moss v. Unum Life Ins. Co.*, 495 F. App'x 583, 589 (6th Cir. 2012) ("[I]f § 1132(a)(1)(B) provides the entire remedy for a plaintiff's claims, then the plaintiff cannot also seek relief under § 1132(a)(3).").

There can be no "appropriate" equitable relief because Morgan seeks and has access to adequate relief through his claim challenging the amount of long-term disability benefits that he seeks under the Plan. Morgan's estoppel claim itself asks for "equitable relief for promissory estoppel against Defendant Hitachi ***to recover the correct amount of the long-term disability income benefit.***" Compl. ¶ 76. Likewise, the prayer for relief asks for a declaratory judgment that Morgan is entitled to benefits based on his $230,000 definition of Basic Monthly Earnings and an order compelling Liberty to pay him what he seeks. *Id.* at 11 ¶¶ 1-2. Each of those remedies is cognizable under § 502(a)(1)(B). *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 492 (6th Cir. 2009) (citing and quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)). In *Tackett*, the Sixth Circuit recognized that the plaintiffs' § 502(a)(3) claims were "simply repackaged claims for benefits" and they failed as a matter of law. *Id.*; *see also Donati v. Ford Motor Co., Gen. Ret. Plan, Ret. Comm.*, 821 F.3d 667, 673-74 (6th Cir. 2016) (affirming judgment for employer where plaintiff did not seek any equitable relief in addition to money promised and "[t]he only difference between her two claims is the nature of the alleged wrongdoing—misrepresenting the cash-out value of her benefits, as opposed to wrongfully denying her benefits").

Morgan's Complaint and prayer for relief show that his § 502(a)(3) claim seeks the same relief as his § 502(a)(1)(B) benefits claim and summary judgment in favor of Hitachi is appropriate under the precedent of *Howe* and its progeny.

### D. Morgan Has No Evidence Of Ambiguity In The Plan Language And The Extraordinary Circumstances Required To Establish Promissory Estoppel.

Morgan's promissory-estoppel claim under ERISA also fails on the merits. The elements for an estoppel claim in the Sixth Circuit are well established:

> (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting estoppel must reasonably or justifiably rely on the representation to his detriment.

*E.g.*, *Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 567–68 (6th Cir. 2013). Importantly, estoppel principles cannot be applied to vary the terms of unambiguous plan documents; estoppel can only apply in the context of ambiguous plan provisions. *Id.* at 568. The only exception for unambiguous plans is where the plaintiff can demonstrate all five elements of estoppel ***plus*** (6) a written representation, (7) plan provisions, which, although ambiguous, did not allow for individual calculation of benefits, and (8) extraordinary circumstances in which the balance of equities strongly favors applying estoppel. *Id.* at 569. The Sixth Circuit considers it a narrow exception. *Donati*, 821 F.3d at 675.

Here, Morgan's estoppel claim fails on multiple grounds. First, there is no representation of material fact. The Complaint alleges that the 2015 Benefits Guide amounted to a representation of material fact. Compl. ¶ 69; *see also* Compl. ¶¶ 18 & Ex. 4 [Dkt. 1-4]; AR 521-72. The Complaint does not quote any particular language and it is unclear what exactly Morgan alleges is a representation of material fact. The Benefits Guide, however, makes clear that long-term disability benefits are based on "pre-disability income ***as defined in the Summary Plan Description***." *E.g.*, AR 551 (emphasis added). The Benefits Guide also plainly states that it is only a summary of benefits, the benefits plans themselves are the official documents, and in the event of any conflict between the Benefits Guide and the plans, the official plan documents will govern. *Id.* at 523. In sum, the Benefits Guide refers to the Plan documents and it does not constitute a representation of material fact, and therefore Morgan's claim does not meet the first element required for promissory estoppel.

Second, Morgan fails the second element because he was aware that his earnings would be based on BTC. The undisputed facts demonstrate that Hitachi communicated his BTC amount to him on December 4, 2012. Carroll Decl. Exs. 3, 4; Villegas Dep. 23:19-25, 36:3-37:12, 48:11-20. It was also part of his 2013 benefits-enrollment confirmation, Carroll Decl. Ex. 2, and he received short-term disability benefits for a year based on BTC before he started receiving the long-term benefits at issue here. AR 551, 2001. Morgan denies receiving the email, but there is no genuine dispute. Villegas declared under oath and testified that he sent the notification email, just as he stated he would do, and the email itself includes Morgan in the recipient list. Carroll Decl. Exs. 3, 4. Villegas also testified that he did not recall any bounce-back emails that might call into question whether Morgan received the email. Villegas Dep. 39:13-17.

Third, Morgan did not justifiably rely on any alleged representation to initially establish a basis for estoppel. The Benefits Guide he cites expressly referred back to the Plan documents, and the Plan documents in turn provide Hitachi the option of two different definitions of Basic Monthly Earnings. Even assuming Morgan did not have notice of Hitachi's election (which he did), there is nothing in the Benefits Guide that would reasonably allow Morgan to conclude his long-term disability payments should be greater than he received.

Fourth, the Sixth Circuit standard is that estoppel does not apply when plan terms are unambiguous, with limited narrow exceptions. *Donati*, 821 F.3d at 675; *Haviland*, 730 F.3d at 567-8, 569. Here, the terms of the Plan and group insurance policy are unambiguous: the policy defines Basic Monthly Earnings and provides two options for Hitachi for purposes of that computation. Furthermore, this case does not present the sort of exceptional circumstances that would overcome the general rule. *See Donati*, 821 F.3d at 675 (rejecting the argument that reliance on misinformation in retirement and estate planning alone constitutes extraordinary

circumstances and citing *Haviland*); *Haviland*, 730 F.3d at 567, 569 (holding circumstances not extraordinary when "MetLife falsely promised that [the plaintiffs'] continuing life insurance benefits would not be reduced for the rest of their lives, when in fact their benefits were reduced to $10,000," and "these false promises affected the plaintiffs' retirement and estate planning decisions").

Morgan cannot raise a genuine issue of fact to establish the five elements of a promissory-estoppel claim, let alone all eight elements required for the narrow exception that applies to unambiguous plans like the Plan here. For these reasons, Hitachi is entitled to judgment as a matter of law as to promissory estoppel under Rule 56.

## IV. CONCLUSION

Both of Morgan's claims under ERISA are without factual or legal support. The Administrative Record and the undisputed material facts before the Court demonstrate that Morgan received the long-term disability benefits to which he was entitled under the Plan. In the face of the clear and unambiguous discretion that allows Hitachi to elect BTC and allows Liberty to apply BTC, Morgan argues that he should receive extra benefits above and beyond the definition of Basic Monthly Earnings that applies to Hitachi Sales employees like him. There is no basis in the Plan, the governing policies, or ERISA for his claims and the Hitachi Defendants are entitled to judgment as a matter of law. Under ERISA § 502(g), 29 U.S.C. § 1132(g), and Federal Rule of Civil Procedure 54, they are also entitled to their attorneys' fees and costs.

WHEREFORE, the Hitachi Defendants respectfully request that the Court enter summary judgment in their favor and against Morgan on all of his claims, award the Hitachi Defendants their attorneys' fees and costs, and award the Hitachi Defendants such other relief as the Court deems just and proper.

Respectfully submitted this 7th day of December, 2020.


*s/ Danielle K. Herring*
Danielle K. Herring
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 652-4735
Facsimile: (713) 951-9212
Email: dherring@littler.com
*Trial attorney, admitted pro hac vice*

Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: (303) 629-6200
Facsimile: (303) 629-0200
Email: tcarroll@littler.com
*Admitted pro hac vice*

Angelique Paul Newcomb
LITTLER MENDELSON, P.C.
21 East State Street, 16th Floor
Columbus, OH 43215
Telephone: (614) 463-4246
Facsimile:(614) 559-6673
Email: anewcomb@littler.com

*Attorneys for Defendants Hitachi Vantara LLC and the Hitachi Data Systems' Health and Welfare Benefits Plan*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 7th day of December, 2020, the foregoing **DEFENDANTS HITACHI VANTARA LLC AND HITACHI DATA SYSTEMS' HEALTH AND WELFARE BENEFITS PLAN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW** has been filed via the Court's electronic filing system. Notice of filing will be performed by the Court's electronic filing system, and Parties may access the document through the Court's electronic filing system.

*s/ Danielle K. Herring*
Danielle K. Herring

4853-2520-4946.7 083423.1021