**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GERALD MORGAN,** | : | |
| | : | **Case No. 2:19-cv-2982** |
| **Plaintiff,** | : | |
| | : | **Judge Sargus** |
| **v.** | : | |
| | : | **Magistrate Judge Vascura** |
| **HITACHI VANTARA CORPORATION et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**PLAINTIFF GERALD MORGAN'S MEMORANDUM IN OPPOSITION TO DEFENDANT LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Now comes Plaintiff Gerald Morgan ("Morgan"), by and through counsel, and hereby responds in opposition to Defendant Liberty Life Assurance Company of Boston's ("Liberty") Motion for Judgment on the Administrative Record. (DKT # 46). As explained in Morgan's Motion for Partial Summary Judgment (DKT # 45), it is Morgan who is entitled to judgment as a matter of law with regard to Liberty's denial of his claim for increased benefits, not any Defendant. Accordingly, this Court should deny Liberty's Motion.

## I. STATEMENT OF THE FACTS.

Morgan began his employment with Defendant Hitachi Vantara LLC f/k/a Hitachi Data Systems on or about October 12, 2010. (Liberty Administrative Record ("Admin. Record"), DKT # 28-3, Page ID # 940). At the time of his hiring, Morgan informed Hitachi that he would not take the position for less than a $200,000.00 per year annual salary. (*Id.* at Page ID # 941). Morgan's Sales Commission Plan effective April 1, 2015, which was in effect on his date of disability, set his base pay and short-term incentive target for the year at $230,000.00. (Admin. Record, DKT #

28-3, Page ID ## 941, 943). Morgan's average actual income exceeded the amount set forth in the Sales Commission Plan due to accelerators, commissions beyond his short-term incentive target, and bonuses. (Admin. Record, DKT # 28-3, Page ID # 942).

At all times relevant, Hitachi sponsored and administered an employee welfare benefit plan that included a long-term disability income benefit. While employed at Hitachi, Morgan did not have access to the Plan Document or the Summary Plan Description. (Admin. Record, DKT # 28-3, Page ID # 941). When he enrolled for the long-term disability income benefits each year, Morgan relied on the information provided by Hitachi in annual Open Enrollment Benefits Guides. (*Id.* at Page ID # 942). For Plan year 2015, the Open Enrollment Benefits Guide informed Morgan that his long-term disability income benefit would be based on his pre-disability monthly income. (Admin. Record, DKT # 28-3, Page ID # 974).

The 2015 Open Enrollment Benefits Guide states, "[w]hen illness or injury makes it impossible for you to work for an extended period of time, the Long-Term Disability coverage will replace sixty percent of <u>your</u> pre-disability monthly income as defined in the Summary Plan Description to a maximum benefit of $15,000.00 per month." (Admin. Record, DKT # 28-3, Page ID # 974) (emphasis added).

The Hitachi Data Systems' Health and Welfare Benefits Adoption Agreement, Plan and Summary Plan Description states that "the Hitachi Data Systems' Health and Welfare Plan document, Appendices 1, 2 and 3 to the Hitachi Data Systems' Health and Welfare Plan document, this Adoption Agreement to the Hitachi Data Systems' Health and Welfare Plan document, along with the Evidences of Coverage or Benefit Booklets that apply to the Coverage(s) in which a Participant is enrolled, and any summaries of material modifications ("SMMs"), constitute a Participant's summary plan description (as that term is defined by ERISA) for the Plan." (DKT #

1-1, Page ID # 18).[1] The Summary Plan Description, via the Group Disability Income Policy, sets forth the long-term disability income benefit at sixty percent (60%) of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $15,000.00. (DKT # 28-1, Page ID # 353). A monthly benefit based on sixty percent (60%) of Morgan's Basic Monthly Earnings—set at the $230,000.00 annual amount—would be $11,500.00, well below the $15,000.00 Maximum Monthly Benefit.

The Summary Plan Description, via the Group Disability Income Policy, defines "Basic Monthly Earnings" or "Pre-Disability Earnings" as:

> [T]he Covered Person's monthly rate of earnings from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins. Earnings will be defined as **either**, base pay and the short-term incentive (STI) target at 100%, **or** as a benefit target compensation amount. Earnings type to be defined by the Sponsor. Such earnings will not include other forms of compensation.

(DKT # 28-1, Page ID # 355) (Emphasis added).[2] "Benefit target compensation amount" is not defined in the Group Disability Income Policy, the Certificate of Coverage or elsewhere in the Plan Document or Summary Plan Description. The Summary Plan Description contains no other information describing the pre-disability income applicable to the long-term disability income benefit.

While working at Hitachi, Morgan was never informed by any person or entity that Hitachi had selected a benefit target compensation amount to apply to him or what such an amount would be. (Admin. Record, DKT # 28-3, Page ID # 940-942). There is no information in the Administrative Record indicating otherwise. Morgan was never provided any information, nor was any information made available to him, indicating that his disability income would be based on a

---

[1] As Hitachi admitted in its Motion for Summary Judgment, the Plan Document and Summary Plan Description were never reviewed by Liberty and are not part of the Administrative Record. (DKT # 47, Page ID # 2431).

[2] The Certificate of Coverage contains virtually identical definitions to the Group Disability Income Policy. (DKT # 28-2, Page ID # 392).

figure less than his Basic Monthly Earnings set forth in his Sales Commission Plan and/or his actual income, which was higher than the Basic Monthly Earnings figure from the Sales Commission Plan.

Morgan's last date of active employment was in June 2015. Morgan suffers from hydrocephalus, subdural hematoma, and other related serious medical conditions. (Admin. Record, DKT # 28-3, Page ID # 940). After exhausting his short-term disability benefits, Morgan applied for and received long-term disability income benefits pursuant to the Plan beginning June 9, 2016. (Admin. Record, DKT # 28-5, Page ID # 2123-2125). Liberty's initial award letter stated that the policy provides "60% of his pre-disability earnings." (*Id.* at 2124) (emphasis added). $11,500.00 would be the monthly benefit based on Morgan's pre-disability earnings (Basic Monthly Earnings), as evidenced by his Sales Commission Plan in effect at the time of his disability. (Admin. Record, DKT # 28-3, Page ID ## 941, 943). Instead of $11,500.00 per month, Liberty has been paying Morgan a monthly benefit of approximately $8,750.00.[3]

Morgan realized that the amount of benefits he was receiving was too low, and contacted Liberty and Hitachi. Via letter dated December 15, 2017, Morgan, through counsel, requested information from the Defendants, including: [a]ll correspondence sent to Mr. Morgan from 2010 to present regarding the definitions applicable to the long term disability income benefit, including a description of how the information would have allegedly been transmitted to Mr. Morgan and any evidence of receipt."[4] (Admin. Record, DKT # 28-5, Page ID # 1690). In subsequent correspondence, Hitachi, through a letter from counsel dated March 15, 2018 ("Wrangham

---

[3] Morgan's monthly benefit of $8,750.00 is now being reduced by the amount of monthly benefits he receives from the United States Social Security Administration.

[4] Liberty initially refused to provide information to Morgan's counsel regarding his claim. (Admin. Record, DKT # 28-5, Page ID # 1708).

Letter"), informed Morgan's counsel that "Hitachi does not have records of correspondence with Mr. Morgan regarding his LTD income benefit." (Admin. Record, DKT # 28-3, Page ID # 938). By the Wrangham Letter, Hitachi admitted that it never informed Morgan that a benefit target compensation amount would serve as his Basic Monthly Earnings for the long-term disability income benefit, because such a communication would have been directly responsive to the request.

Pursuant to the Adoption Agreement that is part of the Plan Document, Hitachi, as Plan Administrator, delegated discretionary authority to determine claims to the insurance carriers. (DKT # 1-1, Page ID # 19). Additionally, the Certificate of Coverage issued under the long-term disability policy states that Liberty possesses the authority to determine benefit eligibility and construction of terms. (DKT # 28-2, Page ID # 419). Accordingly, Liberty holds discretionary authority for long-term disability income claims under the Plan.

On or about April 17, 2018, Plaintiff, through counsel, filed a claim for the correctly calculated benefit amount utilizing the $230,000.00 Basic Monthly Earnings figure. (Admin. Record, DKT # 28-4, Page ID ## 1026-1037). In an email dated June 26, 2018, Hitachi's counsel contacted Liberty about "coordinating" the response to the claim. (Admin. Record, DKT # 28-4, Page ID # 1038). In correspondence dated June 21 and 22, 2018, Liberty completely disregarded the fact that Morgan filed a claim and indicated that Hitachi said that $175,000.00 was the correct pre-disability income figure. (Admin. Record, DKT # 28-4, Page ID ## 1009-1016). After further correspondence, Liberty denied the claim via letter dated July 12, 2018. (Admin. Record, DKT # 28-4, Page ID ## 1017-1020). The denial letter contained zero analysis of Morgan's claim—Liberty just parroted Hitachi's assertion that $175,000.00 was the proper figure upon which to base his benefit, and in fact misidentified the pertinent definitions from the Plan language. (*Id*. at 1017-1018).

On or about September 7, 2018, Morgan, through counsel, requested a review of the July 12, 2018, decision pursuant to the terms of the Plan. (Admin. Record, DKT # 28-3, Page ID ## 934-995). Liberty denied Morgan's request for review via correspondence dated October 17, 2018, in which it acknowledged that Morgan exhausted his administrative rights to review the claim. (Admin. Record, DKT # 28-3, Page ID ## 861-864). Liberty never investigated or considered the arguments raised by Morgan in his appeal materials. Instead, Liberty stated only that Hitachi "validated" that $175,000.00 was the applicable benefit target compensation amount for Morgan. (*Id*. at Page ID ## 862-863).

Morgan commenced this Action on July 10, 2019, raising two claims. (DKT # 1). Morgan's First Claim for Relief is a claim to enforce his rights under the Plan to recover the correct amount of benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff's Second Claim for Relief, which is not the subject of Liberty's Motion, is for promissory estoppel against Hitachi under 29 U.S.C. § 1132(a)(3)(B). Because Liberty's denial of Morgan's claim for increased benefits lacked consideration or analysis, it was arbitrary and capricious as a matter of law. Morgan, not Liberty, is entitled to summary judgment as to his claim for benefits under 29 U.S.C. § 1132(a)(1)(B).

## II. <u>ARGUMENT</u>.

### A. Summary Judgment Standard.

Fed. R. Civ. P. 56(a) states, in relevant part: "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

There are no facts in dispute regarding Morgan's First Claim for Relief under 29 U.S.C. § 1132(a)(1)(B). The Administrative Record clearly demonstrates that Liberty failed to conduct any

investigation into or consider the evidence presented by Morgan in his appeal. Such failure resulted in an arbitrary and capricious decision to deny Morgan's claim for increased benefits under the Plan. It is Morgan, not Liberty, who is entitled to judgment as a matter of law for his First Claim for Relief.

### B. Liberty's Denial of Morgan's Claim for Increased Benefits Was Arbitrary and Capricious and so It is Morgan who is Entitled to Judgment as a Matter of Law.

The parties agree that Morgan's First Claim for Relief should be evaluated under the arbitrary and capricious standard because Hitachi, as Plan Administrator, delegated discretionary authority to Liberty for long-term disability income benefit claims. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014). Application of that standard in this matter demonstrates that it is Morgan, not Liberty, who is entitled to judgment as a matter of law.

"When reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made." *McClain*, 740 F.3d at 1064 (Internal citations omitted). "A decision reviewed according to the arbitrary and capricious standard must be upheld if it results from 'a deliberate principled reasoning process' and is supported by 'substantial evidence.'" *Schwalm v. Guardian Life Ins. Co. of America*, 626 F.3d 299, 308 (6th Cir. 2010) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). Liberty's decisions to deny Morgan's claim and request for review did not result from a deliberate principled reasoning process and were not supported by substantial evidence. Accordingly, Liberty's denial of Morgan's claim was arbitrary and capricious and Morgan, not Liberty, is entitled to summary judgment.

1. <u>The Court should disregard Liberty's improper and self-serving declaration</u>.

Liberty's self-serving declaration should be disregarded. (DKT # 46-1). First, as Liberty itself acknowledges, the Court is limited to considering the materials reviewed by Liberty in reaching its claim decision, which does not include the declaration. *McClain*, *supra*, 740 F.3d at 1064. Second, the information contained in the declaration is irrelevant to the matter at issue. Regardless of whether Liberty separates or employs multiple levels of review in handling claims, it failed to investigate or properly consider the materials presented by Morgan at all of those levels. A declaration attesting to general guidelines utilized by Liberty regarding disability claims does not constitute evidence that those guidelines were followed in this particular case. Declarant Karilann Sneirson's interpretation of the documents contained in the Administrative Record is wholly irrelevant to this matter.

Third, Sneirson's declaration, as it is currently fashioned, is not admissible as evidence and thus must be disregarded. *See* Fed. R. Civ. P. 56(c)(4). In her declaration, Sneirson testifies to general guidelines of Liberty in processing claims but never states that she personally worked on Morgan's claim. Her conclusion that "Lincoln/Liberty implemented management checks and took affirmative steps to promote accuracy" with regard to Morgan's claim cannot be based on personal knowledge as she never worked on his claim. Therefore, Sneirson's declaration, to the extent that it draws any conclusions concerning how Liberty handled Morgan's claim in particular, would not be admissible as evidence because it is testimony unsupported by personal knowledge. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter . . . .").

Finally, Liberty Mutual did not identify the declarant, Karilann Sneirson, in an initial disclosure statement pursuant to Fed. R. Civ. P. 26. The other Parties in this matter exchanged

initial disclosure statements, so Liberty should be precluded from offering the declaration. (Prelim. Pretrial Order, DKT # 18, Page ID # 311). Fed. R. Civ. P. 37(c)(1) specifically provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." The Sixth Circuit has articulated five factors that must be considered in determining whether a late disclosure is "substantially justified" or "harmless:"

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015). Sneirson's declaration is a surprise considering Liberty never identified her prior to submitting its Motion and that surprise is not easily cured at this stage of the litigation. The declaration is disruptive—though not to the trial—as it is not part of the administrative record and therefore confuses what evidence should be considered by this Court in resolving Morgan's First Claim for Relief under 29 U.S.C. § 1132(a)(1)(B). The importance of the declaration is unclear as it can be read to indicate that appropriate procedures were followed concerning the processing of Morgan's claim but at the same time, Sneirson was uninvolved in his claim. Liberty cannot possibly have a sufficient explanation for failing to disclose this information, considering Sneirson is an employee of Liberty and she could have been identified much earlier in the litigation. (DKT 46-1, Page ID # 2418). Consequently, the failure to disclose Sneirson's identity in accordance with Fed. R. Civ. P. 26 is neither "substantially justified" nor "harmless," and this Court should disregard her declaration.

2. <u>Liberty's denial of Morgan's claim was arbitrary and capricious because it was not based on substantial evidence.</u>

Liberty's characterization of Morgan's April 17, 2018, claim for increased benefits as "again complain[ing] about the LTD benefit calculation," rather than acknowledging it as a legitimate claim, demonstrates the arrogance and disregard the Defendants have shown Morgan throughout the entire process. (Liberty Brief, DKT # 46, Page ID # 2410). It took Morgan several more rounds of correspondence to even receive a properly formed denial letter to his claim—albeit one containing zero analysis. (Admin. Record, DKT # 28-4, Page ID ## 1017-1018). As a Participant in the Plan, Morgan had every right to file a claim for the correct amount of benefits owed to him, and Liberty had a duty to thoughtfully investigate and consider his claim. Liberty failed to do so at every level of review, and its denial of Morgan's claim was arbitrary and capricious as a matter of law. Morgan, not Liberty, is entitled to judgment on the Administrative Record.

Liberty reached its decision concerning Morgan's claim through an inadequate process that was not deliberate or principled. Liberty's investigation of the claim comprised solely of asking Hitachi to verify its position regarding Morgan's Basic Monthly Earnings for the long-term disability income benefit, and then directly relaying that information to Morgan. Liberty did not query Hitachi regarding whether it actually selected a benefit target compensation amount to apply to Morgan or whether it had informed Morgan that a benefit target compensation amount applied to him or what that amount was. Morgan presented Liberty with evidence that Hitachi did not provide him with notice, and Liberty ignored the evidence. There is zero evidence in the Administrative Record that refutes the evidence presented by Morgan. By failing to investigate or consider the arguments raised by Morgan, and instead "coordinating" with Hitachi, Liberty acted

in an arbitrary and capricious manner in denying Morgan's claim for increased benefits. (Admin. Record, DKT # 28-4, Page ID # 1038).

An example of Liberty's abject failure to investigate the matter is evident in its letter denying Morgan's request for review. (Admin. Record, DKT # 28-3, Page ID ## 861-864). Liberty stated:

> For further clarification of the materials made available to him when he enrolled for LTD coverage, Mr. Morgan should contact his employer. However, we do note that the cover page of the Hitachi Data Systems' Health and Welfare Benefits Adoption Agreement, Plan and Summary Plan Description that you provided indicates that documents provided by the insurance carriers were available on HR Gateway.

(*Id*. at 863). Liberty did not bother to investigate whether any documents were actually available to Morgan. However, Liberty did have evidence—the Wrangham Letter, a sworn affidavit, the Sales Commission Plan and the 2015 Open Enrollment Benefits Guide—that Morgan did not have access to information informing him that Hitachi had selected a benefit target compensation amount of $175,000.00 to apply to his long-term disability income benefit. (Admin. Record, DKT # 28-3, Page ID ## 938-995). Rather than meaningfully consider the only evidence before it on the relevant subject, Liberty chose to ignore it. Completely unmoored from the evidence, the process by which Liberty reached its decision can only be characterized as arbitrary and capricious and must therefore be overturned.

While Liberty was correct that the Group Disability Income Policy permits the Sponsor—Hitachi—to define the type of earnings to be utilized to calculate Basic Monthly Earnings, it is axiomatic that the Sponsor has a duty to inform the participants what type of earnings would actually be used. The Plan language presented an either/or option, so Hitachi had a duty to inform Morgan of what option it selected prior to Morgan's enrollment for the benefit year. (DKT # 28-1, Page ID # 355). The only information Morgan possessed was the 2015 Open Enrollment

Benefits Guide that informed him that his benefit would be based on his pre-disability income, and the Sales Commission Plan, which set forth his Basic Monthly Income at $230,000.00. (Admin. Record, DKT # 28-3, Page ID ## 943, 974). Accordingly, Morgan was entitled to receive his benefit based on the $230,000.00 ($19,166.67 monthly) Basic Monthly Earnings figure.

As the United States Supreme Court has acknowledged, "Congress' purpose in enacting the ERISA disclosure provisions . . . [was to] ensur[e] 'that the individual participant knows **exactly where he/[she] stands with respect to the plan**.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (Emphasis added). Hitachi failed to notify Morgan exactly where he stood with respect to the Plan. It is undisputed in the Administrative Record that Morgan was not informed that a benefit target compensation amount lower than his pre-disability earnings would be utilized to calculate his long-term disability income benefit. Morgan stated in his affidavit that he did not receive such notice. (Admin. Record, DKT # 28-3, Page ID ## 941-942). Hitachi's counsel admitted that no such communication existed in the Wrangham Letter. (Admin. Record, DKT # 28-3, Page ID # 938). There is no information in the Administrative Record indicating otherwise.

Liberty's denial of Morgan's claim for increased benefits is not based on substantial evidence and is thus arbitrary and capricious. *Schwalm*, *supra*, 626 F.3d at 308. The only "evidence" upon which Liberty relied was Hitachi's representation that Morgan's benefit should be based on a $175,000.00 annual salary figure, which included screenshots from Hitachi's current and former payroll systems (Admin. Record, DKT # 28-4, Page ID ## 1040, 1044). However, that information did not constitute evidence. It constituted Hitachi's self-serving conclusions. Even the screenshots are only evidence that $175,000.00 was populated into a payroll system. There is zero evidence in the Administrative Record establishing that Morgan was actually subject to a benefit

target compensation amount of $175,000.00. There is zero evidence in the Administrative Record establishing that Hitachi ever informed Morgan that it applied a benefit target compensation amount of $175,000.00 to him for the 2015 Plan year.

In contrast, Morgan presented evidence in the form of a signed affidavit stating that his base pay with short term incentive (Basic Monthly Earnings) equaled $230,000.00 annually. (Admin. Record, DKT # 28-3, Page ID ## 941, 943). Morgan's affidavit also shows that he made more than $230,000.00 annually during his time at Hitachi. (*Id.* at Page ID # 942). But Liberty simply shrugged off all the evidence in reaching its determination to deny Morgan's claim and request for review when it relied on Hitachi's conclusory statements. Liberty's decision cannot be deemed as based on substantial evidence when it disregards a signed affidavit indicating that Morgan's actual income was notably different from the number provided by Hitachi. Moreover, the affidavit attests to the fact that Morgan never received notice that his long-term disability income benefit would be based on any number other than his Basic Monthly Earnings figure contained in his Sales Commission Plan. Because Liberty disregarded all of the actual evidence presented on the issue in favor of self-serving conclusory and non-evidentiary statements from Hitachi, its decision to deny Morgan's claim for increased benefits was arbitrary and capricious and should be set aside.

In considering a typical claim for disability benefits, it might be outside of the scope of Liberty's review to consider what representations a plan sponsor makes to a participant. However, in this instance, those issues were squarely within the scope of Liberty's review of Morgan's claim, because they were the subject of Morgan's claim. In response, Liberty completely refused to investigate or consider the issues. Simple validation of Hitachi's position on the issue—the

position Morgan opposed in his claim—does not constitute adequate investigation or consideration of the claim. Accordingly, Liberty's denial of Morgan's claim was arbitrary and capricious.

In its Brief in support of its Motion, Liberty offers no arguments as to how its review of Morgan's claim was the result of a reasoned process and substantial evidence. Instead, Liberty cites a slew of cases in support of the proposition that it has "taken measures to ensure claim accuracy and to remove bias from its claim processing." (DKT # 46, Page ID # 2414). Even if that is true, it says nothing about how Liberty considered Morgan's claim for disability benefits specifically. The mere existence of supposedly adequate processes for reaching a decision does not mean they are appropriately utilized in every case. And that is the crux of Morgan's cause of action against Liberty. In conducting a review of Morgan's claim for increased disability benefits, Liberty acted in an arbitrary and capricious manner when it ignored evidence before it that contradicted the information provided by Hitachi. Furthermore, Liberty's investigation failed to consider the fact that Morgan never received notice that he would receive benefits based on a benefit target compensation amount. Rather than respond to these facts in its Brief, Liberty ignored them again.

Liberty asserts multiple times in its Brief in support of its Motion that Hitachi paid it premiums based on the $175,000.00 benefit target compensation amount for Morgan. However, that fact, if true, is irrelevant to the inquiry at issue. The inquiry at issue is to what benefit amount Morgan is entitled under the terms of the Plan and the evidence contained in the Administrative Record. Morgan's entitlement under the Plan is not determined by the amount of premiums Hitachi paid, even if Hitachi erroneously paid the wrong amount.

As Hitachi noted, Liberty did not even review the Plan Document or actual Summary Plan Description in denying Morgan's claim. In its Brief in support of its Motion, Liberty simply

reiterated the fact that it took the word of Hitachi that Morgan's benefits were based off the $175,000.00 benefit target compensation amount. In so doing, Liberty implicitly conceded that it reviewed Morgan's claim in an arbitrary and capricious manner and ignored the substantial evidence when it unquestioningly accepted Hitachi's conclusion concerning what Morgan's benefit amount should be.

**III. <u>CONCLUSION</u>.**

Liberty's decision to deny Morgan's claim for the proper amount of long-term disability income benefits pursuant to the terms of the Plan and the information actually provided to him was not the result of a deliberate principled reasoning process or supported by substantial evidence. Instead, Liberty totally ignored Morgan's position and evidence. Liberty conducted no investigation into the arguments raised by Morgan and instead relied solely on Hitachi's self-serving statements and payroll screenshots that were not evidence related to the question at issue.

For these reasons and all of the reasons set forth herein, Liberty's decision to deny Morgan's claim was arbitrary and capricious. Accordingly, Morgan respectfully requests that the Court deny Liberty's Motion for Judgment on the Administrative Record and instead, grant Morgan's Motion for Partial Summary Judgment.

Respectfully submitted,

/s/ Kristin Seifert Watson
Kristin Seifert Watson (0078032)
Cloppert, Latanick, Sauter & Washburn
225 East Broad Street, 4th Floor
Columbus, Ohio 43215-3709
Telephone: (614) 461-4455
Facsimile: (614) 621-6293
E-mail kwatson@cloppertlaw.com

*Trial Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing though the Court's system.

/s/ Kristin Seifert Watson
Kristin Seifert Watson (0078032)