**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GERALD MORGAN,** | : | **Case No. 2:19-cv-2982** |
| **Plaintiff,** | : | **Judge Sargus** |
| **v.** | : | **Magistrate Judge Vascura** |
| **HITACHI VANTARA CORPORATION et al.,** | : | |
| **Defendants.** | : | |

---

**PLAINTIFF GERALD MORGAN'S MEMORANDUM IN OPPOSITION TO DEFENDANT HITACHI VANTARA LLC AND HITACHI DATA SYSTEMS' HEALTH AND WELFARE BENEFITS PLAN'S MOTION FOR SUMMARY JUDGMENT**

---

Now comes Plaintiff Gerald Morgan ("Morgan"), by and through counsel, and hereby responds in opposition to the Motion for Summary Judgment filed by Defendants Hitachi Vantara LLC ("Hitachi") and Hitachi Data Systems' Health and Welfare Benefits Plan (the "Plan") (collectively the "Hitachi Defendants") (DKT # 47).

As explained in Morgan's Motion for Partial Summary Judgment (DKT # 45), it is Morgan who is entitled to judgment as a matter of law with regard to his First Claim for Relief challenging Defendant Liberty Life Assurance Company of Boston's ("Liberty") denial of his claim for increased long-term disability income benefits, not any Defendant. Hitachi is not entitled to summary judgment for Morgan's Second Claim for Relief for promissory estoppel, because there are genuine disputes of material fact with regard to that claim. Accordingly, this Court should deny the Hitachi Defendants' Motion for Summary Judgment in its entirety.

## I. STATEMENT OF THE FACTS.

Morgan began his employment with Hitachi as a Specialist Sales Account Representative on or about October 12, 2010. (Liberty Administrative Record ("Admin. Record"), DKT # 28-3, Page ID # 940). Morgan's Sales Commission Plan effective April 1, 2015, which was in effect on his date of disability, set his base pay and short-term incentive target for the year at $230,000.00. (Admin. Record, DKT # 28-3, Page ID ## 941, 943). Morgan's average actual income exceeded the amount set forth in the Sales Commission Plan due to accelerators, commissions beyond his short-term incentive target, and bonuses. (Admin. Record, DKT # 28-3, Page ID # 942).

At all times relevant, Hitachi sponsored and administered the Plan that included a long-term disability income benefit. While employed at Hitachi, Morgan did not have access to the Plan Document or the Summary Plan Description. (Admin. Record, DKT # 28-3, Page ID # 941). In its Motion, Hitachi stated that the Plan Document and Summary Plan Description were available to Hitachi employees on the HR Gateway, citing a notation on the Plan Document itself. (DKT # 47, Page ID # 2431; DKT # 1-1, Page ID # 13). However, Hitachi did not cite any evidence to establish that those documents were actually available to Hitachi employees during Morgan's employment. The copy of the Plan Document and related materials that Morgan filed with the Complaint were provided by Hitachi's counsel in response to Morgan's 2017 information request. (DKT # 28-5, Page ID # 1690; Morgan Declaration, attached hereto, ¶ 3). Accordingly, the only evidence on the issue establishes that Morgan did not have access to the Plan Document or Summary Plan Description while employed with Hitachi.

When he enrolled for the long-term disability income benefits each year, Morgan relied on the information provided by Hitachi in annual Open Enrollment Benefits Guides. (Admin. Record, DKT # 28-3, Page ID # 942). For Plan Year 2015, the Open Enrollment Benefits Guide informed

Morgan that his long-term disability income benefit would be based on his pre-disability monthly income. (Admin. Record, DKT # 28-3, Page ID # 974).

The 2015 Open Enrollment Benefits Guide states, "[w]hen illness or injury makes it impossible for you to work for an extended period of time, the Long-Term Disability coverage will replace sixty percent of <u>your pre-disability monthly income</u> as defined in the Summary Plan Description to a maximum benefit of $15,000.00 per month." (Admin. Record, DKT # 28-3, Page ID # 974) (emphasis added). There is no mention of a benefit target compensation amount that could apply to the long-term disability income benefit.

The Plan Document lists a large number of documents that together constitute the Summary Plan Description (DKT # 1-1, Page ID # 18).[1] The Summary Plan Description, via the Group Disability Income Policy, sets forth the long-term disability income benefit at sixty percent (60%) of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $15,000.00. (DKT # 28-1, Page ID # 353). A monthly benefit based on sixty percent (60%) of Morgan's Basic Monthly Earnings—set at the $230,000.00 annual amount—would be $11,500.00, well below the $15,000.00 Maximum Monthly Benefit.

The Summary Plan Description, via the Group Disability Income Policy, defines "Basic Monthly Earnings" or "Pre-Disability Earnings" as:

> [T]he Covered Person's monthly rate of earnings from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins. Earnings will be defined as **either**, base pay and the short-term incentive (STI) target at 100%, **or** as a benefit target compensation amount. Earnings type to be defined by the Sponsor. Such earnings will not include other forms of compensation.

---

[1] As Hitachi admitted in its Motion, the Plan Document and Summary Plan Description were never reviewed by Liberty and are not part of the Administrative Record. (DKT # 47, Page ID # 2431).

(DKT # 28-1, Page ID # 355) (emphasis added).[2] "Benefit target compensation amount" is not defined in the Group Disability Income Policy, the Certificate of Coverage or elsewhere in the Plan Document or Summary Plan Description. The Summary Plan Description contains no additional information describing the pre-disability income applicable to the long-term disability income benefit. Thus, even if Morgan had access to the Summary Plan Description, it would not have informed him that his Basic Monthly Earnings would be based on a benefit target compensation amount.

While working at Hitachi, Morgan was never informed by any person or entity that Hitachi had selected a benefit target compensation amount to apply to him or what such an amount would be. (Admin. Record, DKT # 28-3, Page ID # 940-942; Morgan Declaration, ¶¶ 2, 5). Morgan was never provided any information indicating that his disability income would be based on a figure less than his Basic Monthly Earnings set forth in his Sales Commission Plan and/or his actual income. Another sales employee, Gary Patterson, similarly received no information regarding a benefit target compensation amount or any other alternative income figure to apply to the long-term disability income benefit. (Patterson Declaration, attached hereto, ¶¶ 5-6).

When Morgan enrolled in benefits for the 2015 Plan year, he relied on the information available to him via the 2015 Open Enrollment Benefits Guide to believe that, if needed, his long-term disability income benefit would be based on his pre-disability income, so at least $230,000.00. $230,000.00 was the only figure ever provided to him other than his actual income, which exceeded that amount. (Admin. Record, DKT # 28-3, Page ID # 942). Had he been advised that his long-term disability income benefit would be substantially reduced by an artificially low

---

[2] The Certificate of Coverage contains virtually identical definitions to the Group Disability Income Policy. (DKT # 28-2, Page ID # 392).

pre-disability income figure, Morgan would have purchased supplemental long-term disability income coverage. (*Id.*).

Morgan's last date of active employment was in June 2015. Morgan suffers from hydrocephalus, subdural hematoma, and other related serious medical conditions. (Admin. Record, DKT # 28-3, Page ID # 940). After exhausting his short-term disability benefits, Morgan applied for and received long-term disability income benefits from the Plan beginning June 9, 2016. (Admin. Record, DKT # 28-5, Page ID # 2123-2125). Liberty's initial award letter stated that the policy provides "60% of his pre-disability earnings." (*Id.* at 2124) (emphasis added). $11,500.00 would be the monthly benefit based on Morgan's pre-disability earnings (Basic Monthly Earnings), as evidenced by his Sales Commission Plan in effect at the time of his disability. (Admin. Record, DKT # 28-3, Page ID ## 941, 943). Instead of $11,500.00 per month, Liberty has been paying Morgan a monthly benefit of approximately $8,750.00.[3]

Morgan realized that the amount of benefits he was receiving was too low, and contacted Liberty and Hitachi. Via letter dated December 15, 2017, Morgan, through counsel, requested information from the Defendants, including: "[a]ll correspondence sent to Mr. Morgan from 2010 to present regarding the definitions applicable to the long term disability income benefit, including a description of how the information would have allegedly been transmitted to Mr. Morgan and any evidence of receipt." (Admin. Record, DKT # 28-5, Page ID # 1690). In a subsequent responsive communication, Hitachi, through a letter from counsel dated March 15, 2018 ("Wrangham Letter"), informed Morgan's counsel that "Hitachi does not have records of correspondence with Mr. Morgan regarding his LTD income benefit." (Admin. Record, DKT #

[3] Morgan's monthly benefit of $8,750.00 is now being reduced by the amount of monthly benefits he receives from the United States Social Security Administration.

28-3, Page ID # 938). By the Wrangham Letter, Hitachi admitted that it never informed Morgan that a benefit target compensation amount would serve as his Basic Monthly Earnings for the long-term disability income benefit, because such a communication would have been directly responsive to the request.

Pursuant to the Adoption Agreement that is part of the Plan Document, Hitachi, as Plan Administrator, delegated discretionary authority to determine claims to the various insurance carriers. (DKT # 1-1, Page ID # 19). Accordingly, Liberty holds discretionary authority to determine long-term disability income claims under the Plan.

On or about April 17, 2018, Plaintiff, through counsel, filed a claim for the correctly calculated benefit amount utilizing the $230,000.00 Basic Monthly Earnings figure. (Admin. Record, DKT # 28-4, Page ID ## 1026-1037). In an email dated June 26, 2018, Hitachi's counsel contacted Liberty about "coordinating" the response to the claim. (Admin. Record, DKT # 28-4, Page ID # 1038). In correspondence dated June 21 and 22, 2018, Liberty completely disregarded the fact that Morgan filed a claim. (Admin. Record, DKT # 28-4, Page ID ## 1009-1016). After further correspondence, Liberty denied the claim via letter dated July 12, 2018. (Admin. Record, DKT # 28-4, Page ID ## 1017-1020). The denial letter contained zero analysis of Morgan's claim—Liberty simply parroted Hitachi's assertion that $175,000.00 was the proper figure upon which to base his benefit, and in fact misidentified the pertinent definitions from the Plan language. (*Id*. 1017-1018).

On or about September 7, 2018, Morgan, through counsel, requested a review of the July 12, 2018, decision pursuant to the terms of the Plan. (Admin. Record, DKT # 28-3, Page ID ## 934-995). Liberty denied Morgan's request for review via correspondence dated October 17, 2018, in which it acknowledged that Morgan exhausted his administrative rights to review the claim.

(Admin. Record, DKT # 28-3, Page ID ## 861-864). Liberty never investigated or considered the arguments raised by Morgan in his appeal materials. Instead, Liberty stated only that Hitachi "validated" that $175,000.00 was the applicable benefit target compensation amount for Morgan. (*Id*. at Page ID ## 862-863).

Morgan commenced this Action on July 10, 2019, raising two claims. (DKT # 1). Morgan's First Claim for Relief is a claim to enforce his rights under the Plan to recover the correct amount of benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff's Second Claim for Relief is for promissory estoppel against Hitachi under 29 U.S.C. § 1132(a)(3)(B).

## II. ARGUMENT.

### A. Summary Judgment Standard.

Fed. R. Civ. P. 56(a) states, in relevant part: "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

In deciding a motion for summary judgment, "(t)he court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor." *Day v. Norwood City Sch. Dist.*, No. 1:12-cv-273, 2013 WL 5656198 at *2 (S.D. Ohio, Oct. 16, 2013) (internal citation omitted). While the non-moving party must set forth specific facts showing there is a genuine issue for trial, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Wilson v. Stein Mart, Inc.*, No. 3:15-CV-01271, 2016 WL 4680008, at *2 (M.D. Tenn. Sept. 7, 2016) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

There are no facts in dispute regarding Morgan's First Claim for Relief under 29 U.S.C. § 1132(a)(1)(B). The Administrative Record clearly demonstrates that Liberty failed to conduct any investigation into or consider the evidence presented by Morgan in his appeal. Such failure resulted in an arbitrary and capricious decision to deny Morgan's claim for increased benefits under the Plan. It is Morgan, not the Defendants, who is entitled to judgment as a matter of law for his First Claim for Relief.

There are material facts in dispute regarding Morgan's Second Claim for Relief under 29 U.S.C. § 1132(a)(3)(B), and so Hitachi's motion for summary judgment must be denied. Central to the claim is the issue of whether Hitachi provided notice to Morgan that a benefit target compensation amount of $175,000.00 constituted his Basic Monthly Earnings for the 2015 Plan year. Hitachi claims it did provide notice in 2012 and that that notice was sufficient, and Morgan disputes both that Hitachi ever provided notice and that notice in 2012 would have been sufficient for the 2015 Plan year. Because there are genuine issues of material fact in dispute, this Court should deny the Hitachi Defendants' Motion.

**B. Morgan is Entitled to Summary Judgment on his First Claim for Relief because Liberty's Decision to Deny his Claim was Arbitrary and Capricious.**

The Parties agree that Morgan's First Claim for Relief should be evaluated under the arbitrary and capricious standard because Hitachi delegated discretionary authority to Liberty for long-term disability income benefit claims. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014). Application of that standard demonstrates that it is Morgan, not the Defendants, who is entitled to judgment as a matter of law.

"When reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made." *McClain*, 740 F.3d at 1064 (Internal citations omitted). "A decision reviewed according to the arbitrary and capricious

standard must be upheld if it results from 'a deliberate principled reasoning process' and is supported by 'substantial evidence.'" *Schwalm v. Guardian Life Ins. Co. of America*, 626 F.3d 299, 308 (6th Cir. 2010) (internal citation omitted). Liberty's decisions to deny Morgan's claim and request for review did not result from a deliberate principled reasoning process and were not supported by substantial evidence. Accordingly, Liberty's denial of Morgan's claim was arbitrary and capricious, and Morgan, not the Defendants, is entitled to summary judgment.

Liberty reached its decision concerning Morgan's claim through an inadequate process that was not deliberate or principled. Liberty's investigation of the claim comprised solely of asking Hitachi to verify its position regarding Morgan's Basic Monthly Earnings for the long-term disability income benefit, and then directly relaying that information to Morgan.[4] Liberty did not query Hitachi regarding whether it actually selected a benefit target compensation amount to apply to Morgan or whether it had informed Morgan that a benefit target compensation amount applied to him or what that amount was. Morgan presented Liberty with evidence that Hitachi did not provide him with notice, and Liberty ignored the evidence. There is zero evidence in the Administrative Record that refutes the evidence presented by Morgan. By failing to investigate or consider the arguments raised by Morgan, and instead "coordinating" with Hitachi, Liberty acted in an arbitrary and capricious manner in denying Morgan's claim for increased benefits. (Admin. Record, DKT # 28-4, Page ID # 1038).

Hitachi's Motion is full of assumptions and conclusions for which it has zero evidence. Such assumptions and conclusions cannot support a Motion for Summary Judgment. *Berry v. Specialized Loan Servicing, LLC*, Case No. 18-cv-2721, 2020 WL 6439171 at *6 (W.D. Tenn.

[4] The fact raised by Liberty, if true, that Hitachi paid premiums on a $175,000.00 income figure for Morgan is not the pertinent question. (Admin. Record, DKT # 28-4, Page ID # 1009). If Hitachi erroneously paid premiums that were too low, that does not reduce Morgan's rights under the Plan.

March 17, 2020) (internal citations omitted). Hitachi admits that the Court is limited to the evidence in the Administrative Record with regard to Morgan's First Claim for Relief. (DKT # 47, Page ID # 2430). The Administrative Record does not support Liberty's decision, and so that decision was arbitrary and capricious. There is zero evidence in the Administrative Record that Hitachi exercised its discretion and elected that Morgan's long-term disability benefit would be based on a benefit target compensation amount. Similarly, Hitachi claims that "there also is no dispute that Hitachi applied a $175,000.00 BTC to Morgan and other employees like him as of January 1, 2013." (Hitachi Motion, DKT # 47, Page ID # 2439). But there is no evidence in the Administrative Record to support Hitachi's statement. Further, Morgan does dispute this fact, which is evidenced in the Administrative Record.

Liberty had evidence—the Wrangham Letter, Morgan's sworn affidavit, the Sales Commission Plan and the 2015 Open Enrollment Benefits Guide—that Morgan did not have access to information informing him that Hitachi had selected a benefit target compensation amount of $175,000.00 to apply to his long-term disability income benefit. (Admin. Record, DKT # 28-3, Page ID ## 938-995). Rather than meaningfully consider the only evidence before it on the relevant subject, Liberty chose to ignore it. The process by which Liberty reached its decision can only be characterized as arbitrary and capricious and must therefore be overturned.

While Liberty was correct that the Group Disability Income Policy permits the Sponsor—Hitachi—to define the type of earnings to be utilized to calculate Basic Monthly Earnings, it is axiomatic that the Sponsor has a duty to inform the participants what type of earnings would actually be used. The Plan language presented an either/or option, which is ambiguous as to what the amount would be, so Hitachi had a duty to inform Morgan of what option it selected prior to Morgan's enrollment for the benefit year. (DKT # 28-1, Page ID # 355).

Morgan, as a Participant, had a right to know exactly what his amount of benefits would be under the long-term disability income policy. Federal regulations require such information to be furnished. *See* 29 C.F.R. § 2520.102-3; 29 C.F.R. § 2520.104b-3. These regulations ensure that participants are promptly notified as to what their expected benefits will be.

As the United States Supreme Court has acknowledged, "Congress' purpose in enacting the ERISA disclosure provisions . . . [was to] ensur[e] 'that the individual participant knows **exactly where he/[she] stands with respect to the plan**.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (Emphasis added). Yet, Hitachi failed to notify Morgan exactly where he stood with respect to the Plan. It is undisputed in the Administrative Record that Morgan was not informed that a benefit target compensation amount lower than his pre-disability earnings would be utilized to calculate his long-term disability income benefit. Morgan stated in his affidavit that he did not receive such notice. (Admin. Record, DKT # 28-3, Page ID ## 941-942). Hitachi's counsel admitted that no such communication existed in the Wrangham Letter. (Admin. Record, DKT # 28-3, Page ID # 938).

Hitachi's failure to notify Morgan is critical, as "employees rely on summary plan descriptions in making decisions about their future benefit needs." *Lipker v. AK Steel Corp.*, 698 F.3d 923, 931 (6th Cir. 2012). In fact, Morgan relied on the information available to him via the 2015 Open Enrollment Benefits Guide when he decided not to purchase supplemental coverage for the 2015 Plan year. (Admin. Record, DKT # 28-3, Page ID # 942). By ignoring Morgan's argument and refusing to increase his benefit to the amount based on his actual Basic Monthly Earnings, Liberty acted in an arbitrary and capricious manner in denying Morgan's claim.

Liberty's denial of Morgan's claim for increased benefits is not based on substantial evidence and is thus arbitrary and capricious. *Schwalm*, *supra*, 626 F.3d at 308. The only

"evidence" upon which Liberty relied was Hitachi's representation that Morgan's benefit should be based on a $175,000.00 annual salary figure, which included screenshots from Hitachi's current and former payroll systems (Admin. Record, DKT # 28-4, Page ID ## 1040, 1044). However, that information constituted Hitachi's self-serving conclusory assertions rather than evidence. Even the screenshots are only evidence that $175,000.00 was populated into a payroll system. There is zero evidence in the Administrative Record establishing that Morgan was actually subject to a benefit target compensation amount of $175,000.00 or that Hitachi ever informed Morgan that it applied a benefit target compensation amount of $175,000.00 to him for the 2015 Plan year. Because Liberty's claim denial lacked an evidentiary basis, it was arbitrary and capricious, and Morgan, not the Defendants, is entitled to summary judgment.

### C. Hitachi is not Entitled to Summary Judgment on Morgan's Second Claim for Relief because There are Genuine Disputes of Material Facts.

Morgan's second claim for relief is for promissory estoppel, which is actionable under ERISA, 29 U.S.C. 1132(a)(3)(B). *Sprague v. General Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998).

> The elements of an equitable estoppel claim, as announced by the *Armistead* panel, are as follows: (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Id.* at 403 (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991), abrogated on other grounds by *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015)). Because Hitachi provided Morgan only with information possible to determine his benefit at the $230,000.00 pre-

disability income level and he reasonably relied on that information, Hitachi is estopped from basing his long-term disability income benefit on a lower income level.

1. Hitachi is estopped from failing to provide Morgan with the benefit it promised.

Hitachi promised Morgan a long-term disability income benefit based on the Basic Monthly Earnings figure it provided him—$230,000.00—and therefore is estopped from providing a lower benefit. The Plan Document and Summary Plan Description are ambiguous regarding what amount of Basic Monthly Earnings would apply to calculate Morgan's long-term disability income benefit. The Group Disability Income Policy set forth an either/or option for Basic Monthly Earnings, but the documents do not specify which option Hitachi selected. (DKT # 28-1, Page ID # 355). That is the very definition of ambiguous: "1. (of language) open to more than one interpretation; having a double meaning. 1.1. Unclear or inexact because a choice between alternatives has not been made." *Oxford English Dictionary*, https://www.lexico.com/en/definition/ambiguous (last visited December 28, 2020). Because Morgan is entitled to know "exactly where he stands with regard to the Plan," the fact that the controlling documents to not specify what definition of Basic Monthly Earnings would apply to his long-term disability income benefit constitutes ambiguity. *Firestone Tire & Rubber Co.*, *supra*, 489 U.S. at 118.

The 2015 Open Enrollment Benefits Guide constituted a representation of material fact by Hitachi to Morgan that his long-term disability income benefit for a disability that occurred in 2015 would be based on his pre-disability income. (Admin. Record, DKT # 28-3, Page ID # 974). $175,000.00 was not Morgan's pre-disability income. Hitachi clearly intended the representations in the 2015 Open Enrollment Benefits Guide to be acted upon, as it provided the Guide to employees for the purpose of enrolling for benefits. Hitachi was aware that there was no

illuminating information about Basic Monthly Earnings contained in the Summary Plan Description. Hitachi was aware that the only information Morgan had been provided about his 2015 pre-disability income was his paychecks and the 2015 Sales Commission Plan. (Admin. Record, DKT 28-3, Page ID # 943). The 2015 Open Enrollment Benefits Guide reasonably led Morgan to believe that, in the event of a disability, his long-term disability income benefit would be based on his actual income or at least the Basic Monthly Earnings of $230,000.00 ($19,166.67 monthly) set forth in his 2015 Sales Commission Plan. (Admin. Record, DKT # 28-3, Page ID # 942). Morgan reasonably relied on that information to detriment to evaluate the sufficiency of the employer-provided long-term disability income benefit and to not purchase additional disability insurance for the 2015 Plan year. (*Id.*). Morgan was uninformed and had no information available from which to determine that Hitachi had elected a benefit target compensation amount to apply to him or what that amount would be. Accordingly, Hitachi is estopped from providing Morgan a lower amount of benefits that the amount promised to him.

2. Morgan's promissory estoppel claim is a viable claim separate and independent from his First Claim for Relief.

Hitachi mischaracterizes Morgan's claim as a mere repetition of his First Claim for Relief. That is incorrect. Morgan's claim for promissory estoppel is separate and independent from his First Claim for Relief. Liberty acknowledges that is the case in its Motion for Judgment on the Administrative Record. (DKT # 46, Page ID # 2415-2416). Morgan's First Claim for Relief seeks recovery from Liberty under the Group Disability Income Policy. Morgan's Second Claim for Relief seeks recovery from Hitachi, as his employer, for not providing the benefit it promised. It is possible that the Court could conclude that it was not arbitrary and capricious for Liberty to rely upon Hitachi's representations that $175,000.00 was Morgan's proper pre-disability income figure so that Liberty is not liable to pay the claim but also conclude that Hitachi is liable to pay the

increased benefits under a theory of promissory estoppel. Morgan has set forth two distinct and independent claims for relief to be considered by the Court.

This case is similar to *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833 (6th Cir. 2007), in which the court determined that Plaintiff's breach of fiduciary claim could not have been characterized as a denial of benefits claim. In both *Gore* and this matter, the 29 U.S.C. 1132(a)(3) claim is asserted against the employer, not the insurance carrier. Like in *Gore*, the injury claimed against Hitachi is different than the injury claimed against Liberty. The court in *Gore* further acknowledged that "Gore properly brought his claim of misrepresentation [against the Employer] under § 1132(a)(3)." As in *Gore*, while if Morgan prevails on his First Claim for Relief it would moot his Second Claim for Relief, the reverse is not true. 477 F.3d at 841. Because the reverse is not true, like in *Gore,* Morgan's claim is not merely a "repackaged denial of benefits claim" under the analysis set forth in *Varity Corp. v. Howe*, 516 U.S. 489 (1996). *Id*. Morgan could not have raised his promissory estoppel claim against Hitachi as a claim for benefits under the Plan because Hitachi delegated all authority on the subject matter to Liberty. Thus, each claim is distinct and should be considered separately.

3. <u>This Court should disregard the Declaration of Thomas W. Carroll and all Exhibits thereto as improper and devoid of evidentiary value.</u>

Hitachi's submitted Declaration of Thomas W. Carroll, along with all documents attached thereto, is improper, does not constitute evidence, and should be disregarded by the Court. (DKT ## 47-1 through 47-8). First, Carroll's Declaration states only that a series of documents are documents that were marked in discovery in this matter. Carroll's Declaration offers no foundation or authentication for what the documents actually are and does not assert relevant personal knowledge of foundation or authentication. Accordingly, the Declaration and exhibits are of zero evidentiary value and should be disregarded. Further, it is never proper for a party to rely solely

on a declaration of counsel to lay a foundation or authenticate documents. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773-774 (9th Cir. 2002). Because Carroll's Declaration is completely devoid of foundation, authenticity or evidentiary value, this Court should disregard it and all exhibits thereto.

4. Hitachi is not entitled to summary judgment because there are genuine disputes of material fact regarding notice.

Hitachi is not entitled to summary judgment on Morgan's claim for promissory estoppel because there are genuine disputes of material fact with regard to whether Morgan had notice that a $175,000.00 benefit target compensation amount constituted his Basic Monthly Earnings at the time he enrolled for benefits for the 2015 Plan year. Morgan asserts that he never at any time received notice that Hitachi selected a benefit target compensation amount for him of $175,000.00 or any other amount. (Admin Record, DKT # 28-3, Page ID # 942; Morgan Declaration, ¶¶ 2, 4, 5). Morgan's assertion is supported by another former Hitachi sales employee. (Patterson Declaration, ¶¶ 4-6). Hitachi claims otherwise, and thus, there are genuine disputes of material fact with regard to Morgan's claim for promissory estoppel. As such, Hitachi's claim for summary judgment should be denied.

As explained in Section II.C.1, *supra*, the Plan is ambiguous as to the definition of Basic Monthly Earnings because it does not set forth which of the two options Hitachi selected. Morgan reasonably relied on the 2015 Open Enrollment Benefits Guide and his Sales Commission Plan to believe that he was entitled to a long-term disability income benefit based on at least the $230,000.00 annual income figure. He reasonably relied on the only information available to him to conclude that he did not need to purchase supplemental coverage. Because Hitachi failed to provide him information establishing that his long-term disability insurance benefit would be

substantially lower so that he could make an informed decision regarding the purchase of supplemental coverage, Hitachi must provide Morgan the full benefit.

Hitachi disputes that the Plan language is ambiguous and that it owed Morgan a duty to inform him which definition of Basic Monthly Earnings it applied to him, but, as explained above, the language is ambiguous and Morgan was entitled to that information as a Participant in the Plan. Morgan asserts that Hitachi was aware that he had been provided no information informing him that it had elected a benefit target compensation amount or what that amount would be. That is certainly true for Plan year 2015. The two documents Hitachi asserts provided notice to Morgan (a material fact which Morgan disputes) were for Plan year 2013. Hitachi has brought forth zero evidence indicating that it put Morgan on notice that a benefit target compensation amount was selected as the Basic Monthly Earnings figure and/or that the amount would be $175,000.00 for Plan year 2015.

Morgan denies ever receiving notice about a benefit target compensation amount or that his pre-disability earnings would be based on $175,000.00 or any other figure lower than his Basic Monthly Earnings as set forth in his Sales Commission Plan. (Admin. Record, DKT # 28-3, Page ID # 942). Patterson supports Morgan's denial. (Patterson Declaration, ¶¶ 4-6).

Exhibit 2 to Carroll's Declaration must be disregarded because it lacks authentication and foundation as explained in Section II.C.3, *supra*. (DKT # 47-3). There is zero evidence of what this document is or that Morgan saw it. Further, even if it had proper authentication and foundation, it is of no relevancy to the question of Basic Monthly Earnings for the long-term disability income benefit. First, it is for Plan year 2013, which is not the Plan year in question. Second, the document indicates that it is a "confirmation" document, which indicates that, if it is authentic, it was generated after Morgan enrolled for benefits. Thus, by its nature, it is not a document Morgan

would have relied upon when enrolling for benefits.[5] Further, it provides zero information related to the long-term disability benefit. The document provides, in relevant part:

| **Benefit** | **2013 Plan Option and Coverage Level** |
|---|---|
| Long Term Disability | LTD Coverage – 60% of Target Compensation or Benefit Target Compensation |
| Basic Life and AD&D | 2x Annual Base Salary or Benefit Target Compensation $260,000 |
| Business Travel Accident | 3x Annual Base Salary or Benefit Target Compensation $390,000 |

(DKT # 47-3). While there are numbers listed with the coverage levels for Basic Life and AD&D and Business Travel Accident, there is no number listed for Long Term Disability. Further, the capitalized terms are not the same between the three benefits. The document utilizes the term "Annual Base Salary" for Basic Life and AD&D and Business Travel Accident, while utilizing the term "Target Compensation" for Long Term Disability. Neither "Target Compensation" nor "Annual Base Salary" are terms defined in the Group Disability Insurance Policy for the long-term disability benefit. The Group Disability Insurance Policy does not cover Basic Life and AD&D or Business Travel Accident, so the terms for those coverages provide no insight to the long-term disability income benefit.[6]

Aside from having no foundation and not constituting evidence, Exhibit 2 to Carroll's Declaration has no relevancy and most certainly did not place Morgan on notice that Hitachi selected a benefit target compensation amount to serve as his pre-disability earnings for the 2015 long-term disability income benefit, or what amount that would be. Because Morgan asserts that the only information he was provided was $230,000.00 as a Basic Monthly Earnings figure, there

[5] Hitachi produced no similar confirmation document for 2015, the Plan year in question.

[6] Similarly, short-term disability is not included in the Group Disability Insurance Policy, so any arguments Hitachi makes regarding Morgan's short-term disability benefits are irrelevant to the Plan language at issue.

is a genuine dispute of material fact with regard to his promissory estoppel claim and Hitachi's Motion for Summary Judgment must be denied.

The only other document Hitachi produced in support of its argument that it notified Morgan that it selected a benefit target compensation amount to apply to him is a purported email dated December 4, 2012, stating that the benefit target compensation amount for 2013 would be $175,000.00. (DKT # 47-5). Notably, this document directly contradicts Hitachi's argument regarding Carroll Declaration Exhibit 2, which it claims provided notice that Morgan's benefit target compensation amount would be $130,000.00 for the same Plan year. Additionally, the purported email does not indicate that the $175,000.00 benefit target compensation amount would continue from year to year. (*Id.*).

Hitachi has presented two versions of the purported email in question. The first, which it produced in discovery, lists no recipients. (DKT # 47-4). The second was produced well after the conclusion of document discovery in this matter by Gilbert Villegas, a former Hitachi employee who claims to have belatedly located the document on a hard drive he improperly retained after he left his employment with Hitachi. (DKT # 47-5; Villegas Deposition, excerpt attached hereto, pp. 32-34).

There is no evidence that Morgan or any employee received the email in question. Hitachi did not produce the purported email in response to Morgan's 2017 information request. (Admin Record, DKT # 28-3, Page ID # 938). Hitachi misleadingly claims that Villegas had no recollection of receiving bounce-backs from the email. However, what Villegas actually stated was that the HR Total Rewards address from which he allegedly sent the email was an unmonitored mailbox and that he never checked to see if any emails bounced back. (Villegas Depo. pp. 21, 39). The email was not sent with read receipts, and Hitachi took no steps to ensure that the recipients received the

information. (Villegas Depo., pp. 24-25). Villegas was unaware of any other place where the information in the purported email was available to employees (Villegas, p. 40). Morgan denies ever receiving the email, and Patterson similarly has no recollection of the email and was never aware of the information contained therein. (Morgan Declaration, ¶ 4; Patterson Declaration, ¶¶ 4-6). Thus, there is a genuine dispute of material fact with regard to whether Hitachi ever provided Morgan notice of a benefit target compensation amount of $175,000.00 or any other number to serve as his Basic Monthly Earnings for the long-term disability income benefit. This Court should deny Hitachi's Motion for Summary Judgment.

## III. CONCLUSION.

Because Liberty's denial of Morgan's claim for increased benefits was arbitrary and capricious, it is Morgan, not Defendants, who is entitled to summary judgment for his First Claim for Relief. Hitachi is not entitled to summary judgment for Morgan's Second Claim for Relief because there are genuine disputes of material fact with regard to his claim for promissory estoppel. For these reasons and all of the reasons set forth herein, Plaintiff Gerald Morgan respectfully requests that the Court deny the Hitachi Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

/s/ Kristin Seifert Watson
Kristin Seifert Watson (0078032)
Cloppert, Latanick, Sauter & Washburn
225 East Broad Street, 4th Floor
Columbus, Ohio 43215-3709
Telephone: (614) 461-4455
Facsimile: (614) 621-6293
E-mail kwatson@cloppertlaw.com

*Trial Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing though the Court's system.

/s/ Kristin Seifert Watson
Kristin Seifert Watson (0078032)