**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GERALD MORGAN,** | : | |
| Plaintiff, | : | Case No. 2:19-cv-02982-EAS-CMV |
| v. | : | Chief Judge Edmund A. Sargus |
| **HITACHI VANTARA CORPORATION, *et al.*,** | : | Magistrate Judge Chelsey M. Vascura |
| Defendants. | : | |

**DEFENDANTS HITACHI VANTARA LLC AND HITACHI DATA SYSTEMS' HEALTH AND WELFARE BENEFITS PLAN'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**


Danielle K. Herring
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 652-4735
Facsimile: (713) 951-9212
Email: dherring@littler.com
*Trial attorney, admitted pro hac vice*

Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: (303) 629-6200
Facsimile: (303) 629-0200
Email: tcarroll@littler.com
*Admitted pro hac vice*

Angelique Paul Newcomb
LITTLER MENDELSON, P.C.
21 East State Street, 16th Floor
Columbus, OH 43215
Telephone: (614) 463-4246
Facsimile: (614) 559-6673
Email: anewcomb@littler.com

*Attorneys for Defendants Hitachi Vantara LLC*[1] *and the Hitachi Data Systems' Health and Welfare Benefits Plan*


[1] Hitachi Vantara Corporation converted to a limited liability company and is now Hitachi Vantara LLC.

## TABLE OF CONTENTS

Page


I. INTRODUCTION ........................................................................................................ 1

II. RESPONSE TO MORGAN'S STATEMENT OF THE FACTS .................................. 2

III. STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS ..................... 5

A. The Plan ........................................................................................................ 5

B. Long-Term Disability Benefits Are Based On An Unambiguous Definition Of "Basic Monthly Earnings." ........................................................................ 6

C. Hitachi Elected The Definition Of Basic Monthly Earnings Based On Benefit Target Compensation For Morgan .................................................. 7

D. Morgan Applies For And Receives Short-Term And Long-Term Disability Benefits ....................................................................................................... 7

E. Morgan Seeks Greater Long-Term Disability Benefits Based On An Alternative Definition Of Basic Monthly Earnings ........................................ 8

IV. ARGUMENT ........................................................................................................... 9

A. Legal Standards ............................................................................................ 9

1. Summary Judgment ............................................................................... 9

2. Abuse Of Discretion Standard Of Review ............................................ 10

B. Morgan's Denial of Benefits Claim Fails ..................................................... 10

1. The Decision To Pay Morgan's Benefits Based On BTC Was Not An Abuse Of Discretion ........................................................................... 11

2. Morgan's Arguments Are Not Supported By Fact Or Law..................... 13

V. CONCLUSION ........................................................................................................ 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. MWA Health & Ret. Funds*,
929 F.2d 1140 (6th Cir. 1991) ........................................................................10

*Bass v. TRW Emp. Welfare Benefits Trust*,
86 F. App'x 848 (6th Cir. 2004) ........................................................................4

*Black v. Pension Benefit Guar. Corp.*,
973 F.3d 576 (6th Cir. 2020) ........................................................................9

*Clemons v. Norton Healthcare Inc. Ret. Plan*,
890 F.3d 254 (6th Cir. 2018) ........................................................................11

*Farhner v. United Transp. Union Discipline Income Prot. Program*,
645 F.3d 338 (6th Cir. 2011) ........................................................................2, 10

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989)........................................................................10, 11, 12, 14

*Gentry v. Principal Life Ins. Co.*,
7804 F. Supp. 2d 652 (M.D. Tenn. 2011)........................................................11, 12

*Gingold v. Unum Life Ins. Co. of Am.*,
74 F. App'x 660 (7th Cir. 2003) ........................................................................12

*Johnston v. Dow Emps.' Pension Plan*,
703 F. App'x 397 (6th Cir. 2017) ........................................................................10

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
555 U.S. 285 (2009)........................................................................12

*Lipker v. AK Steel Corp.*,
698 F.3d 923 (6th Cir. 2012) ........................................................................10

*McClain v. Eaton Corp. Disability Plan*,
740 F.3d 1059 (6th Cir. 2014)........................................................................10

*Morgan v. SKF USA, Inc.*,
385 F.3d 989 (6th Cir. 2004) ........................................................................11

*Morrison v. Marsh & McLennan Cos., Inc.*,
439 F.3d 295 (6th Cir. 2006) ........................................................................10

*Perez v. Aetna Life Ins. Co.*,
150 F.3d 550 (6th Cir. 1998) .......... 10

*Riddell v. Unum Life Ins. Co. of Am.*,
457 F.3d 861 (8th Cir. 2006) .......... 12

*Shappie v. Minster Mach. Co. Restated Non-Bargaining Emps.' Ret. Plan*,
No. 3:09 CV 2777, 2011 WL 1085790 (N.D. Ohio Mar. 22, 2011), *aff'd*, 492 F. App'x 543 (6th Cir. 2012) .......... 12

*Spangler v. Lockheed Martin Energy Sys., Inc.*,
313 F.3d 356 (6th Cir. 2002) .......... 11, 13

*Sprague v. Gen. Motors Corp.*,
133 F.3d 388 (6th Cir. 1998) .......... 14, 15

**Statutes**

Employee Retirement Income Security Act .......... *passim*

ERISA § 502(a)(1)(B), 29 U.S.C § 1132(a)(1)(B) .......... 2

ERISA § 502(g), 29 U.S.C. § 1132(g) .......... 16

**Other Authorities**

Federal Rule of Civil Procedure 54 .......... 16

Federal Rule of Civil Procedure 56 .......... 9

H.R. Rep. No. 93-533 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639 .......... 14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GERALD MORGAN,** | : | |
| Plaintiff, | : | Case No. 2:19-cv-02982-EAS-CMV |
| v. | : | Chief Judge Edmund A. Sargus |
| **HITACHI VANTARA CORPORATION, *et al.*,** | : | Magistrate Judge Chelsey M. Vascura |
| Defendants. | : | |

**DEFENDANTS HITACHI VANTARA LLC AND HITACHI DATA SYSTEMS' HEALTH AND WELFARE BENEFITS PLAN'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Gerald Morgan's summary judgment motion recites disputed information as fact and otherwise fails to undermine the established law prohibiting a grant of summary judgment in his favor. For purposes of this response, Defendants Hitachi Data Systems' Health and Welfare Benefits Plan ("Plan"), a plan governed by the Employee Retirement Income Security Act ("ERISA"), and Hitachi Vantara LLC ("Hitachi" and with the Plan, the "Hitachi Defendants")[2], the Plan Sponsor, accept Morgan's unsupported and immaterial statements as true, despite documentation to the contrary, as he still cannot establish any genuine issue of material fact entitling him to judgment as a matter of law. Morgan received all long-term disability benefits to which he is entitled under the terms of the Plan and accompanying insurance documents, including the applicable definition of "Basic Monthly Earnings." Morgan now claims he should receive

[2] Defendant Liberty Life Assurance Company of Boston ("Liberty") is the claims administer of the Plan.

greater benefits based on his own, mistaken understanding of earnings, which is a position contrary to the express policy language.

Morgan's motion for summary judgment [Dkt. 45] ("Motion") pertains only to the first of his two claims, which seeks additional disability benefits under ERISA § 502(a)(1)(B), 29 U.S.C § 1132(a)(1)(B).[3] As further described in the Hitachi Defendants' cross-motion for summary judgment, and based on facts undisputed by Morgan in his Motion, Morgan's benefit claim fails because the Plan unambiguously allowed Hitachi to define earnings and Hitachi elected to apply a $175,000 benefit target compensation amount to Morgan and other sales employees. Moreover, and—even though this is not necessary to defeat Morgan's claim—Morgan knew that his disability payments were calculated based on benefit target compensation.

No genuine dispute exists that Morgan received precisely what he is entitled to under the Plan. As a result, Morgan's Motion should be denied and summary judgment entered in favor of the Hitachi Defendants.

## II. RESPONSE TO MORGAN'S STATEMENT OF THE FACTS

There is no question that the Court is to consider only the Administrative Record in deciding Morgan's § 502(a)(1)(B) claim for additional long-term disability benefits.[4] *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011). While Morgan's statement of facts is properly limited to the Administrative Record and the Hitachi Defendants generally agree with his recitation of the facts, there are some statements Morgan tries

[3] The Hitachi Defendants' cross-motion seeks summary judgment on all of Morgan's claims. [Dkt. 47].

[4] The Administrative Record is filed at [Dkt. 28] and Bates labeled Liberty/Morgan 001-2007. This memorandum cites the Administrative Records as "AR __" (where the page number corresponds to the Bates label).

to pass as "facts" that are either inconsistent with the Administrative Record or immaterial to his claim.

The following statements in Morgan's motion are either unsupported or immaterial:

- Morgan states he would not have worked for Hitachi for less than $200,000 per year and his "base pay and short-term incentive target" for 2015 were $230,000. [Dkt. 45] These facts are contained in the Administrative Record but they are immaterial. Morgan's salary expectations and his different definition of target earnings are immaterial to his benefits under the Plan.
- Morgan states that $230,000 "provides a fair representation of [his] pre-disability earnings at Hitachi." *Id.* at 4. This statement is ***not*** supported by Morgan's citation or anywhere else in the Administrative Record. Moreover, as discussed in detail below, "Basic Monthly Earnings" is a defined Plan term and both Morgan's own definition of pre-disability earnings and his estimation of what is "fair" are immaterial.
- Morgan claims he did not have access to the Plan or Summary Plan Description during his employment. *Id.* at 4. That statement appears in Morgan's own affidavit, which he created after claiming additional benefits and while represented by counsel, but it is not the whole story. In truth—as shown by the Administrative Record—the Hitachi Data Systems' Health and Welfare Benefits Adoption Agreement, Plan and Summary Plan Description, together with documents from insurance carriers, were available to Hitachi employees on Hitachi's HR Gateway. Compl. Ex. 1 at 1 of 49.[5] The 2015 Benefits

[5] Exhibit 1 to the Complaint is the Hitachi Data Systems' Health and Welfare Benefits Adoption Agreement, Plan and Summary Plan Description. Exhibit 1 is not in the Administrative Record that Liberty filed, but there is no dispute that it is authentic and governs Morgan's claim for benefits along with the Group Disability Income Policy and Certificate of Coverage Liberty filed with the Administrative Record. *See* Compl. ¶ 8 & Ex. 1; [Dkt. 5] ¶ 8 (Liberty's answer); [Dkt. 25] ¶ 8

Guide Morgan attached to Morgan's Complaint and discussed in his Motion also affirmed that the Plan itself and the accompanying insurance documents govern benefits and directed employees—including Morgan—to contact HR or ***review the information on HR Gateway*** if they had questions. AR 521-22; *see also* Compl. ¶¶ 18 & Ex. 4 [Dkt. 1-4].

- Morgan states he was never informed that Hitachi had selected a benefit target compensation ("BTC") amount to apply to him or what the amount would be, and he represents there is no information in the Administrative Record to the contrary. [Dkt. 45] 5-6. First, such a statement is not correct. The Administrative Record reflects that the short-term disability benefits Morgan received were calculated and paid based on his $175,000 BTC. AR 551, 2001.[6] Those payments began in July 2015, nearly a year before he applied for long-term disability benefits. AR 2001.[7] Second, whether Morgan had notice of his BTC amount is immaterial, as further discussed below.
- Morgan characterized it as a "fact" that his Basic Monthly Earnings under the Plan are actually $11,500, citing to his affidavit and a Sales Commission Plan printout. [Dkt.

---

(Hitachi Defendants' amended answer); AR 1-75. It is appropriate for the Court to consider the Plan itself. *Bass v. TRW Emp. Welfare Benefits Trust*, 86 F. App'x 848, 851 (6th Cir. 2004) (stating that the rule limiting review to the administrative record does not cover the benefits plan itself).

[6] Short-term disability benefits are paid at 80% of weekly base salary or—as in Morgan's case—BTC. AR 551. Morgan received $2,692.31 per week, which is 80% of his $175,000 BTC, divided by 52 weeks. AR 2001.

[7] Additional undisputed material facts outside the Administrative Record also reflect that Hitachi notified Morgan that his benefits were calculated based on BTC and the $175,000 BTC amount in particular. Those facts are not included here because Morgan's Motion only addresses his benefits claim based on the Administrative Record, but those additional facts are described in the Hitachi Defendants' cross-motion as to all of his claims. *E.g.*, [Dkt. 47] 4-5.

45] 6. This is not a fact, but rather the end result Morgan hopes to achieve, and the Court should not credit the statement as anything more than wishful thinking.

- According to Morgan, Liberty "never investigated or considered the arguments raised by Morgan in his appeal materials." *Id.* at 8. On the contrary, Liberty's October 17, 2018 letter, AR 512-15, specifically recited (and rejected) Morgan's arguments and stated that Liberty "carefully considered Mr. Morgan's LTD insurance coverage ***and documentation contained in his claim***," in reaching its decision on appeal. AR 513-14 (emphasis added).

## III. STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS[8]

### A. The Plan.

The Plan provides various welfare benefits to qualified Hitachi employees, including long-term disability benefits. Compl. Ex. 1 [Dkt. 1-1] at 4 of 49. Hitachi is the named Plan Sponsor and Plan Administrator. *E.g.*, *id.* at 4 & 7 of 49; AR 1, 6, 10, 37. The Plan designated and named Liberty as the claims administrator for long-term disability benefits under a group insurance policy. *See* AR 1-75. The Plan and group insurance policy are governed by ERISA. *E.g.*, Compl. Ex. 1 [Dkt. 1-1] at 26 of 49; AR 1. The Hitachi Data Systems' Health and Welfare Benefits Adoption Agreement, Plan and Summary Plan Description, together with documents from insurance carriers were available to Hitachi employees on the HR Gateway. Compl. Ex. 1 at 1 of 49.

Under the Plan, Hitachi has full discretionary authority to interpret and administer the Plan and, with respect to benefits provided by an insurance policy—such as the long-term disability benefits—Hitachi delegated the full discretionary authority to determine applicable claims for

[8] Because Morgan's Motion fails for the same reasons that the Hitachi Defendants' cross-motion should be granted, the Hitachi Defendants include pertinent undisputed material facts from their own motion for the Court's convenience when considering Morgan's Motion.

benefits and appeals to the applicable insurance carrier. Compl. Ex. 1 at 7 & 13 of 49. Such insurance carriers, including Liberty in this case, have the discretionary authority under the Plan to interpret the applicable policy and Plan terms. *Id.* As to the long-term disability benefits at issue, Liberty possesses the authority, in its sole discretion, to construe the terms of the group insurance policy and to determine benefit eligibility, and Liberty's decisions regarding construction of the terms of this policy and benefit eligibility are conclusive and binding. AR 29, 70. Liberty calculates benefits amounts based on Basic Monthly Earning information received from Hitachi. *E.g.*, AR 680.

### B. Long-Term Disability Benefits Are Based On An Unambiguous Definition Of "Basic Monthly Earnings."

The Liberty Group Disability Income Policy and corresponding Certificate of Coverage unambiguously describe the amount of long-term disability benefits under the Plan. *See generally* AR 1-75. Specifically, eligible employees receive 60% of Basic Monthly Earnings, not to exceed to Maximum Monthly Benefit of $15,000. AR 4, 40. The definition of Basic Monthly Earnings is unambiguous:

> **"Basic Monthly Earnings"** or **"Pre-Disability Earnings"** means the Covered Person's monthly rate of earnings from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins. ***Earnings will be defined as either, base pay and the short term incentive (STI) target at 100%, or as a benefit target compensation amount. Earnings type to be defined by the Sponsor. Such earnings will not include other forms of compensation.***

AR 6 (emphasis added); *see also* AR 43. As indicated, earnings are either base pay and STI ***or*** a benefit target compensation/BTC amount, with the type of earnings defined by Hitachi as the Sponsor. *Id.* Earnings do not include other forms of compensation. *Id.*

### C. Hitachi Elected The Definition Of Basic Monthly Earnings Based On Benefit Target Compensation For Morgan.

Consistent with the Plan's two alternative options of Basic Monthly Earnings, Hitachi (as Sponsor) elected to apply BTC to Sales employees. AR 660 ("The Target Benefit Comp is primarily for Sales employees and was assigned to him when he started employment based on his employee code as a salesman.") The BTC code was assigned to Morgan when he started employment based on his employee code as a salesman. *Id.*

### D. Morgan Applies For And Receives Short-Term And Long-Term Disability Benefits.

Morgan began working as a sales representative for Hitachi on October 11, 2010. AR 76, 573. His last day of active employment was June 9, 2015, and he is not currently working due to various serious medical conditions. *Id.* Morgan initially received short-term disability benefits from June 10, 2015 to June 9, 2016. AR 1818. *The Administrative Record reflects that the short-term disability benefits Morgan received were calculated and paid based on his $175,000 BTC.* AR 551, 2001; *see also supra* n.6 (explaining calculations).

After a year, Morgan applied for long-term disability benefits and Liberty approved the claim. AR 1774-76. As to the long-term disability benefits at issue here, Morgan's date of disability is June 10, 2015, and his long-term disability benefits began on June 9, 2016. *E.g.*, AR 76, 1775. (There is a one-day overlap between short-term and long-term disability benefits. AR 1338.)

As a Sales Commission employee, and like his short-term disability benefits, Morgan's long-term disability benefits and Basic Monthly Earnings are based on a BTC of $175,000. *E.g.*, AR 1339, 1746. The Administrative Record shows that Hitachi validated on multiple occasions that Morgan's earnings would be based on BTC and that $175,000 was the correct BTC amount. *E.g.*, AR 83 (10/17/2018 note showing that Hitachi validated $175,000 BTC on multiple

occasions), AR 94 (7/28/2018 reflecting that $175,000 BTC is correct), AR 695 (email confirming $175,000 BTC), AR 1746 (same).

### E. Morgan Seeks Greater Long-Term Disability Benefits Based On An Alternative Definition Of Basic Monthly Earnings.

Morgan began challenging the amount of his long-term disability benefits almost immediately and his arguments always return to a single request: he asks to be paid benefits based on $230,000 in monthly earnings, not based on the $175,000 BTC that Hitachi elected for Sales employees like him pursuant to the Plan. Morgan's attorney wrote Liberty on July 26, 2016, and asked why Morgan's benefits were based on earnings of $175,000. *See* AR 1749-53. Liberty "confirmed that as Mr. Morgan is a Sales Commission employee, his benefits are based on the Benefit Target Comp and according to HDS [Hitachi], his is $175,000." AR 1749. Liberty further confirmed the $175,000 BTC and explained its calculations in a November 28, 2017 letter to Morgan's attorney. AR 1338.

Not satisfied, Morgan submitted a formal claim for benefits on April 17, 2018. AR 677-88. Like in this case, Morgan did not challenge the mathematical calculations of his long-term disability benefits, but rather the underlying discretionary election that his benefits are based on BTC instead of his own target-compensation calculation. AR 677. Despite quoting the definition of Basic Monthly Earnings—including Hitachi's option as Sponsor to apply BTC—Morgan's administrative claim argued that the $175,000 BTC is without support in the Plan and he should be paid based on $230,000, which is his own determination of the allegedly correct number. *Id.*

Liberty responded to Morgan's claim on June 8, 2018, and explained its calculations under the Plan. AR 1156. After another letter from Morgan's attorney, AR 692-93, Liberty re-confirmed the benefit amount with Hitachi and once again confirmed with Morgan's counsel that the correct amount to be used in Morgan's benefit calculation is the $175,000 BTC amount. AR 660-67.

Morgan's attorney repeated substantially the same arguments in a July 9, 2018 letter, alleging that the Plan does not allow Hitachi to use a "completely random" number for benefits calculations. AR 654-59, Liberty responded on July 12, 2018, and reiterated that the BTC amount is not "completely random," but rather based on the Plan definition that benefits may be based on BTC, which is to be determined by the employer. AR 668-69.

Morgan appealed the denial of additional benefits on September 7, 2018. AR 577-80. The appeal continued to apply Morgan's own definition of "pre-disability earnings" instead of the Plan's definition, and claimed he should be paid higher benefits because he did not know about the $175,000 amount. *Id.* On October 17, 2018, Liberty denied Morgan's appeal based on its determination that the benefit amount was correct based on the policy terms and provisions. AR 512-15. The decision reflects that Liberty considered Morgan's arguments and reviewed all documentation that Morgan submitted, in addition to the language of the applicable policy. *Id.*

## IV. ARGUMENT

### A. Legal Standards.

#### 1. Summary Judgment.

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Black v. Pension Benefit Guar. Corp.*, 973 F.3d 576, 581 (6th Cir. 2020) (citation omitted); Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law." *Black*, 973 F.3d at 581. Where the parties file cross-motions for summary judgment, the Court evaluates each motion on its own merits, drawing all reasonable inferences against the party or parties whose motion is under consideration. *Id.*

### 2. Abuse Of Discretion Standard Of Review.

The Hitachi Defendants agree with Morgan that the Court must review Liberty's decision under the arbitrary-and-capricious standard of review, based on the Administrative Record. *See* [Dkt. 45] 9. "Review under the arbitrary and capricious standard is the least demanding form of judicial review[.]" *E.g.*, *Morrison v. Marsh & McLennan Cos., Inc.*, 439 F.3d 295, 300 (6th Cir. 2006). The Court's review under the standard "must actually honor an extreme level of deference to the administrative decision." *Johnston v. Dow Emps.' Pension Plan*, 703 F. App'x 397, 401 (6th Cir. 2017) (quoting *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014)). Satisfaction of the standard "requires only an explanation based on substantial evidence that results from a deliberate and principled reasoning process." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). Thus, under the arbitrary-and-capricious standard, a plan administrator's interpretation must be upheld so long as it is "reasonable." *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); *Baker v. MWA Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

## B. Morgan's Denial of Benefits Claim Fails.

Morgan's Motion should be denied because he is seeking benefits to which he is not entitled under the plain language of the governing Group Disability Income Policy and Certificate of Coverage. Morgan's claim is not about his underlying or continuing eligibility for long-term disability benefits or how those benefits were calculated; instead, he only asks that the Court grant him additional benefits based on his own, different definition of "Basic Monthly Earnings."

"When interpreting ERISA plan provisions, general principles of contract law apply; unambiguous terms are given their 'plain meaning in an ordinary and popular sense.'" *Lipker v. AK Steel Corp.*, 698 F.3d 923, 928 (6th Cir. 2012) (quoting *Farhner*, 645 F.3d at 343). "In

interpreting a plan, the administrator must adhere to the plain meaning of its language as it would be construed by an ordinary person." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). As the Sixth Circuit recognized, judges are not the "fairness police" and the Court should ask one question and one question only: "Is the Plan language clear?" *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 269 (6th Cir. 2018). If so, the plain language must be enforced, even if it seems unfair or bizarre. *Id.* If, on the other hand, the Plan language is truly ambiguous (i.e., susceptible to multiple reasonable interpretations), then *Firestone* nevertheless requires the Court to defer to Liberty's reasonable interpretation. *Id.* The ultimate issue is not whether Liberty's acts were arbitrary and capricious, but whether its final decision was arbitrary and capricious. *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002).

**1. The Decision To Pay Morgan's Benefits Based On BTC Was Not An Abuse Of Discretion.**

Morgan's claim fails and his Motion should be denied because Liberty's decision was not arbitrary and capricious. First, the definition of Basic Monthly Earnings explicitly allows Hitachi, as Sponsor, to choose between either (a) base pay and the short term incentive (STI) target at 100%, ***OR*** (b) a BTC amount. AR 6, 43. Such earnings ***do not include*** other forms of compensation. *Id.* The Plan language is clear, and the Court should apply the plain language and uphold the benefits decision because it is perfectly consistent with the Plan. *Clemons*, 890 F.3d at 269. A decision within the Sixth Circuit is instructive. In *Gentry v. Principal Life Insurance Co.*, the long-term disability plan in question had two alternative methods of measuring monthly earnings. 804 F. Supp. 2d 652, 654 (M.D. Tenn. 2011). Like this case, the plaintiff wanted a higher benefit payment and asked the court to impose the definition of his choosing. But—also like this case—the plan in *Gentry* gave the administrator discretion to construe or interpret the applicable insurance policies, and to determine the type and extent of benefits to be provided. *Id.* at 656. In the end, the policy

terms clearly and unambiguously provided alternative methods of measuring monthly earnings and the court declined to impose some other definition because the "face of the written plan document" supported the original determination. *Id.* at 659 (quoting *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 301 (2009)) (modifications omitted). The same is true here: the group insurance policy provides alternative measures of Basic Monthly Earnings, Liberty's benefits determination is consistent with the clear language, and the decision is not arbitrary and capricious.

Second, Morgan does not argue the Plan is ambiguous, but even if the Court finds some ambiguity in the definition of Basic Monthly Earnings, then Hitachi electing BTC and Liberty's interpretation are entitled to *Firestone* deference and the result is the same. Regardless of whether Morgan knew about Hitachi's election (which is further discussed below), there is no dispute that Hitachi exercised its discretion and elected that Morgan's long-term disability benefits would be calculated based on BTC. There also is no dispute that Hitachi applied a $175,000 BTC to Morgan and other employees like him. In turn, Liberty reasonably and properly applied Hitachi's BTC election to Morgan's benefits, accurately calculated and paid him benefits under the terms of the Plan and insurance policy, and properly denied his claim for additional benefits. The Court should uphold the decision. *See, e.g.*, *Shappie v. Minster Mach. Co. Restated Non-Bargaining Emps.' Ret. Plan*, No. 3:09 CV 2777, 2011 WL 1085790, at *4-6 (N.D. Ohio Mar. 22, 2011), *aff'd*, 492 F. App'x 543 (6th Cir. 2012) (upholding plan administrator's interpretation of "Monthly Earnings"); *see also Riddell v. Unum Life Ins. Co. of Am.*, 457 F.3d 861, 865 (8th Cir. 2006) (upholding plan administrator's interpretation of "disability earnings"); *Gingold v. Unum Life Ins. Co. of Am.*, 74 F. App'x 660, 662-63 (7th Cir. 2003) (upholding plan administrator's interpretation of "monthly earnings").

### 2. Morgan's Arguments Are Not Supported By Fact Or Law.

None of Morgan's arguments in favor of summary judgment withstand scrutiny. His principal argument is that the Court should stray from the plain language of applicable policy, disregard Hitachi's and Liberty's discretion, and award him higher benefits because, he argues, Liberty did not adequately investigate his claim or consider his evidence. Relatedly, he argues there is no evidence in the Administrative Record that Morgan was actually subject to a $175,000 BTC amount. In this context, the ultimate issue is not whether Liberty's acts were arbitrary and capricious, but whether its final decision was arbitrary and capricious. *Spangler*, 313 F.3d at 362. Here, Morgan's argument is disproven by the Administrative Record, which demonstrates that Liberty repeatedly consulted Hitachi to determine which Basic Monthly Earnings option applied to Morgan and Hitachi repeatedly confirmed it. *E.g.*, AR 83 (10/17/2018 note showing that Hitachi validated $175,000 BTC on multiple occasions), AR 94 (7/28/2018 reflecting that $175,000 BTC is correct), AR 695 (email confirming $175,000 BTC), AR 1746 (same). As Liberty stated to Morgan's attorney, "The Target Benefit Comp is primarily for Sales employees and was assigned to [Morgan] when he started employment based on his employee code as a salesman." AR 660. Liberty's final decision upon appeal recognized and articulated Morgan's arguments and explained why they were wrong. AR 512-15. Morgan is simply incorrect in arguing that Hitachi did not, in fact, elect BTC for him and he is similarly incorrect in arguing Liberty did not adequately consider his claim.

Morgan's underlying argument (which Liberty considered) is that Hitachi allegedly did not inform him that his benefits were based on BTC. [Dkt. 45] 10-13. The first problem with this argument is the facts. The Administrative Record shows that Morgan received short-term disability benefits based on BTC for a year before he applied for long-term disability benefits, which destroys

Morgan's factual premise. AR 551, 2001; *see also supra* n.6 (explaining calculations).[9] The second, and most glaring problem with Morgan's notice argument is the complete lack of authority to support it. Simply declaring it "axiomatic" that Hitachi had a duty to inform him of his BTC amount does not make it so. And Morgan offers no authority that the alleged lack of notice somehow renders Liberty's decision arbitrary and capricious. The Plan and policy terms are clear: Hitachi chooses how to calculate Basic Monthly Earnings, it conveyed its election to Liberty, and Liberty applied it. Whether Morgan had notice or not is ***completely irrelevant*** to his benefits under the Plan and group insurance policy.

Morgan tries to find authority in a portion of ERISA's legislative history (itself quoted in *Firestone*) which states that a participant should know "exactly where he stands with respect to the plan." [Dkt. 45] 12. The full quotation from the House Report goes on to demonstrate what Congress meant:

> Experience has also demonstrated a need for a more particularized form of reporting so that the individual participant knows exactly where he stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted.

H.R. Rep. No. 93-533 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4649. Consistent with Congress' intent, Morgan unquestionably knew what benefits he was entitled to, what might prevent him from obtaining benefits, the procedures to follow, and who managed the plan. If the Plan or policies were required to state which alternative of Basic Monthly Earnings applied to whom, it would eviscerate the very discretion Hitachi has in the first place. The failure to include more detailed information cannot trump Hitachi's right to choose in the first place. *Cf. Sprague v.*

[9] As mentioned above, additional evidence outside the Administrative Record and before the Court as to Morgan's Second Claim for Relief also shows he had notice.

*Gen. Motors Corp.*, 133 F.3d 388, 401 (6th Cir. 1998) ("GM's failure to include in some summaries a notice of its right to change the plan does not trump the clearly-stated right to do so in the plan itself.").

Finally, Morgan argues that he relied on information in the 2015 benefits enrollment guide and decided not to purchase supplemental coverage. [Dkt. 45] 12; *see also* AR 521-72. Once again, such an allegation is irrelevant to the question of Morgan's entitlement to benefits under the Plan and group insurance policy. The benefits guide states that long-term disability is based on pre-disability monthly income as defined in the Summary Plan Description, AR 551, which leads straight back to the definition of Basic Monthly Earnings. As the Sixth Circuit recognized, "by definition, a summary will not include every detail of the thing it summarizes." *Sprague*, 133 F.3d at 401.

Even presuming Morgan did not know, however, about the undisputed Plan definition of Basic Monthly Earnings, he still cannot demonstrate as a matter of law that Hitachi was required under ERISA to take additional measures to ensure his knowledge and that an abuse of discretion exists as a result. Similarly, Morgan fails to demonstrate that his lack of knowledge constitutes an abuse of discretion entitling him to be able to set aside the express Plan definition and Hitachi's election of BTC. Further, Morgan cannot otherwise show that an abuse of discretion exists with regard to Liberty's determination. Quite simply, Morgan has no basis under the Plan or the applicable insurance policy to recover additional benefits. Morgan has received everything he is entitled to under the Plan, Hitachi's election of BTC and Liberty's determination were rational and appropriate—and well within their discretion—and the First Claim for Relief fails as a matter of law.

## V. CONCLUSION

In essence, Morgan argues that Liberty should have disregarded the Plan and policy terms, disregarded Hitachi's discretionary BTC election as Plan Sponsor, and paid Morgan benefits based on his definition of Basic Monthly Earnings—and now he asks the Court to do the same. His argument is completely unsupported by the law, and Morgan's Motion offers no viable authority whatsoever to support such a dramatic departure from what the Plan, policy, and ERISA require. Hitachi's selection of BTC is not a "self-serving conclusion," [Dkt. 45] 13, but rather a discretionary choice the Plan and policy specifically and clearly allow. Morgan received everything he is entitled to under the Plan, Liberty's decision is reasonable and faithful to the clear Plan language, and the Hitachi Defendants are entitled to judgment as a matter of law. Under ERISA § 502(g), 29 U.S.C. § 1132(g), and Federal Rule of Civil Procedure 54, they are also entitled to their attorneys' fees and costs.

WHEREFORE, the Hitachi Defendants respectfully request that the Court deny Morgan's Motion, enter summary judgment in the Hitachi Defendants' favor and against Morgan on all of his claims, award the Hitachi Defendants their attorneys' fees and costs, and award the Hitachi Defendants such other relief as the Court deems just and proper.

Respectfully submitted this 28th day of December, 2020.

*s/ Danielle K. Herring*
Danielle K. Herring
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 652-4735
Facsimile: (713) 951-9212
Email: dherring@littler.com
*Trial attorney, admitted pro hac vice*

Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800

Denver, CO 80202
Telephone: (303) 629-6200
Facsimile: (303) 629-0200
Email: tcarroll@littler.com
*Admitted pro hac vice*

Angelique Paul Newcomb
LITTLER MENDELSON, P.C.
21 East State Street, 16th Floor
Columbus, OH 43215
Telephone: (614) 463-4246
Facsimile:(614) 559-6673
Email: anewcomb@littler.com

*Attorneys for Defendants Hitachi Vantara LLC and the Hitachi Data Systems' Health and Welfare Benefits Plan*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 28th day of December, 2020, the foregoing **DEFENDANTS HITACHI VANTARA LLC AND HITACHI DATA SYSTEMS' HEALTH AND WELFARE BENEFITS PLAN'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** has been filed via the Court's electronic filing system. Notice of filing will be performed by the Court's electronic filing system, and Parties may access the document through the Court's electronic filing system.

*s/ Danielle K. Herring*
Danielle K. Herring

4816-4723-2469.1 083423.1021