**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GERALD MORGAN,** | : | |
| | : | **Case No. 2:19-cv-2982** |
| **Plaintiff,** | : | |
| | : | **Judge Sargus** |
| **v.** | : | |
| | : | **Magistrate Judge Vascura** |
| **HITACHI VANTARA CORPORATION et al.,** | : | |
| | : | |
| **Defendants.** | : | |

# PLAINTIFF GERALD MORGAN'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT

In response to Plaintiff Gerald Morgan's ("Morgan") Motion for Partial Summary Judgment (DKT # 45), Defendants Hitachi Vantara LLC ("Hitachi") and Hitachi Data Systems' Health and Welfare Benefits Plan (the "Plan") (collectively the "Hitachi Defendants") and Liberty Life Assurance Company of Boston ("Liberty") filed Memoranda in Opposition defending Liberty's denial of Morgan's claim for increased long-term disability income benefits under the Plan. (DKT ## 50-51). Despite their efforts, it is evident based on the applicable standard and the evidence contained in the Administrative Record that Morgan is entitled to summary judgment for his First Claim for Relief for increased benefits under 29 U.S.C. § 1132(a)(1)(B), because Liberty's denial of his claim was arbitrary and capricious as a matter of law.

## I. <u>ARGUMENT</u>

Liberty's denial of Morgan's claim was arbitrary and capricious because Liberty simply went through the motions when processing Morgan's claim rather than engaging in a deliberate principled reasoning process to reach a decision supported by substantial evidence, as required under the applicable standard. *Schwalm v. Guardian Life Ins. Co. of America*, 626 F.3d 299, 308

(6th Cir. 2010) (internal citation omitted). Liberty's denial letters contained zero meaningful analysis of Morgan's argument or evidence. (Admin. Record, DKT # 28-4, Page ID ## 1017-1018; DKT # 28-3, Page ID ## 861-864). A blanket statement that Morgan's documentation was "carefully considered" unaccompanied by actual analysis demonstrating consideration does not suffice. (DKT # 28-3, at Page ID # 863). Liberty's denial of Morgan's claim was arbitrary and capricious, and Morgan is entitled to partial summary judgment.

### A. Liberty's Claim Denial Was Arbitrary and Capricious because Liberty Failed to Consider What Information Hitachi Provided Morgan.

Liberty's denial of Morgan's claim was arbitrary and capricious because Liberty failed to investigate, consider or analyze Morgan's evidence that Hitachi informed him that his long-term disability income benefit would be based upon a $19,166.67 ($230,000.00 ÷ 12) Basic Monthly Earnings figure. Correctly analyzing Morgan's claim was not as simple of a task as the Defendants assert. Liberty's analysis existed solely of reviewing several provisions in the Group Disability Income Policy, identifying the language in the definition of "Basic Monthly Earnings" permitting Hitachi to "define" the earnings type, and asking Hitachi its position as the earnings type.[1] It is undisputed that that was the extent of Liberty's inquiry.

Liberty ignored the remainder of the definition of "Basic Monthly Earnings," which states, in relevant part:

> [T]he Covered Person's monthly rate of earnings from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins. Earnings will be defined as **either**, base pay and the short-term incentive (STI) target at 100%,

[1] In its October 17, 2018, letter denying Morgan's Request for Review, Liberty quoted language from the Group Disability Income Policy identifying what information would be contained in the Certificate to be delivered to each Participant. The Certificate is to include "a description of the insurance provided [and] the method used to determine the amount of benefits." (Admin. Record, DKT # 28-3, Page ID # 862). There is no evidence in the Administrative Record that the Certificate was ever provided to Morgan. Further, the Certificate contains no information clarifying what Morgan's Basic Monthly Earnings would be and thus fails to include the information specified.

> **or** as a benefit target compensation amount. Earnings type to be defined by the Sponsor. Such earnings will not include other forms of compensation.

(DKT # 28-1, Page ID # 355) (emphasis added). To read the definition of "Basic Monthly Earnings" as meaning whatever Hitachi decides after the disability occurs would render the remainder of the definition meaningless and superfluous, which is contrary to the principles of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See, e.g., Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989); *Healthtrust, Inc. v. Usher*, Case No. 3:96cv0486, 2000 WL 33967149 (M.D. Tenn. August 28, 2000). Because Liberty's decision to deny Morgan's claim was based on that reading, it was arbitrary and capricious and should be set aside.

The Group Disability Income Policy set forth an either/or option for "Basic Monthly Earnings," but the documents do not specify which option Hitachi selected. (DKT # 28-1, Page ID # 355). That is the very definition of ambiguous: "1. (of language) open to more than one interpretation; having a double meaning. 1.1. Unclear or inexact because a choice between alternatives has not been made." *Oxford English Dictionary,* https://www.lexico.com/en/definition/ambiguous (last visited January 11, 2021). The Defendants cannot ignore the either/or option presented in favor of the language permitting Hitachi to define the earnings type in light of the duty owed by Hitachi to Morgan as a Participant.

The Hitachi Defendants argue that even if the definition of Basic Monthly Earnings was ambiguous, the Court must defer to Liberty's reasonable interpretation. (DKT # 50, Page ID # 2535). However, Liberty made no interpretation of the language at issue. Liberty completely failed to recognize the ambiguity in the language or consider the information provided by Hitachi to Morgan during his employment. Instead, Liberty focused solely on the last sentence of the definition and took Hitachi's word for what the Basic Monthly Earnings figure was without

investigation, analysis or interpretation. This Court is not bound to defer to Liberty's decision because it was arbitrary and capricious.

Liberty did not query Hitachi regarding whether it actually selected a benefit target compensation amount to apply to Morgan or whether it informed Morgan that a benefit target compensation amount applied to him or what that amount was. The Administrative Record contains Hitachi's self-serving conclusory statements that it did, but not evidence of an actual selection. Morgan presented Liberty with evidence that Hitachi did not provide him with notice, and Liberty ignored the evidence. There is zero evidence in the Administrative Record that refutes the evidence presented by Morgan. There is also zero evidence in the Administrative Record "that Hitachi applied a $175,000.00 BTC to Morgan and other employees like him." (Hitachi Memo. Opp., DKT # 50, Page ID # 2536). Further, Morgan disputes these facts, which is evidenced in the Administrative Record. By failing to investigate or consider the arguments raised by Morgan, and instead "coordinating" with Hitachi, Liberty acted in an arbitrary and capricious manner in denying Morgan's claim for increased benefits. (Admin. Record, DKT # 28-4, Page ID # 1038).

The Defendants point to multiple places in the Administrative Record where Hitachi informed Liberty that Morgan was subject to a benefit target compensation amount of $175,000.00. However, there is zero evidence in the Administrative Record that Hitachi so advised Morgan. If it is true, as the Defendants assert, that Hitachi subjected Morgan to a benefit target compensation amount lower than his actual income at his time of hire, how is it possible that it provided Liberty no evidence to support its statements? Liberty's failure to request such evidence before reaching a decision that lowered Morgan's long-term disability income benefit by thousands of dollars per month below what he was promised was arbitrary and capricious as a matter of law.

Liberty did have evidence—the Wrangham Letter (a March 18, 2018, letter from Hitachi's counsel admitting that it never informed Morgan about a benefit target compensation amount), a sworn affidavit, the Sales Commission Plan and the 2015 Open Enrollment Benefits Guide—that Morgan did not have access to information informing him that Hitachi had selected a benefit target compensation amount of $175,000.00 to apply to his long-term disability income benefit. (Admin. Record, DKT # 28-3, Page ID ## 938-995). Rather than meaningfully consider the only evidence before it on the relevant subject, Liberty chose to ignore it. Completely unmoored from the evidence, the process by which Liberty reached its decision can only be characterized as arbitrary and capricious and must therefore be overturned.

The Group Disability Income Policy is not the complete Plan document, and it is undisputed that Liberty never reviewed the complete Plan Document. The Group Disability Income Policy is the document Liberty issued to Hitachi, which sets forth Liberty's responsibilities to Hitachi, not the Plan's responsibilities to Participants like Morgan. Further, Hitachi and the Plan have obligations to Morgan by virtue of ERISA that extend even beyond the language of the Plan Document. Because Hitachi delegated discretionary authority to Liberty to resolve long-term disability income benefit claims under the Plan, Liberty had a duty to consider the Plan language and the requirements of ERISA in reaching its decision. (DKT # 1-1, Page ID # 19). Liberty clearly failed to consider those items in reviewing only the Group Disability Income Policy and completely disregarding Morgan's position with regard to lack of notice, so Liberty's decision was arbitrary and capricious, and Morgan is entitled to summary judgment for his First Claim for Relief.

ERISA requires that Morgan, as a Participant, be informed as to exactly what his long-term disability income benefit would be. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118

(1989). The only information Hitachi provided Morgan, via the 2015 Open Enrollment Benefits Guide and his Sales Commission Plan, informed him that his monthly long-term disability income benefit would be $11,500.00 (($230,000.00 ÷ 12) x 60%). (Admin. Record, DKT # 28-3, Page ID ## 941-943, 974). Thus, pursuant to ERISA, Morgan is entitled to a monthly long-term disability income benefit of $11,500.00. Liberty acted in an arbitrary and capricious manner when it failed to analyze Morgan's claim pursuant to the principles of ERISA.

Morgan did not challenge Hitachi's discretionary election. Morgan's claim is based on the premise that Hitachi defined Morgan's "Basic Monthly Earnings" as his "base pay and the short-term incentive (STI) target at 100%," which was $19,166.67 ($230,000.00 ÷ 12) as evidenced by all of the information provided to him during his employment. Hitachi would not be deprived of its opportunity to define the earnings type were Morgan to prevail in this matter. Hitachi has every ability to define the Participants' earnings type, so long as it complies with ERISA's requirement to inform them of its election.

In its Memorandum in Opposition, the Hitachi Defendants claim that Morgan has a mistaken understanding of earnings, but Morgan's understanding of his "Basic Monthly Earnings" was provided by Hitachi itself—based on all of the information Morgan was provided.[2] The Hitachi Defendants are correct that the "base pay and the short-term incentive (STI) target at 100%" definition of "Basic Monthly Earnings" does not include other forms of compensation. (Policy, DKT # 28-1, Page ID # 355). However, it is not limited to base salary either. It is the base pay plus the STI target at 100%. The $230,000.00 figure in Morgan's Sales Commission Plan constituted Morgan's base pay and STI target at 100% as far as Morgan was advised by Hitachi,

[2] Morgan did not state that his "Basic Monthly Earnings" was $11,500.00. Morgan states that his Basic Monthly Earnings figure was $19,166.67 ($230,000.00 ÷ 12). Morgan states that his monthly long-term disability income benefit should be $11,500.00, as it is 60% of $19,166.67.

and it did not include other forms of compensation, such as accelerators, bonuses, and commissions beyond the STI target. (Admin. Record, DKT # 28-3, Page ID ## 940-943). There is no contrary evidence contained in the Administrative Record.

Hitachi's assertion that it had no duty to inform Morgan regarding what amount of Basic Monthly Earnings applied to his long-term disability income benefit is categorically wrong. The assertion flies in the face of ERISA's notice requirements, and it is wholly illogical. The monthly benefit Liberty has provided Morgan ($8,750.00) is substantially less than the monthly benefit Hitachi promised Morgan through the only information it provided him ($11,500.00). The difference is $2,750.00 per month, or $33,000.00 per year. To suggest that Morgan did not have a right to information notifying him of such a large disparity is wrong and baseless.

Contrary to the Hitachi Defendants' statements, there is no evidence in the Administrative Record that Morgan actually had access to the Plan Document or the Summary Plan Description, including the Group Disability Income Policy, while he was employed at Hitachi. (Hitachi Memo. Opp., DKT # 50, Page ID # 2527-2528). There is no evidence in the Administrative Record to establish what the HR Gateway was and what, if any, documents were available on it during the relevant time period. Liberty failed to investigate that question, and Morgan stated in his Affidavit that he did not have access to the Plan Document or Summary Plan Description. (Admin. Record, DKT # 28-3, Page ID # 941). Further, even if Morgan had access to the complete Plan Document and Summary Plan Description, those documents would still only have provided him with the either/or option set forth in the definition of "Basic Monthly Earnings" contained in the Group Disability Income Policy. (DKT # 28-1, Page ID # 355).

Hitachi had an obligation under ERISA to inform Morgan which definition would apply. The information Hitachi provided Morgan informed him that his long-term disability income

benefit would be based on "his pre-disability monthly income," that the "base pay and the short-term incentive (STI) target at 100%" definition of "Basic Monthly Earnings" applied, and that that amount was set at $230,000.00 for the year. (Admin. Record, DKT # 28-3, Page ID ## 941-943, 974) (emphasis added). Thus, a benefit based upon the information Hitachi provided him is the benefit the Plan owes Morgan. Liberty's decision denying Morgan's claim is arbitrary and capricious as a matter of law because Liberty failed to investigate or consider the substance of Morgan's claim.

The Hitachi Defendants repeatedly assert that Morgan should have known that a benefit target compensation amount of $175,000.00 applied to his long-term disability income benefit because the short term disability benefit he received was based on the same number. (*See, e.g.*, DKT # 50, Page ID ## 2528, 2537). The Hitachi Defendants' assertions fail for lack of logic for two reasons. First, the Group Disability Income Policy does not cover short term disability benefits, so what Morgan received in short term disability benefits has no bearing on the analysis of a claim made under the Group Disability Income Policy. Second, even if Morgan was aware that his short term disability benefit was based on a $175,000.00 annual income figure, those benefits did not begin until after he stopped working due to disability.[3] ERISA required Hitachi, as Plan Sponsor and Administrator, to notify Morgan regarding what benefit he would receive at the time of annual enrollment or a material modification, not after he became disabled and left active employment. *See* 29 C.F.R. § 2520.102-3; 29 C.F.R. § 2520.104b-3. Hitachi notified Morgan that his long-term disability income benefit would be $11,500.00 per month, so that is the benefit to which he is entitled under the Plan.

---

[3] Morgan does not concede that he was aware at the time of receipt that the short term disability benefits were based on a $175,000.00 annual income figure or that his short term disability benefits were properly calculated.

In considering a typical claim for disability benefits, it might be outside of the scope of Liberty's review to consider what representations a Plan Sponsor makes to a Participant. However, in this instance, those issues were squarely within the scope of Liberty's review of Morgan's claim, because they were the substance of Morgan's claim. In response, Liberty completely refused to investigate or consider the issues. Simple validation of Hitachi's position on the issue—the position Morgan opposed in his claim—without consideration of the Plan in its entirety and in relation to the requirements of ERISA—does not constitute adequate investigation or consideration of the claim. Accordingly, Liberty's denial of Morgan's claim was arbitrary and capricious, and Morgan is entitled to summary judgment for his First Claim for Relief.

In its Memorandum in Opposition, Liberty offers no arguments as to how its review of Morgan's claim was the result of a reasoned process and substantial evidence. Instead, Liberty cites a slew of cases in support of the proposition that it has "taken measures to ensure claim accuracy and to remove bias from its claim processing." (DKT # 51, Page ID ## 2553-2554). Even if that is true, it says nothing about how Liberty considered Morgan's claim for disability benefits specifically. The mere existence of supposedly adequate processes for reaching a decision does not mean they are appropriately utilized in every case. And that is the crux of Morgan's cause of action against Liberty. In conducting a review of <u>Morgan's</u> claim for increased disability benefits, Liberty acted in an arbitrary and capricious manner when it ignored evidence before it that contradicted the information provided by Hitachi. Furthermore, Liberty's investigation failed to consider the fact that Morgan never received notice that he would receive benefits based on a benefit target compensation amount lower than his pre-disability income. Rather than respond to these facts in its Memorandum in Opposition, Liberty ignored them yet again and continued to

rely solely on one sentence from the "Basic Monthly Earnings" definition in the Group Disability Income Policy.

Liberty's denial of Morgan's claim for increased benefits was not the result of a deliberate principled reasoning process and was not supported by substantial evidence contained in the Administrative Record. Accordingly, Liberty's denial of Morgan's claim was arbitrary and capricious, and Morgan is entitled to summary judgment for his First Claim for Relief.

### B. The Defendants Cannot Defeat Morgan's Properly Supported Motion for Partial Summary Judgment with Information Not Contained in the Administrative Record.

There is no information in the Administrative Record to dispute the information offered by Morgan. As the Defendants concede, this Court is limited to the Administrative Record in adjudicating Morgan's First Claim for Relief. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (internal citations omitted). The Hitachi Defendants' multiple references to other information not contained within the Administrative Record must be ignored. Further, contrary to the Hitachi Defendants' statements, that other information is disputed, as explained in Morgan's Memorandum in Opposition to Hitachi's Motion for Summary Judgment as relevant to Morgan's Second Claim for Relief, which is not the subject of this Motion. (DKT # 49, Page ID ## 2503-2506).

Just as the Hitachi Defendants may not rely on information outside of the Administrative Record in support of their arguments, neither can Liberty rely upon the Declaration of Karilann Snierson. As discussed extensively in Section II.B.1 of Morgan's Memorandum in Opposition to Liberty's Motion for Judgment on the Administrative Record, this Court should disregard Snierson's declaration in its entirety because it is not part of the Administrative Record, it has no relevancy to the matter at hand because Snierson played no role in handling Morgan's claim, it is

not admissible evidence because it is not based on personal knowledge, and Snierson was not disclosed as a person with relevant information in an Initial Disclosure Statement pursuant to Fed. R. Civ. P. 26. (DKT # 48, Page ID ## 2478-2479). Liberty's claim denial is not supported by substantial evidence contained within the Administrative Record, and so it is arbitrary and capricious as a matter of law, and Morgan is entitled to partial summary judgment.

### C. **The Defendants Cannot Defeat Morgan's Properly Supported Motion for Partial Summary Judgment with the Case Law They Cite.**

Liberty's denial of Morgan's claim for increased benefits was arbitrary and capricious, and none of the case law cited by the Defendants supports an alternate conclusion. The Hitachi Defendants argue that the issue is not whether Liberty's acts were arbitrary and capricious, but whether its final decision was arbitrary and capricious, citing *Spangler v. Lockheed Martin Energy Sys. Inc.*, 313 F.3d 356 (6th Cir. 2002). However, in *Spangler*, like in this case, the claims administrator arbitrarily and capriciously conducted an inadequate investigation and then impermissibly relied upon the results of the flawed investigation to reach a decision unsupported by the administrative record. *Id*. at 362. Like the court did in *Spangler*, this Court should find Liberty's claim denial arbitrary and capricious and award summary judgment to Morgan for his First Claim for Relief.

The Hitachi Defendants assert that this case is similar to *Gentry v. Principal Life Insurance Co.*, 804 F. Supp. 2d 652 (M.D. Tenn. 2011), in which the court affirmed a claims administrator's decision on the earnings amount for a disability claim. However, this case is not similar to *Gentry*. In this case, the definition of "Basic Monthly Earnings" sets forth an either/or option, and Morgan was only provided information enabling him to determine his benefit at a $230,000.00 annual earnings rate. In *Gentry*, the claimant was the sole owner of the business in question. Instead of an ambiguous either/or option contained within one definition, there were two different definitions

for monthly income in *Gentry*—one for individuals with an ownership interest in the company and one for individuals with no ownership interest. *Id.* at 658. The claims administrator applied the definition for individuals with an ownership interest, while the claimant sought the definition for individuals without an ownership interest. In addition to there being no ambiguous definition in *Gentry*, the claimant was well aware of his ownership interest in his own company, whereas Morgan had no ability to ascertain that Hitachi was going to apply a definition of "Basic Monthly Earnings" wholly unrelated to any information it ever provided him. The court's analysis in *Gentry* is of no relevance to this matter.

In *Gingold v. Unum Life Ins. Co. of America*, 74 Fed. App'x 660 (7th Cir. 2003), the claimant was again the CEO and principal owner of the employer that purchased the disability policy at issue. The claimant sued to force the claims administrator to include the rent he charged the business to be included in the definition of "monthly earnings" used to calculate his disability benefit. *Gingold* is not factually instructive to the present matter, because it, in essence, was a dispute between the employer and the insurance company rather a participant who only had access to that information provided by his employer.[4] If *Gingold* provides any instructive analysis to the present matter, it is in Morgan's favor, because the court found that the premiums paid for the disability policy did not establish the amount of benefit to which the Participant was entitled under the Plan, contrary to Liberty's assertions herein. *Id*. at * 4.

In *Riddell v. Unum Life Ins. Co. of America*, 457 F.3d 861 (8th Cir. 2006), the claimant challenged the claims administrator's calculation of his earnings while disabled that reduced his

---

[4] The Court in *Gingold* found it significant that there was no evidence of a material misrepresentation or reliance by the claimant to his economic detriment. 74 Fed. App'x at 663-664. Both of those facts occurred in this matter, as discussed in the briefing related to Morgan's Second Claim for Relief.

monthly disability benefit. The Plaintiff claimed that the exclusion of bonuses from the "monthly earnings" definition operated implicitly to exclude bonuses from the definition of "disability earnings." However, the court found it reasonable for the claims administrator to interpret the Plan language as establishing independent definitions for each term and upheld the decision. The court noted that its analysis of reasonability of the claim administrator's decision is informed by the following factors:

> whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language of the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan.

*Id.* at 864 (internal citations omitted). These factors demonstrate the arbitrary and capricious nature of Liberty's decision and support Morgan's position. As discussed above, Liberty failed to interpret the language at issue and simply took Hitachi's word on the matter, which is not reasonable under the circumstances in light of the evidence contained in the Administrative Record. Liberty's total reliance on only one sentence in the definition of "Basic Monthly Earnings" rendered the remainder of the definition meaningless. Further, Liberty's decision conflicts with the substantive and procedural requirements of ERISA, because it resulted in a substantially lower benefit than what Morgan was promised by Hitachi through all of the information it made available to him.

In *Shappie v. Minister Mach. Co. Restated Non-Bargaining Emps. Ret. Plan*, No. 3:09 cv 2777, 2011 WL 1085790 (N.D. Ohio March 22, 2011), the Participant challenged his pension plan's exclusion of his overseas housing allowance from the definition of regular monthly earnings used to calculate his retirement benefit. The court upheld the administrator's decision, finding that the claim denial provided a reasoned explanation that was adequately supported by the record. *Id.*

at *5. Such is not the case here. Liberty did not analyze the definition at issue—it parroted Hitachi's position—and the Administrative Record contains no evidence to support the fact that it applied a "Basic Monthly Earnings" figure that resulted in a benefit amount several thousand dollars per month less than what Morgan expected based on the information provided to him.

The Hitachi Defendants' reliance on *Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998), is equally misplaced. In *Sprague*, the court found that General Motors was not estopped from enforcing its right to amend an ERISA plan that specifically reserved that right within the Plan Document based on other statements and representations made to employees upon retirement. *Sprague* in no way supports a position that, if General Motors wanted to change the plan, it did not have to so inform the Participants. There is no information contained in the Plan Document herein or in any other document in the Administrative Record that would have informed Morgan that his long-term disability income benefit would be based on any amount other than his pre-disability income as evidenced by his Sales Commission Plan, and so he is entitled under the terms of the Plan and ERISA to a benefit based upon that amount. Because Liberty failed to conduct a proper investigation or to properly analyze the terms of the Plan in light of the principles of ERISA and the evidence presented, its decision to deny Morgan's claim for increased benefits was arbitrary and capricious and should be set aside by this Court.

## II. CONCLUSION

Liberty's decision to deny Morgan the proper amount of long-term disability income benefits pursuant to the terms of the Plan and the information actually provided to him was not the result of a deliberate principled reasoning process or supported by substantial evidence. Instead, Liberty completely ignored Morgan's position and evidence. Liberty conducted no investigation into the arguments raised by Morgan and instead relied solely on Hitachi's self-serving statements

and payroll screenshots that were not evidence related to the question at issue. Liberty made no reasoned interpretation of the Plan language and instead relied solely on one sentence from the applicable definition to the exclusion of all others. The Defendants have failed to bring forth evidence or argument to defeat Morgan's properly supported Motion.

For these reasons and all of the reasons set forth herein and in Morgan's Motion for Partial Summary Judgment, Liberty's decision to deny Morgan's claim was arbitrary and capricious. Plaintiff Gerald Morgan respectfully requests the Court to grant his Motion for Partial Summary Judgment, to declare the Defendants obligated under the terms of the Plan to provide the long-term disability income benefit amount to Morgan based on the $230,000.00 annual Basic Monthly Earnings figure effective June 9, 2016, to order Liberty to process Morgan's claim and to pay the disability income benefit amount based on the $230,000.00 annual Basic Monthly Earnings figure effective June 9, 2016, to order Defendants to pay Morgan all attorney fees and costs incurred in the investigation, initiation, and prosecution of the claims in this action, to award Morgan prejudgment and post-judgment interest, and to grant any and all other relief this Court deems appropriate.

Respectfully submitted,

/s/ Kristin Seifert Watson
Kristin Seifert Watson (0078032)
Cloppert, Latanick, Sauter & Washburn
225 East Broad Street, 4th Floor
Columbus, Ohio 43215-3709
Telephone: (614) 461-4455
Facsimile: (614) 621-6293
E-mail kwatson@cloppertlaw.com

*Trial Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing though the Court's system.

/s/ Kristin Seifert Watson
Kristin Seifert Watson (0078032)