**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GERALD MORGAN,** | : | |
| Plaintiff, | : | Case No. 2:19-cv-02982-EAS-CMV |
| v. | : | Chief Judge Edmund A. Sargus |
| **HITACHI VANTARA CORPORATION, *et al.*,** | : | Magistrate Judge Chelsey M. Vascura |
| Defendants. | : | |

# DEFENDANTS HITACHI VANTARA LLC AND HITACHI DATA SYSTEMS' HEALTH AND WELFARE BENEFITS PLAN'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT


Danielle K. Herring
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 652-4735
Facsimile: (713) 951-9212
Email: dherring@littler.com
*Trial attorney, admitted pro hac vice*

Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: (303) 629-6200
Facsimile: (303) 629-0200
Email: tcarroll@littler.com
*Admitted pro hac vice*

Angelique Paul Newcomb
LITTLER MENDELSON, P.C.
21 East State Street, 16th Floor
Columbus, OH 43215
Telephone: (614) 463-4246
Facsimile: (614) 559-6673
Email: anewcomb@littler.com

*Attorneys for Defendants Hitachi Vantara LLC[1] and the Hitachi Data Systems' Health and Welfare Benefits Plan*


[1] Hitachi Vantara Corporation converted to a limited liability company and is now Hitachi Vantara LLC.

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION .......... 1

II. REPLY TO MORGAN'S STATEMENT OF THE FACTS .......... 2

III. ARGUMENT .......... 4

A. Morgan's Denial Of Benefits Claim Fails Because Liberty's Decision To Not Award Greater Benefits Is Not Arbitrary and Capricious .......... 4

1. The Decision To Pay Morgan's Benefits Based On BTC Was Not An Abuse Of Discretion .......... 5

2. Morgan's Response Fails To Undermine The Hitachi Defendants' Reasoned Arguments Supporting Summary Judgment As To The Benefits Denial Claim .......... 7

B. Morgan's Promissory Estoppel Claim Against Hitachi Fails Under *Varity Corp. v. Howe* And Its Progeny .......... 10

C. Morgan's Promissory Estoppel Claim Fails On The Merits As a Matter of Law .......... 12

IV. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Briggs v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
774 F. App'x 942 (6th Cir. 2019) ....................13

*Clemons v. Norton Healthcare Inc. Ret. Plan*,
890 F.3d 254 (6th Cir. 2018) ....................5

*Gingold v. Unum Life Ins. Co. of Am.*,
74 F. App'x 660 (7th Cir. 2003) ....................7

*Farhner v. United Transp. Union Discipline Income Prot. Program*,
645 F.3d 338 (6th Cir. 2011) ....................5

*Gentry v. Principal Life Ins. Co.*,
804 F. Supp. 2d 652 (M.D. Tenn. 2011) ....................5, 6

*Gore v. El Paso Energy Corp. Long Term Disability Plan*,
477 F.3d 833 (6th Cir. 2007) ....................10, 11

*In re Ferro Corp. ERISA Litig.*,
422 F. Supp. 2d 850 (N.D. Ohio 2006)....................9

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
555 U.S. 285 (2009)....................6

*Lipker v. AK Steel Corp.*,
698 F.3d 923 (6th Cir. 2012) ....................5

*Morgan v. SKF USA, Inc.*,
385 F.3d 989 (6th Cir. 2004) ....................5

*Riddell v. Unum Life Ins. Co. of Am.*,
457 F.3d 861 (8th Cir. 2006) ....................7

*Shappie v. Minster Mach. Co. Restated Non-Bargaining Emps.' Ret. Plan*,
No. 3:09 CV 2777, 2011 WL 1085790 (N.D. Ohio Mar. 22, 2011), *aff'd*, 492 F. App'x 543 (6th Cir. 2012)....................6

*Shirk v. Fifth Third Bancorp*,
No. 05-CV-049, 2009 WL 692124 (S.D. Ohio Jan. 29, 2009) ....................8

*Spangler v. Lockheed Martin Energy Sys., Inc.*,
313 F.3d 356 (6th Cir. 2002) ....................5, 7

*Sprague v. Gen. Motors Corp.*,
133 F.3d 388 (6th Cir. 1998) .......... 8, 9, 10

*Stark v. Mars, Inc.*,
518 F. App'x 477 (6th Cir. 2013) .......... 12

*Varity Corp. v. Howe*,
516 U.S. 489 (1996) .......... 10

*Wallace v. Oakwood Healthcare, Inc.*,
954 F.3d 879 (6th Cir. 2020) .......... 14

**Statutes**

ERISA .......... *passim*

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) .......... 10, 11

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) .......... 11

**Other Authorities**

H.R. Rep. No. 93-533 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639 .......... 9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **GERALD MORGAN,**<br><br>Plaintiff,<br><br>v.<br><br>**HITACHI VANTARA CORPORATION, *et al.*,**<br><br>Defendants. | : | Case No. 2:19-cv-02982-EAS-CMV<br><br>Chief Judge Edmund A. Sargus<br><br>Magistrate Judge Chelsey M. Vascura |

**DEFENDANTS HITACHI VANTARA LLC AND HITACHI DATA SYSTEMS' HEALTH AND WELFARE BENEFITS PLAN'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Gerald Morgan refuses to recognize and engage with the fundamental truth of this case: the ERISA plan in question lawfully gives Hitachi the discretion to choose between alternative forms of Basic Monthly Earnings and Hitachi elected a $175,000 benefit target compensation ("BTC") amount to apply to him. Instead, Morgan argues—contrary to plan documents—that he should receive greater long-term disability benefits based on ***his own*** choice of earnings and his entire case is built on the alleged fact that Hitachi did not tell him about his BTC.

Summary judgment in favor of the Hitachi Defendants is appropriate as to all of Morgan's claims because whether or not he knew which type of Basic Monthly Earnings applied to him is ***immaterial***.

## II. REPLY TO MORGAN'S STATEMENT OF THE FACTS

Morgan tries to pass as "facts" various statements that are either unsupported by the evidence or immaterial to his claims. The following statements in Morgan's response are either unsupported or immaterial:

- Morgan states he was never informed that Hitachi had selected a BTC amount to apply to him or what the amount would be. [Dkt. 49] 4. First, such a statement is not correct. *See* [Dkt. 47] 4-5 (discussing and citing notice to Morgan). Second, whether Morgan had notice of his BTC amount is immaterial to his claims, as further discussed below.
- Morgan states his "base pay and short-term incentive target" for 2015 were $230,000. [Dkt. 49] 2. That statement is immaterial. Morgan's different definition of target earnings has no bearing on his claims.
- Morgan states he did not have access to the Plan or Summary Plan Description during his employment and he claims the Hitachi Defendants' motion did not cite any evidence that those documents were actually available to him. *Id.* at 2. In truth, the record evidence shows that the Hitachi Data Systems' Health and Welfare Benefits Adoption Agreement, Plan and Summary Plan Description, together with documents from insurance carriers, were available to Hitachi employees on Hitachi's HR Gateway. Compl. Ex. 1 at 1 of 49. The 2015 Benefits Guide also affirmed that the Plan itself and the accompanying insurance documents govern benefits and directed employees—including Morgan—to contact HR or review the information on HR Gateway if they had questions. AR 521-22; *see also* Compl. ¶¶ 18 & Ex. 4 [Dkt. 1-4]. These documents are competent evidence showing that Morgan had access to the Plan and Summary Plan Description during his employment.

- Morgan claims that Hitachi "admitted" that Liberty did not review the Plan and Summary Plan Description and they are not part of the Administrative Record. [Dkt. 49] 3 n.1. Not so. Morgan's citation is not precise, but it appears to refer to footnote 3 of the Hitachi Defendants' motion, which describes how and why the Court should consider the Hitachi Data Systems' Health and Welfare Benefits Adoption Agreement, Plan and Summary Plan Description attached to the Complaint as Exhibit 1. *See* [Dkt. 47] 3 n.3. The Hitachi Defendants made no representations about whether Liberty did or did not review the documents and, contrary to Morgan's assertion, the Hitachi Defendants argued the Court should consider them. In any event, the Plan is only material to the discretionary nature of the benefit determination in question, and since all parties agree on arbitrary-and-capricious review on Morgan's First Claim for Relief, whether Liberty referenced the Plan itself during the administrative phase is immaterial for summary judgment purposes.
- Morgan characterized it as a "fact" that his monthly benefit under the Plan was actually $11,500, citing to his affidavit and a Sales Commission Plan printout. [Dkt. 49] 5. He also represents that his Basic Monthly Earnings are defined are set forth in his Sales Commission Plan. *Id.* at 4. These are not facts, but rather the end result Morgan hopes to achieve, and the Court should not credit the statements as anything more than wishful thinking.
- According to Morgan, Liberty "never investigated or considered the arguments raised by Morgan in his appeal materials." *Id.* at 7. On the contrary, Liberty's October 17, 2018 letter, AR 512-15, specifically recited (and rejected) Morgan's arguments and stated that Liberty "carefully considered Mr. Morgan's LTD insurance coverage ***and***

***documentation contained in his claim***," in reaching its decision on appeal. AR 513-14 (emphasis added).

- Morgan asks the Court to disregard the Carroll Declaration filed with the Hitachi Defendants' motion—and all its exhibits—on the grounds that they are not competent evidence. Morgan does not actually dispute the authenticity or admissibility of any of the documents themselves, but in any event the evidence is properly before the Court. First, Exhibits 3, 4, and 5 are deposition excerpts and deposition exhibits that were authenticated and introduced in the same deposition. Second, Exhibit 6 is a Bates-labeled document specifically authenticated under oath by Exhibit B to the Hitachi Defendants' motion, the Villegas Declaration.[2] Third, Exhibit 7 is a document Morgan produced in this case. He cannot dispute its authenticity and he does not raise any other objection to the document. Finally, although Morgan does not challenge the evidentiary basis of Exhibits 1 and 2 except to the extent the Hitachi Defendants introduced them through the Carroll Declaration, this reply resolves Morgan's objection through the attached declaration. *See* Ex. C – Decl. of Susan Ramirez.

## III. ARGUMENT

### A. Morgan's Denial Of Benefits Claim Fails Because Liberty's Decision To Not Award Greater Benefits Is Not Arbitrary and Capricious.

Morgan's First Claim for Relief fails as a matter of law because he is seeking benefits to which he is not entitled under the plain language of the governing Group Disability Income Policy and Certificate of Coverage.

---

[2] The Hitachi Defendants' motion cites the testimonial foundation for Exhibits 3, 4, and 6 the first time it cites the exhibits. [Dkt. 47] 5 & n.5.

"When interpreting ERISA plan provisions, general principles of contract law apply; unambiguous terms are given their 'plain meaning in an ordinary and popular sense.'" *Lipker v. AK Steel Corp.*, 698 F.3d 923, 928 (6th Cir. 2012) (quoting *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011)). "In interpreting a plan, the administrator must adhere to the plain meaning of its language as it would be construed by an ordinary person." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). As the Sixth Circuit recognized, judges are not the "fairness police" and the Court should ask one question and one question only: "Is the Plan language clear?" *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 269 (6th Cir. 2018). If so, the plain language must be enforced, even if it seems unfair or bizarre. *Id.* If, on the other hand, the Plan language is truly ambiguous (i.e., susceptible to multiple reasonable interpretations), then *Firestone* nevertheless requires the Court to defer to Liberty's reasonable interpretation. *Id.* The ultimate issue is not whether Liberty's acts were arbitrary and capricious, but whether its final decision was arbitrary and capricious. *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002).

#### 1. The Decision To Pay Morgan's Benefits Based On BTC Was Not An Abuse Of Discretion.

Morgan's ERISA denial of benefits claim is subject to dismissal because Liberty's decision was not arbitrary and capricious. First, the definition of Basic Monthly Earnings explicitly allows Hitachi, as Sponsor, to choose between either (a) base pay and the short term incentive (STI) target at 100%, ***OR*** (b) a BTC amount. AR 6, 43. Such earnings ***do not include*** other forms of compensation. *Id.* The Plan language is clear, and the Court should apply the plain language and uphold the benefits decision because it is perfectly consistent with the Plan. *Clemons*, 890 F.3d at 269. A decision within the Sixth Circuit is instructive. In *Gentry v. Principal Life Insurance Co.*, the long-term disability plan in question had two alternative methods of measuring monthly

earnings. 804 F. Supp. 2d 652, 654 (M.D. Tenn. 2011). Like this case, the plaintiff wanted a higher benefit payment and asked the court to impose the definition of his choosing. But—also like this case—the plan in *Gentry* gave the administrator discretion to construe or interpret the applicable insurance policies, and to determine the type and extent of benefits to be provided. *Id.* at 656. In the end, the policy terms clearly and unambiguously provided alternative methods of measuring monthly earnings and the court declined to impose some other definition because the "face of the written plan document" supported the original determination. *Id.* at 659 (quoting *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 301 (2009)) (modifications omitted). The same is true here: the group insurance policy provides alternative measures of Basic Monthly Earnings, Liberty's benefits determination is consistent with the clear language, and the decision is not arbitrary and capricious.

Second, even if the Court finds some ambiguity in the definition of Basic Monthly Earnings, then Hitachi electing BTC and Liberty's interpretation are entitled to *Firestone* deference and the result is the same. Regardless of whether Morgan knew about Hitachi's election (which is immaterial),[3] there is no genuine dispute that Hitachi in fact exercised its discretion and elected that Morgan's long-term disability benefits would be calculated based on BTC. There also is no dispute that Hitachi in fact applied a $175,000 BTC to Morgan and other employees like him. In turn, Liberty reasonably and properly applied Hitachi's BTC election to Morgan's benefits, accurately calculated and paid him benefits under the terms of the Plan and insurance policy, and properly denied his claim for additional benefits. The Court should uphold the decision. *See, e.g.*, *Shappie v. Minster Mach. Co. Restated Non-Bargaining Emps.' Ret. Plan*, No. 3:09 CV 2777, 2011

[3] Morgan's response acknowledges there are no facts in dispute as to his First Claim for Relief. [Dkt. 49] 8. That must mean that Morgan agrees that the purported fact issue as to his knowledge of Hitachi's election is immaterial to the First Claim for Relief.

WL 1085790, at *4-6 (N.D. Ohio Mar. 22, 2011), *aff'd*, 492 F. App'x 543 (6th Cir. 2012) (upholding plan administrator's interpretation of "Monthly Earnings"); *see also Riddell v. Unum Life Ins. Co. of Am.*, 457 F.3d 861, 865 (8th Cir. 2006) (upholding plan administrator's interpretation of "disability earnings"); *Gingold v. Unum Life Ins. Co. of Am.*, 74 F. App'x 660, 662-63 (7th Cir. 2003) (upholding plan administrator's interpretation of "monthly earnings").

### 2. Morgan's Response Fails To Undermine The Hitachi Defendants' Reasoned Arguments Supporting Summary Judgment As To The Benefits Denial Claim.

None of Morgan's arguments against summary judgment as to the benefits denial claim withstand scrutiny. His principal argument is that the Court should stray from the plain language of applicable policy, disregard Hitachi's and Liberty's discretion, and award him greater long-term disability benefits because, he argues, Liberty did not adequately investigate his claim or consider his evidence. Relatedly, he argues there is no evidence in the Administrative Record that Morgan was actually subject to a $175,000 BTC amount. In this context, the ultimate issue is not whether Liberty's acts were arbitrary and capricious, but whether its final decision was arbitrary and capricious. *Spangler*, 313 F.3d at 362. Here, Morgan's argument is disproven by the Administrative Record, which demonstrates that Liberty repeatedly consulted Hitachi to determine which Basic Monthly Earnings option applied to Morgan and Hitachi repeatedly confirmed it. *E.g.*, AR 83 (10/17/2018 note showing that Hitachi validated $175,000 BTC on multiple occasions), AR 94 (7/28/2018 reflecting that $175,000 BTC is correct), AR 695 (email confirming $175,000 BTC), AR 1746 (same). As Liberty stated to Morgan's attorney, "The Target Benefit Comp is primarily for Sales employees and was assigned to [Morgan] when he started employment based on his employee code as a salesman." AR 660. Liberty's final decision upon appeal recognized and articulated Morgan's arguments and explained why they were wrong. AR 512-15. Morgan is

simply incorrect in arguing that Hitachi did not, in fact, elect BTC for him and he is similarly incorrect in arguing Liberty did not adequately consider his claim.

Morgan's underlying argument (which Liberty considered) is that Hitachi allegedly did not inform him that his benefits were based on BTC. [Dkt. 49] 9-12. The first problem with this argument is the facts. The Administrative Record shows that Morgan received short-term disability benefits based on BTC for a year before he applied for long-term disability benefits, which destroys Morgan's factual premise. AR 551, 2001.[4]

The second, and most glaring problem with Morgan's notice argument is the complete lack of authority to support it. Simply declaring it "axiomatic" that Hitachi had a duty to inform him of his BTC amount does not make it so. Likewise, Morgan provides no authority whatsoever for his conclusory statement that "Hitachi had a duty to inform Morgan of what option it selected prior to his enrollment for the benefit year." [Dkt. 49] 10. And Morgan offers no authority that the alleged lack of notice somehow renders Liberty's decision arbitrary and capricious. If anything, Morgan's conclusory statements are ***contrary*** to Sixth Circuit precedent. The Sixth Circuit has rejected attempts to expand disclosure requirements beyond the detailed scheme set forth in ERISA. *See, e.g.*, *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 401 (6th Cir. 1998); *Shirk v. Fifth Third Bancorp*, No. 05-CV-049, 2009 WL 692124, at *18 (S.D. Ohio Jan. 29, 2009) ("[T]he Sixth Circuit has never held that ERISA imposes a general duty of disclosure on fiduciaries. In fact, courts cite *Sprague* for the proposition that there is no general duty of disclosure beyond what is

[4] Short-term disability benefits are paid at 80% of weekly base salary or—as in Morgan's case—BTC. AR 551. Morgan received $2,692.31 per week, which is 80% of his $175,000 BTC, divided by 52 weeks. AR 2001. Additionally, as discussed in support of the Hitachi Defendants' cross-motion, additional evidence also shows he had notice but that is immaterial to his First Claim for Relief.

specifically required under ERISA.") (citing *In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850, 864 (N.D. Ohio 2006)).

Morgan tries to find authority in a portion of ERISA's legislative history (itself quoted in *Firestone*) which states that a participant should know "exactly where he stands with respect to the plan." [Dkt. 49] 11. The full quotation from the House Report goes on to demonstrate what Congress meant:

> Experience has also demonstrated a need for a more particularized form of reporting so that the individual participant knows exactly where he stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted.

H.R. Rep. No. 93-533 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4649. Consistent with Congress' intent, Morgan unquestionably knew what benefits he was entitled to, what might prevent him from obtaining benefits, the procedures to follow, and who managed the plan. If the Plan or policies were required to state which alternative of Basic Monthly Earnings applied to whom, it would eviscerate the very discretion Hitachi has in the first place. The failure to include more detailed information cannot trump Hitachi's right to choose in the first place. *Cf. Sprague*, 133 F.3d at 401 ("GM's failure to include in some summaries a notice of its right to change the plan does not trump the clearly-stated right to do so in the plan itself.").

Finally, Morgan argues that he relied on information in the 2015 benefits enrollment guide and decided not to purchase supplemental coverage. [Dkt. 49] 11; *see also* AR 521-72. Once again, such an allegation is irrelevant to the question of Morgan's entitlement to benefits under the Plan and group insurance policy. The benefits guide states that long-term disability is based on pre-disability monthly income ***as defined in the Summary Plan Description***, AR 551, which leads straight back to the definition of Basic Monthly Earnings. (Morgan's response usually—and

inexplicably—leaves off "as defined in the Summary Plan Description" when discussing the benefits guide.) As the Sixth Circuit recognized, "by definition, a summary will not include every detail of the thing it summarizes." *Sprague*, 133 F.3d at 401.

Even presuming Morgan did not know, however, about the undisputed Plan definition of Basic Monthly Earnings, he still cannot demonstrate as a matter of law that Hitachi was required under ERISA to take additional measures to ensure his knowledge and that an abuse of discretion exists as a result. Similarly, Morgan fails to demonstrate that his lack of knowledge constitutes an abuse of discretion entitling him to be able to set aside the express Plan definition and Hitachi's election of BTC. Further, Morgan cannot otherwise show that an abuse of discretion exists with regard to Liberty's determination.

Quite simply, Morgan has no basis under the Plan or the applicable insurance policy to recover additional benefits. The Plan and policy terms are clear: Hitachi chooses how to calculate Basic Monthly Earnings, Hitachi conveyed its election to Liberty, and Liberty applied it. Whether Morgan had notice or not is ***completely irrelevant*** to his benefits under the Plan and group insurance policy. Morgan has received everything he is entitled to under the Plan, Hitachi's election of BTC and Liberty's determination were rational and appropriate—and well within their discretion—and the First Claim for Relief fails as a matter of law.

### B. Morgan's Promissory Estoppel Claim Against Hitachi Fails Under *Varity Corp. v. Howe* And Its Progeny.

The Hitachi Defendant's motion argued that Morgan's Second Claim for Relief—promissory estoppel against Hitachi—is barred as a matter of law because it impermissibly repackages his claim for benefits under ERISA § 502(a)(1)(B). [Dkt. 47] 11-13. Morgan's response makes no effort to distinguish—or even address—the precedential authority Hitachi cited. Instead, Morgan merely recites his claim should survive because this case is similar to *Gore v. El Paso*

*Energy Corp. Long Term Disability Plan*, 477 F.3d 833 (6th Cir. 2007). [Dkt. 49] 14-15. The *Gore* case is distinguishable, however, and, in the end, demonstrates why Hitachi's argument is correct. First, *Gore* concerned an alleged breach of fiduciary duty, which Morgan does not allege. Second, in *Gore*, the court was particularly mindful of the fact that the plaintiff had sued the ERISA plan manager/adjudicator, Liberty, under ERISA § 502(a)(1)(B), but not the employer defendant, El Paso Energy Corporation. Here by contrast, Morgan sued Hitachi under both his First and Second Claims for Relief. And, as explained in the Hitachi Defendants' motion, Morgan's estoppel claim itself asks for "equitable relief for promissory estoppel against Defendant Hitachi ***to recover the correct amount of the long-term disability income benefit.***" Compl. ¶ 76 (emphasis added). Likewise, the prayer for relief asks for a declaratory judgment that Morgan is entitled to benefits based on his $230,000 definition of Basic Monthly Earnings and an order compelling Liberty to pay him what he seeks. *Id.* at 11 ¶¶ 1-2. Each of those remedies is cognizable under § 502(a)(1)(B) and the "correct amount" of his benefits the estoppel claim seeks is indistinguishable from a § 502(a)(1)(B) claim.

In *Gore*, the Sixth Circuit summarized when § 502(a)(3) claims are duplicative. "In each case where this circuit has found that a plaintiff's § 1132(a)(3) claim of breach of fiduciary duty is merely a repackaged § 1132(a)(1)(B) claim, the claims could have been brought under § 1132(a)(1)(B)." *Gore*, 477 F.3d at 842. That is the case here: not only could Morgan sue Hitachi for the same relief under § 502(a)(1)(B), he actually did so. For the reasons described in the Hitachi Defendants' motion and consistent with both the case law cited and the quoted statement from *Gore*, Morgan's promissory estoppel claim under § 502(a)(3) is improper and fails as a matter of law.

### C. Morgan's Promissory Estoppel Claim Fails On The Merits As a Matter of Law.

In order to survive summary judgment on the merits of his promissory estoppel claim, Morgan must satisfy or at least raise a genuine issue of material fact on each of the claim's five elements, plus the extra three extraordinary elements applicable to unambiguous plan provisions. *See* [Dkt. 47] 13-14. Consistent with his persistent theme, Morgan's response is singularly devoted to his supposed lack of notice that his LTD benefits would be calculated based on BTC. [Dkt. 49] 16-20. Hitachi adamantly contends that Morgan did have notice of BTC,[5] but the Court need not resolve that particular disagreement because Morgan's failure to satisfy the other elements of his claim renders it ***immaterial***.

At best, Morgan raised a genuine issue of material fact regarding only the fourth element of his promissory estoppel claim – regarding his knowledge of the true facts. As a result, the undisputed material facts show that Morgan cannot, as a matter of law, satisfy other elements of his claim and summary judgment in favor of the Hitachi is appropriate.

***Representation of material fact and Hitachi's knowledge of the true facts.*** Read together, the first and second elements of promissory estoppel fundamentally require that Hitachi made some sort of ***mis***representation to Morgan, such that Hitachi was aware of the true facts. As the Sixth Circuit explained, "The second element of equitable estoppel requires the plaintiff to demonstrate that the defendant's actions contained an element of fraud, either intended deception or such gross negligence as to amount to constructive fraud." *Stark v. Mars, Inc.*, 518 F. App'x 477, 481 (6th Cir. 2013) (citation omitted).

---

[5] In light of the evidence that Morgan did have notice of his BTC, Morgan is wrong to declare, without evidence, that Hitachi knew it had not given him such notice. [Dkt. 49] 14, 17.

Here, Morgan's response makes clear the 2015 Benefits Guide contains the alleged representation of material fact. [Dkt. 49] 13. The language in question says that long-term disability benefits are based on "pre-disability income ***as defined in the Summary Plan Description***." *E.g.*, AR 551 (emphasis added). The benefits guide also states that it is only a summary of benefits, the benefits plans themselves are the official documents, and in the event of any conflict between the benefits guide and the plans, the official plan documents will govern. *Id.* at 523. Morgan tends to omit the emphasized language about the Summary Plan Description, and he does not address the other disclaimers, but his omissions do not change the facts.

Morgan's claim fails because there is no evidence that Hitachi ***mis***represented anything to him—let alone engaged in conduct tantamount to fraud. The benefits guide plainly referred to the Summary Plan Description and made clear that the plan documents themselves would govern, not the benefits guide. The 2015 Benefits Guide contains no misleading language or misrepresentations that would allow Morgan to recover more than his BTC benefits. To the extent Morgan's claim is based on Hitachi's alleged failure to tell him about his BTC amount, that is at best an omission. As discussed above, the Sixth Circuit has declined to impose disclosure requirements beyond what ERISA itself requires and the alleged omission does not qualify as a knowing misrepresentation.

The Sixth Circuit's decision in *Briggs v. National Union Fire Insurance Co. of Pittsburgh, PA* is instructive. 774 F. App'x 942 (6th Cir. 2019). Although that case considered a claim for breach of fiduciary duty, such a claim requires a misrepresentation and justifiable reliance as with Morgan's promissory estoppel claim. *Id.* at 948 n.8. And, like Morgan, the plaintiff in *Briggs* claimed that a benefits guide contained the necessary misrepresentation. *Id.* at 947-48. The Sixth Circuit in *Briggs* affirmed that the benefits guide did not constitute a misrepresentation because it

stated that the plan documents themselves govern. The same is true here and the result is the same, as well: the 2015 Benefits Guide is not a misrepresentation.[6]

***Justifiable/Reasonable reliance.*** Morgan also fails to show he reasonably or justifiably relied on the 2015 Benefits Guide. Even assuming the guide qualified as a representation of material fact, it clearly and plainly points back to the Summary Plan Description. There is nothing in the definition of Basic Monthly Earnings (or elsewhere) that would allow Morgan reasonably to believe that his Basic Monthly Earnings under the Plan would be $230,000. Hitachi never represented or insinuated that Morgan's Basic Monthly Earnings were derived from his Sales Commission Plan and it is unreasonable for Morgan to rely on his own (mistaken) definition of Basic Monthly Earnings, especially given the plain Plan language dictating otherwise.

***Extraordinary circumstances.*** As discussed in the Hitachi Defendants' motion, promissory estoppel can only apply to unambiguous plan provisions in extraordinary circumstances not present here. [Dkt. 47] 15-16. Morgan's response does not argue that extraordinary circumstances exist, and so his claim must fail if the Court finds that the plan provisions in question are unambiguous. That should be the result because there the definition of Basic Monthly Earnings is not subject to more than one interpretation. The definition plainly states that two options for Basic Monthly Earnings exist (including BTC), that the election is to be defined by Hitachi as sponsor, and that such earnings do not include other forms of compensation. AR 6. Morgan cites the dictionary definition of ambiguity, but in ERISA cases like this one, a plan provision is only ambiguous if it is subject to two reasonable interpretations. *E.g.*, *Wallace v.*

---

[6] The Sales Commission Plan to which Morgan sometimes refers is even further removed from the terms of the Plan, has no reference to Basic Monthly Earnings under the Plan, and similarly cannot satisfy the required misrepresentation element to establish a promissory estoppel claim under ERISA.

*Oakwood Healthcare, Inc.*, 954 F.3d 879, 890–91 (6th Cir. 2020). Morgan's argument would render every discretionary provision in ERISA plans ambiguous and require the Plan itself to announce Hitachi's election, which would eliminate the very discretion that Hitachi lawfully reserved to choose between two options. The law does not mandate such a requirement on the part of Hitachi, and any such result is not proper here. The provision in question is unambiguous, no extraordinary circumstances exist, and Morgan's promissory estoppel claim under ERISA fails as a matter of law.

## IV. CONCLUSION

It is abundantly clear that Morgan's entire case is built upon the allegation that he did not receive notice that his disability benefits were based on BTC. The Hitachi Defendants dispute that allegation and believe no reasonable factfinder could agree with Morgan—but there is no need for a bench trial because Morgan's foundational notice argument is immaterial. As to his benefits denial claim, there is no basis under the Plan or applicable insurance policy to award him greater benefits and Morgan's briefing presents no authority to the contrary. With regard to Morgan's promissory estoppel claim, Morgan's argument only applies to one of several elements that he must satisfy, and the undisputed material facts show that Hitachi is entitled to judgment as a matter of law.

Respectfully submitted this 11th day of January, 2021.

*s/ Danielle K. Herring*
Danielle K. Herring
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 652-4735
Facsimile: (713) 951-9212
Email: dherring@littler.com
*Trial attorney, admitted pro hac vice*

Thomas W. Carroll
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: (303) 629-6200
Facsimile: (303) 629-0200
Email: tcarroll@littler.com
*Admitted pro hac vice*

Angelique Paul Newcomb
LITTLER MENDELSON, P.C.
21 East State Street, 16th Floor
Columbus, OH 43215
Telephone: (614) 463-4246
Facsimile:(614) 559-6673
Email: anewcomb@littler.com

*Attorneys for Defendants Hitachi Vantara LLC and the Hitachi Data Systems' Health and Welfare Benefits Plan*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 11th day of January, 2021, the foregoing **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS HITACHI VANTARA LLC AND HITACHI DATA SYSTEMS' HEALTH AND WELFARE BENEFITS PLAN'S MOTION FOR SUMMARY JUDGMENT** has been filed via the Court's electronic filing system. Notice of filing will be performed by the Court's electronic filing system, and Parties may access the document through the Court's electronic filing system.

*s/ Danielle K. Herring*
Danielle K. Herring

4830-3788-3094.2 083423.1021