UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GERALD MORGAN,

        Plaintiff,

   v.

HITACHI VANTARA CORP., *et al.*,

        Defendants.

Case No. 2:19-cv-2982
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

The matter before the Court is Plaintiff Gerald Morgan's ("Morgan" or "Plaintiff") motion for partial summary judgment, (ECF No. 45), Defendant Liberty Life Assurance Company of Boston's ("Liberty") motion for summary judgment on the administrative record, (ECF No. 46), and Defendants', Hitachi Data Systems' Health and Welfare Benefits Plan and Hitachi Vantara Corporation ("Hitachi"), motion for summary judgment (ECF No. 47). The motions are now fully briefed. (ECF Nos. 48–54). For the reasons that follow, the Court **DENIES** Plaintiff's motion for summary judgment, (ECF No. 45), **GRANTS** Liberty's motion for summary judgment, (ECF No. 46), and **GRANTS** Hitachi's motion for summary judgment (ECF No. 47).

I.

Morgan worked for Hitachi as a Specialist Sales Account Representative beginning around October 12, 2010, and his last month of active employment was June 2015. (Administrative Record ("Record"), ECF No. 28-3, PageID 940). In 2015, Morgan's base pay and short-term incentive target for the year was $230,000.00. (*Id.* at PageID 941, 943). Morgan's employer, Hitachi, sponsored an employee welfare benefit plan (the "plan") that included a group disability income

policy (the "policy"). (Plan, ECF No. 1-1[1]; Record, ECF No. 28-1, PageID 350). Hitachi contracted with Liberty as the insurance carrier to administer the plan. (*Id.*) According to Morgan, he did not have access to the Plan Document or the Summary Plan Description while employed at Hitachi. (Record, ECF No. 28-3, PageID 941). Instead, when Morgan enrolled for the long-term disability income benefits each year, Morgan used the information provided by Hitachi in annual Open Enrollment Benefits Guides. (*Id.* at PageID 942).

Under the terms of the policy, long-term disability benefits amount to "60% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $15,000." (Record, ECF No. 28-1, PageID 353). The policy defines "Basic Monthly Earnings" as:

> Covered Person's monthly rate of earnings from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins. Earnings will be defined as either, base pay and the short term incentive (STI) target at 100%, or as a benefit target compensation amount. Earnings type to be defined by the Sponsor. Such earnings will not include other forms of compensation.

(*Id.* at PageID 355). In comparison, for Plan Year 2015, the Open Enrollment Benefits Guide stated: "When illness or injury makes it impossible for you to work for an extended period of time, the Long Term Disability coverage will replace 60% of your pre-disability monthly income as defined in the Summary Plan Description to a maximum benefit of $15,000 per month." (Record, ECF No. 28-3, PageID 974).

In June 2015, due to various serious medical conditions Morgan ceased active employment with Hitachi. (Record, ECF No. 28-3, PageID 922). He began receiving short-term disability benefits on June 10, 2015, and then long-term disability benefits beginning on June 9, 2016. (Record, ECF No. 28-5, PageID 2167, 2123–24). Liberty paid Morgan long-term disability

---

[1] Though courts generally may not look beyond the administrative record when reviewing a claim that an administrator did not provide proper benefits, that rule does not cover the benefits plan itself. *Bass v. TRW Employee Welfare Benefits Tr.*, 86 F. App'x 848, 851 (6th Cir. 2004).

benefits at 60% of a $175,000 Benefit Target Compensation, in the gross amount of $8,750.00 per month. (*Id.* at PageID 1689). Through counsel, Morgan contacted Liberty to inquire about the number, believing that it should be based on his base pay plus short-term incentives, amounting to 60% of $230,000.00, or 11,500.00 per month. (*See id.* at PageID 2101).

On April 17, 2018, Morgan submitted a formal claim for benefits. (Record, ECF No. 28-4, PageID 1026–37). Liberty responded on June 8, 2018, rejecting Morgan's claim and affirming its previous calculation. (Record, ECF No. 28-5, PageID 1505). Morgan replied, disputing Liberty's response to his original submission. (Record, ECF No. 28–4, PageID 1041–42). Liberty wrote back with a more detailed response. (*Id.* at PageID 1009–1012). Morgan again disputed Liberty's explanation, (*Id.* at PageID 1003–04), and again Liberty reiterated the basis for its calculation. (*Id.* at PageID 1017–18).

On September 7, 2018, Morgan submitted a request for review of the prior decision. (Record, ECF No. 28–3, PageID 934–37). Liberty conducted a review, provided an explanation, and retained its prior position. (*Id.* at PageID 861–64). Liberty reasoned that its calculations were correct based on the policy terms and provisions. (*Id.* at PageID 863).

On July 10, 2019, Morgan filed suit against Liberty and Hitachi in this Court. (ECF No. 1). Morgan brings his first claim to enforce his rights under the plan pursuant to 29 U.S.C. § 1132(a)(1)(B). Morgan's second claim is that of promissory estoppel against Hitachi under 29 U.S.C. § 1132(a)(3)(B). All parties involved now move for summary judgment in whole or in part. (ECF Nos. 45–47).

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n.*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## III.

A. **The Alleged Violation of the Plan Terms**

Courts "review the plan administrator's denial of benefits *de novo*, unless the benefit plan specifically gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 300 (6th Cir. 2006). Here, as all parties acknowledge, the benefit plan gives the administrator such discretionary authority, and as such, the Court reviews the plan administrator's denial of benefits under the "arbitrary and capricious" standard. *Id.* (citation omitted).

The arbitrary and capricious standard "requires only an explanation based on substantial evidence that results from a deliberate and principled reasoning process." *Id.* As such, if Liberty's interpretation of the benefit plan provisions is "'reasonable,' it must be upheld." *Id.* (citations omitted). That said, "the issue of reasonableness is a question of law, which this Court reviews *de novo*." *Id.* (citation omitted). In conducting its review of the denial of benefits, the Court will consider "only the evidence available to the administrator at the time the final decision was made." *McClain v. Easton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014).

As previously mentioned, the plan defines "[e]arnings" as "either, base pay and the short term incentive (STI) target at 100%, or as a benefit target compensation amount. Earnings type to be defined by the Sponsor." (Record, ECF No. 28-1, PageID 355). This language unambiguously provides for two methods of calculating earnings and provides that Hitachi decides which method to apply.

In this case, Hitachi selected the latter definition for sales employees such as Plaintiff, and so informed Liberty. (Record, ECF No. 28-3, PageID 862–63; ECF No. 28-4, PageID 1044). Hitachi also informed Liberty that Plaintiff's benefit target compensation amount was $175,000.00 and provided Liberty with a screenshot of Plaintiff's employment compensation data as supporting

5

documentation. (Record, ECF No. 28-4, PageID 1040, 1044). Liberty used that number to calculate monthly benefits. (Record, ECF No. 28-3, PageID 862). In so doing, Liberty reasonably followed the plain reading of the plan.

Plaintiff argues that he is entitled to greater benefits than those provided because, according to Plaintiff, his benefits should have been calculated based on his base pay and STI target. (Pl. Reply at 2, 6, ECF No. 52, PageID 2559, 2563). Plaintiff contends that Liberty acted arbitrarily and capriciously by failing to consider Plaintiff's arguments and evidence. (*Id.*; *see also* Pl. Mot. at 13, ECF No. 45, PageID 2400). The Court does not agree. Liberty recognized Plaintiff's arguments and in disagreeing with them, laid out the pertinent plan provisions, and explained that it used the benefit target compensation amount. (Record, ECF No. 28-3, PageID 862–63). Given that Liberty acted in accordance with the plain language of the plan, Liberty's decision cannot be said to be arbitrary. Similarly, there is no evidence that Liberty acted capriciously.

Plaintiff's argument that Hitachi did not provide Plaintiff with notice that Hitachi had selected the benefit target compensation option, and that Liberty acted in an arbitrary and capricious manner by failing to consider this, is unpersuasive. (Pl. Mot. at 11–12, ECF No. 45). Plaintiff states:

> While Liberty was correct that the Group Disability Income Policy permits the Sponsor—Hitachi—to define the type of earnings to be utilized to calculate Basic Monthly Earnings, it is axiomatic that the Sponsor has a duty to inform the participants what type of earning would actually be used. The Plan language presented an either/or option, so Hitachi had a duty to inform [Plaintiff] of what option it selected prior to [Plaintiff's] enrollment for the benefit year.

(*Id*. at 11). This Court has not found any supporting law.[2]

---

[2] Plaintiff attempts to rely on citations to 29 C.F.R. § 2502.102–3 and § 2520.104b–3, as well as misapplications of caselaw. (Pl. Mot. at 11–12, ECF No. 45, PageID 2398–99; Pl. Reply at 5, ECF No. 52, PageID 2562). For example, Plaintiff states: "ERISA requires that [Plaintiff], as a Participant, be informed as to exactly what his long-term disability income benefit would be. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989)." (Pl. Reply at 5, ECF No. 52). Yet the cited section of *Firestone* concerns the

Liberty provided benefits to Plaintiff based on the policy it had with Hitachi. Its interpretation of the policy adhered to the plain language of the policy. Accordingly, Liberty did not act in an arbitrary and capricious manner when it declined to adopt Plaintiff's interpretation and afford Plaintiff greater benefits. Defendants are entitled to summary judgment on this claim.

### B. Promissory Estoppel

Plaintiff's second claim is one of promissory estoppel against the Hitachi Defendants only. (*See* Compl. at ¶¶ 66–76, ECF No. 1). According to Plaintiff, Hitachi is estopped from providing him benefits based on anything less than his actual income of $230,000.00. (Pl. Resp. at 13, ECF No. 49, PageID 2499). Hitachi moves for summary judgment on this claim, making two arguments. First, Hitachi argues that the claim cannot be properly brought under 29 U.S.C. § 1132(a)(3)(B) because it is a repackaged version of Plaintiff's first claim. (Hitachi Mot., ECF No. 47, PageID 2439). Second, Hitachi argues that Plaintiff has not satisfied several of the elements of promissory estoppel. (*Id.* at PageID 2441). Because Hitachi's latter argument is well taken, the Court will not address the former.

There are five elements to a claim of promissory estoppel:

> (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

---

meaning of "participant" within ERISA's disclosure provisions, not what duties are owed to persons so labeled. *See Firestone*, 489 U.S. at 116. The Court explained, "[w]e do not think Congress' purpose in enacting the ERISA disclosure provisions—ensuring that 'the individual participant knows exactly where he stands with respect to the plan,' H.R. Rep. No. 93–533, p. 11 (1973), U.S. Code Cong. & Admin. News 1978, p. 4649—will be thwarted by a natural reading of the term 'participant.'" *Id.* at 118. Consequently, the Supreme Court narrowed the definition of "participant" afforded by the circuit court. *Id.* at 117.

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) (en banc). "Principles of estoppel, however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Id.* at 404.

There is an exception to the general rule that promissory estoppel cannot be applied in the context of unambiguous plan provisions. *Haviland v. Metropolitan Life Ins. Co.*, 730 F.3d 563, 569 (6th Cir. 2013). That exception applies "where the plaintiff can demonstrate" three additional elements: "(1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel." *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 444 (6th Cir. 2010).

Hitachi contends, among other things, that the plan provisions are unambiguous, and that the exception does not apply. (Hitachi Mot., ECF No. 47, PageID 2443–44). In raising this contention, Hitachi argues that this case does not contain any extraordinary circumstances. (*Id.*) Hitachi cites to two cases where the Sixth Circuit rejected arguments of extraordinary circumstances: *Donati v. Ford Motor Co., General Retirement Plan, Retirement Committee*, 821 F.3d 667, 675 (6th Cir. 2016) (stating that "mere reliance on misinformation" does not establish extraordinary circumstances); and *Haviland*, 730 F.3d at 567, 569 (finding circumstances not extraordinary where defendant "falsely promised that their continuing life insurance benefits would not be reduced for the rest of their lives, when in fact their benefits were reduced to $10,000.").

Plaintiff responds by arguing ambiguity, but not the exception. (Pl. Resp. at 13–14, ECF No. 49, PageID 2499–2500). As stated above, however, the language at issue is not ambiguous. The provision provides an either/or option, with Hitachi deciding which option to choose.

Either/or options are distinct (though not exclusive) from ambiguous language. The former involves identifiable choices to select between, the latter involves two or more reasonable interpretations of what is meant by certain language. For example, if a person is offered either a baseball or a basketball, there is not ambiguity in that offer, merely choices. On the other hand, if a person is told to be meet at eight o'clock, there is ambiguity in whether the instructions refer to 8:00am or 8:00pm. The provision in this case unambiguously provided Hitachi with choices.

The general rule is that "estoppel can only be invoked in the context of ambiguous plan provisions[,]" *Sprague*, 133 F.3d at 404, and the provision at issue is not ambiguous. Hitachi identified the exception and argued that it did not apply; Plaintiff did not argue otherwise. Consequently, Plaintiff has failed to satisfy his burden and there is no basis for applying the exception. The general rule applies. Applying the general rule here, Hitachi is entitled to summary judgment on Plaintiff's claim of promissory estoppel.

**IV.**

For the reasons stated above, the Court **DENIES** Plaintiff's motion for summary judgment, (ECF No. 45), **GRANTS** Liberty's motion for summary judgment, (ECF No. 46), and **GRANTS** Hitachi's motion for summary judgment (ECF No. 47). The Clerk is directed to close this case.

**IT IS SO ORDERED.**

**9/24/2021**                         **s/Edmund A. Sargus, Jr.**
**DATED**                              **EDMUND A. SARGUS, JR.**
                                         **UNITED STATES DISTRICT JUDGE**